**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| _____ ) | |
| COUNTY OF COOK, ILLINOIS ) | **Case No. 1: 14-cv-09548** |
| Plaintiffs, ) | |
| v. ) | Judge Gary Feinerman |
| ) | |
| WELLS FARGO & CO., WELLS FARGO ) | |
| FINANCIAL, INC., WELLS FARGO ) | |
| Bank, N.A., and WELLS FARGO "John ) | |
| Doe" CORPS 1-375 ) | |
| Defendants. ) | |
| _____ ) | |

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION
TO DEFENDANTS' MOTION TO DISMISS**

JAMES D. MONTGOMERY, SR.
JAMES D. MONTGOMERY, JR.
JOHN K. KENNEDY
DANIEL A. DAILEY

*Special Assistant State's Attorneys*

**JAMES D. MONTGOMERY &
ASSOCIATES LTD.**
One North LaSalle Suite 2450
Chicago, IL 60602
Phone: (312) 977-0200
Fax: (312) 977- 0209
ddailey@jdmlaw.com

JAMES M. EVANGELISTA
(admitted *pro hac vice*)
JEFFREY R. HARRIS
(admitted *pro hac vice*)
DARREN W. PENN
(admitted *pro hac vice*)
DAVID J. WORLEY
(admitted *pro hac vice*)

*Special Assistant State's Attorneys*

**HARRIS PENN LOWRY LLP**
400 Colony Square, Suite 900
1201 Peachtree Street, NE
Atlanta, GA 30361
Phone: (404) 961-7650
Fax: (404)961-7651
jim@hpllegal.com

## TABLE OF CONTENTS

Table of Authorities ....................................................................................................... iii

Introduction .....................................................................................................................1

Facts ................................................................................................................................1

Argument ........................................................................................................................2

A.  Res Judicata Does Not Bar Cook County's Complaint .............................................2

    1.  The *Res Judicata* Effect Of A Consent Agreement Is Limited By Its Language; The Consent Decree Does Not Bar Cook County's FHA Claim ................................................2

    2.  There Is No Common Identity Of The Parties Plaintiff....................................................4

    3.  There Is Not A Common Identity of Defendants.......................................................8

    4.  There Is No Common Identity Of The Causes Of Action ..........................................10

B.  The Complaint is Timely.........................................................................................12

    1.  The Statute Of Limitations Has Not Begun To Run, Nor Has It Expired ..................12

    2.  The "Continuing Violation Doctrine" Is Irrelevant At This Time..............................14

    3.  The FHA's Statute Of Limitations Does Not Impose A Discovery Rule....................16

C.  Cook County Has Standing To Pursue Its FHA Claim.............................................17

    1.  Cook County Adequately Pled Article III Standing – All That Is Required ...............17

    2.  *Lexmark* Supports Cook County's Standing.............................................................22

D.  The Complaint States A Valid FHA Claim ..............................................................26

    1.  The Complaint States An Intentional Or Disparate Treatment FHA Claim................26

    2.  The Complaint States An FHA Claim Based On Disparate Impact ...........................28

Conclusion .....................................................................................................................30

## TABLE OF AUTHORITIES

**Cases**

*Abner v. Illinois Dep't of Transp.*, 674 F.3d 716 (7th Cir. 2012) ..................................................... 4

*Adkins v. Morgan Stanley*, No. 12 CV 7667 (HB), 2013 WL 3835198
    (S.D.N.Y. July 25, 2013)......................................................................................... 26

*Agolf, LLC v. Vill. of Arlington Heights*, 946 N.E.2d 1123 (Ill. App. Ct. 2011) ........................... 5

*Allied Asphalt Paving Co. v. Vill. of Hillside*, 731 N.E.2d 425 (2000) ......................................... 3

*Arnett v. Envtl. Sci. & Eng'g, Inc.*, 657 N.E.2d 668 (1995)............................................................ 2

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)........................................................................................ 26

*Atunnise v. Mukasey,* 523 F.3d 830 (7th Cir. 2008) ................................................................... 13

*Barkley v. Olympia Mortgage Co.*, 2007 WL 2437810 *11-15 (E.D.N.Y. Aug. 22, 2007).. 27, 28

*Barnhart v. Sigmon Coal Co., Inc.,* 534 U.S. 438 (2002)............................................................. 17

*Barrett v. H & R Block, Inc.,* 652 F.Supp. 2d 104 (D. Mass. 2009)............................................ 16

*Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 (2007)............................................................ 26, 29

*Brooks v. Ross*, 578 F.3d 574 (7th Cir. 2009)...................................................................... 26, 29

*City of Birmingham v. Citigroup, Inc., et al.,* No. 2:09-CV-00467-KOB, 2009 WL 8652915
    (N.D. Ala. Aug. 19, 2009)................................................................................. 21, 22

*City of Los Angeles v. Bank of America Corp. et al.,* No. 2:13-CV-9046,
    2014 WL 2770083 (C.D. Cal. June 12, 2014) ................................ 1, 14, 15, 19, 23, 26, 28, 30

*City of Los Angeles v. CitiGroup Inc., et al.,* 24 F. Supp. 3d 940,
    (C.D. Cal. June 9, 2014)................................................... 1, 14, 15, 19, 21, 26, 28, 30

*City of Los Angeles v. Wells Fargo, et al.,* 22 F. Supp. 3d 1047,
    (C.D. Cal. May 28, 2014)............................................... 1, 14, 15, 19, 21, 23, 26, 28, 30

*City of Mattoon v. Mentzer*, 668 N.E.2d 601 (Ill. App. Ct. 1996)............................................. 2, 3

*City of Miami v. Bank of America Corp.*, 2014 WL 3362348,
    (S.D. Fla. July 8, 2014) ................................................................................... 19

*City of Miami v. Citigroup, Inc.*, 2014 WL ____, (S.D. Fla. July 9, 2014)................................. 19

*City of Miami v. Wells Fargo & Co.*, 2014 WL ____, (S.D. Fla. July 9, 2014)........................... 19

*City of Memphis v. Wells Fargo Bank, N.A.,* 2011 WL 1706756
(W.D. Tenn. 2011) ................................................................. 22, 28, 30

*Cnty. of Cook ex rel. Rifkin v. Bear Stearns & Co.*, 831 N.E.2d 563, 573 (Ill. 2005)................... 7

*DT Apt. Grp., LP v. CWCapital, LLC,* 2012 WL 6693192 (N.D. Tex. 2012)............................ 25

*Daveri Dev. Grp., LLC v. Vill. of Wheeling,* 934 F.Supp. 2d 987 (N.D. Ill. 2013) ............... 27, 29

*DeKalb Cty., et al. v. HSBC N. Am. Holdings, Inc., et al.,* No. 1:12-CV-03640-SCJ,
2103 WL 7874104 (N.D. Ga. Sept. 25, 2013) .............................................. *passim*

*DeKalb Cty.,* No. 1:12-CV-03640-ELR__WL ___ (N.D. Ga. March 3, 2015) .............. *passim*

*Derrickson v. City of Danville, Ill.*, 845 F.2d 715 (7th Cir. 1988)................................... 3

*Dunn v. Carey,* 808 F.2d 555 (7th Cir. 1986)....................................................... 3, 4, 8

*Engel v. Buchan,* 710 F.3d 698 (7th Cir. 2013) ..................................................... 26

*Envtl. Prot. Agency v. Pollution Control Bd.,* 372 N.E. 2d 50 (Ill. 1977) ...................... 5

*Equal Rights Ctr. v. Equity Res.,* 788 F. Supp. 2d 707 (D. Md. 2011)......................... 24

*Equal Rights Ctr. v. Post Prop's, Inc.,* 633 F.3d 1136 (D.C. Cir. 2011)...................... 24

*Erickson v. Pardus,* 551 U.S. 89 (2007) .......................................................... 26

*Estate of Davis v. Wells Fargo Bank,* 633 F.3d 529 (7th Cir. 2011)........................... 12

*Fair Hous. Council, Inc. v. Vill. of Olde St. Andrews, Inc.,* 210 F. App'x 469
(6th Cir. 2006) ............................................................................. 13, 16

*Firefighters Local 93 v. City of Cleveland,* 478 U.S. 501 (1986)............................. 3, 8

*Friends of Milwaukee's Rivers v. Milwaukee Metro. Sewerage Dist.* 382 F.3d 743
(7th Cir. 2004)............................................................................. 7, 8

*Garcia v. Brockway*, 526 F.3d 456 (9th Cir. 2008) .............................................. 16

*Ghartey v. St John's Queens Hosp.,* 869 F.2d 160 (2d Cir.1989) ............................... 16

*Gilty v. Village of Oak Park*, 919 F 2d. 1247 (7th Cir. 1990) .................................. 27

*Gladstone Realtors v. Village of Bellwood,* 441 U.S. 91 (1978) ..................... 17, 18, 22, 23

*Griffin v. Oceanic Contractors, Inc.,* 458 U.S. 564 (1982) .................................. 13, 17

*Groesch v. City of Springfield*, 635 F.3d 1020 (7th Cir. 2011).................................. 15

*Hammond v. Sys. Transp., Inc.,* 11-CV-1295, 2012 WL 3234865 (C.D. Ill. Aug. 6, 2012) .......... 9

*Hargraves v. Capital City Mortgage Corp.,* 140 F. Supp. 2d 7 (D.D.C. 2000), on
    reconsideration in part, 147 F. Supp. 2d 1 (D.D.C. 2001) ................................... 1, 18

*Havens Realty Corp. v. Coleman,* 455 U.S. 363 (1982) ................................ 13, 16, 18, 20, 22, 24

*Hoffman v. Option One Mortg. Corp.,* 589 F. Supp. 2d 1099 (N.D. Ill. 2008) .......................... 30

*Honorable v. Easy Life Real Estate Sys., Inc.*, 182 F.R.D. 553 (N.D. Ill. 1998) ........................ 13

*Hous. Opp. Proj. for Excellence, Inc. v. Wedgewood Condo. Ass'n, Inc.,* 2012 WL 4193969
    (S.D. Fla., Sept. 19, 2012) ................................................................................... 24

*HUD v. Blackwell,* 908 F.2d 864 (11th Cir. 1990) ....................................................... 20

*Indian Harbor Ins. Co. v. MMT Demolition, Inc.*, 13 N.E.3d 108
    (Ill. App. Ct. 2014) .......................................................................... 2, 5, 7, 10, 11

*International Brotherhood of Teamsters v. United States,* 431 U.S. 324 (1977) ........................ 28

*Jackson v. Callan Pub., Inc.*, 826 N.E.2d 413 (Ill. App. Ct. 2005) ................................. 5

*Jafri v. Chandler LLC,* 970 F. Supp. 2d 852 (N.D. Ill. 2013) ....................................... 13

*Jones v. Citibank, Fed. Sav. Bank*, 844 F. Supp. 437 (N.D. Ill. 1994) ......................... 17

*Kimbrew v. Fremont Reorg. Corp.*, 2008 WL 5975083 (C.D. Cal. Nov. 14, 2008) ................... 15

*Krieman v. Crystal Lake Apt's Ltd. P'ship*, 2006WL1519320 (N.D. Ill. May 31, 2006) ........... 17

*Laufman v. Oakley Bldg. & Loan Co.,* 408 F. Supp. 489 (S.D. Ohio 1976) ............................... 25

*Ledbetter v. Goodyear Tire & Rubber Co.*, 550 U.S. 618 (2007) ................................ 15

*Levy v. Trent Motel Assoc., L.P.,* 2011 WL 3903647 (E.D. Pa. Aug. 26, 2011) ........................ 24

*Lexmark Int'l, Inc. v. Static Control Components, Inc.,* 134 S.Ct. 1377 (2014) .............. 22, 23, 24

*Lujan v. Defenders of Wildlife,* 504 U.S. 555 (1992) ................................................. 18

*Lyons v. Ryan*, 780 N.E.2d 1098 (Ill. 2002) ................................................................. 5

*Martinez v. Freedom Mortgage Team, Inc.,* 527 F. Supp. 2d 827 (N.D. Ill. 2007) ............... 26, 27

*Mayor & City Council of Baltimore v. Wells Fargo Bank, N.A.,* 631 F. Supp. 2d 702
    (D. Md. 2009) .......................................................................................... 21, 22

*Mayor & City Council of Baltimore v. Wells Fargo Bank, N.A.,* 677 F. Supp. 2d 847
   (D. Md. 2010)................................................................................................ 21, 22

*Mayor & City Council of Baltimore v. Wells Fargo Bank, N.A.,* 2011 WL 1557759
   (D. Md. Apr. 22, 2011)............................................................................................ 22

*Mazzocchi v. Windsor Owners Corp.,* 2012 WL 3288240 (S.D.N.Y. Aug. 6, 2012)................... 24

*Metro. Housing Dev. Corp. v. Vill. of Arlington Heights,* 558 F.2d 1283 (7th Cir. 1977)........... 29

*Miller v. Countrywide Bank*, N.A., 571 F. Supp. 2d 251 (D. Mass. 2008)............................ 16, 17

*Moseke v. Miller & Smith, Inc.,* 202 F. Supp. 2d 492 (E.D. Va. 2002) ........................................ 17

*Moskowitz v. Trustees of Purdue Univ.*, 5 F.3d 279 (7th Cir. 1993) ............................................ 17

*Nash Cnty. Bd. of Ed. v. Biltmore Co.,* 640 F.2d 484 (4th Cir. 1981) ............................................ 8

*Nasser v. City of Homewood*, 671 F.2d 432 (11th Cir. 1982)...................................................... 19

*Nat'l Fair Housing Alliance v. A.G. Spanos Constr., Inc.,* 542 F. Supp. 2d 1054
   (N.D.Cal.2008).............................................................................................................. 16

*Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002)...................................................... 15

*Nikolich v. Vill. of Arlington Heights,* 870 F.Supp.2d 556 (N.D. Ill. 2012) .............................. 26

*Options Ctr. for Indep. Liv. v. G&V Dev. Co.,* 229 F.R.D. 149 (C.D. Ill. 2005)........................ 20

*Patriotic Veterans, Inc. v. Indiana,* 736 F.3d 1041 (7th Cir. 2013)................................................ 13

*People v. Buffalo Confectionery Co.*, 401 N.E. 2d 546 (Ill. 1980)............................................ 6, 7

*People v. Flynn*, 31 N.E.2d 591 (Ill. 1940)...................................................................................... 6

*People v. Massarella,* 382 N.E. 2d 262 (Ill. 1978) .......................................................................... 6

*People v. Scharlau*, 565 N.E.2d 1319, 1326 (Ill. 1990)................................................................... 2

*People ex rel. Barrett v. Finnegan*, 38 N.E. 2d 715 (Ill. 1941) ...................................................... 8

*People ex rel. Hartigan v. E & E Hauling, Inc,* 607 N.E. 2d 165 (Ill. 1992) ................................ 8

*Phillips Electronics, N.V. v. New Hampshire Ins. Co.*, 728 N.E.2d 656 (Ill. App. Ct. 2000) ...... 10

*Ramirez v. GreenPoint Mortg. Funding, Inc.,* 633 F. Supp. 2d 922 (N.D. Cal. 2008)................ 16

*Rodriguez de Quijas v. Shearson/Am. Express, Inc.*, 490 U.S. 477 (1989)................................. 23

*Samaritan Inns, Inc. v. Dist. Of Columbia,* 114 F.3d 1227 (D.C. Cir. 1997) ............................... 20

*Shanoff v. State of Ill. Dep't of Human Servs.*, 258 F.3d 696 (7th Cir. 2001) ............................... 17

*Simovits v. Chanticleer Condo. Ass'n.,* 933 F. Supp. 1394 (N.D. Ill. 1996) ............................... 13

*Smith v. City of Jackson,* 544 U.S. 228 (2005) ............................................................................. 29

*Soto v. City of West Chicago*, 2010 WL 4810612 (N.D. Ill. Nov. 19, 2010) ............................... 17

*South-Suburban Hous. Ctr. v. Greater S. Suburban Bd. of Realtors*, 935 F.2d 868
    (7th Cir. 1991) ............................................................................................................................ 27

*Sports Bar, Inc. v. Vill. of Downers Grove, Ill.*, 129 F.R.D. 161 (N.D. Ill. 1989) ....................... 16

*Taylor v. Accredited Home Lenders, Inc.*, 580 F. Supp. 2d 1062 (S.D. Cal. 2008) ..................... 16

*Thompson v. Mountain Peak Assoc.*, LLC, No. 2:15-CV-145-BES-GWF, 2006 WL 1582126
    (D. Nev. June 5, 2006) ............................................................................................................... 17

*Thompson v. N. Am. Stainless, L.P.,* 131 S.Ct. 863 (2011) ................................................... 22, 24

*Tingley v. Beazer Homes Corp.,* No. 3:07-CV-176, 2008 WL 1902108
    (W.D.N.C. Apr. 25, 2008) .......................................................................................................... 23

*Trafficante v. Metropolitan Life Ins. Co.et al.,* 409 U.S. 205 (1972) ......................... 17, 21, 22, 24

*Tyus v. Urban Search Mgmt.,* 102 F.3d 256 (7th Cir. 1997) ......................................................... 18

*United States v. N. Trust Co.,* 372 F.3d 886 (7th Cir. 2004) ................................................... 12, 14

*U.S. v. Valistrieri,* 981 F.2d 916 (7th Cir. 1992) ......................................................................... 25

*Vill. Of Arlington Heights v. Metro. Hous. Dev. Corp.,* 429 U.S. 252 (1977) ............................. 20

*Village of Bellwood v. Dwivedi,* 895 F.2d 1521 (7th Cir. 1990) ................................................. 27

*Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011) ............................................................. 30

*Wallace v. Chicago Hous. Auth.,* 321 F. Supp. 2d 968 (N.D. Ill. 2004) ....................................... 13

*Walton v. Wells Fargo Bank, N.A.,* 2013 WL 3177888 (D. Md. June 21, 2013) ........................ 17

*Wards Cove Packing Co. v. Atonio*, 490 U.S. 642 (1989) ........................................................... 29

*Warth v. Seldin,* 422 U.S. 490 (1975) ......................................................................................... 18

*Whitley v. Taylor Bean & Whitacker Mortgage Corp.,* 607 F.Supp. 2d 885 (N.D.Ill. 2009). 26, 27

*Williamsville State Bank & Trust v. Shumaker*, 2012 IL App (4th) 110939-U .......................... 3, 8

*Wilson v. Cnty. of Marshall*, 257 Ill. App. 220 (Ill. App. Ct. 1930).............................................. 7

*Xechem, Inc. v. Bristol-Myers Squibb Co.*, 372 F.3d 899 (7th Cir. 2004)..................................... 12

**Statutes**

42 U.S.C. §3602 ............................................................................................... 15, 20, 24

42 U.S.C. §3604................................................................................................ 15, 24

42 U.S.C. §3605................................................................................................ 15, 24

42 U.S.C. §3606................................................................................................ 15, 24

42 U.S.C. §3613............................................................................ 12, 14, 15, 20, 24, 26

42 U.S.C. §3617................................................................................................ 15, 24

15 ILCS 205/4.................................................................................................... 5

15 ILCS 210/1.................................................................................................... 5

55 ILCS 5/3-9005(a)(1) ........................................................................................ 7

775 ILCS 5/1..................................................................................................... 6

**Other Authorities**

*HUD and Treasury Joint Report on "Curbing Predatory Home Mortgage Lending"*,
  54 Consumer Fin. L.Q. Rep. 218 (2000).............................................................. 1

**Rules**

Fed. R. Civ. P. 12(b) ............................................................................. 12, 16, 26, 27

Fed. R. Civ. P. 12(d) ....................................................................................... 16

## INTRODUCTION

Plaintiff Cook County respectfully submits that Defendants' motion to dismiss should be denied. Each of Defendants' arguments is contrary to the statutory scheme, the Complaint's actual allegations and controlling precedent. Defendants' *res judicata* argument fails under both the explicit language of the Consent Decree and Defendants' inability to establish an identity of either the parties or the causes of action. The remainder of Defendants' motion to dismiss asserts the same standing and statute of limitations arguments repeatedly rejected by other federal district courts in very similar and recent Fair Housing Act ("FHA") cases.[1]

## FACTS

Cook County's Complaint details Defendants' intentional, discriminatory housing practices of "equity stripping,"[2] conducted through continuing patterns and practices of: (1) intentional predatory and discriminatory mortgage loan origination and funding of higher cost mortgage loans that Defendants knew were likely to fail and targeted to FHA protected minority borrowers (including through "reverse redlining" and "steering"); (2) securitizations and sale of those mortgage loans; and (3) the interrelated servicing and foreclosures of such loans. The Complaint alleges that these schemes have not terminated, but will continue into the future until the last act in the scheme occurs—the payoff, or the default and foreclosure, of every predatory

---

[1] *City of Los Angeles v. Wells Fargo, et al.*, 22 F. Supp. 3d 1047 (C.D. Cal. 2014); *City of Los Angeles v. Bank of America Corp., et al.*, No. 2:13-CV-9046, 2014 WL 2770083 (C.D. Cal., June 12, 2014); *City of Los Angeles v. CitiGroup Inc., et al.*, 24 F. Supp. 3d 940 (C.D. Cal. 2014); *DeKalb Cty., et al. v. HSBC N. Am. Holdings, Inc., et al.*, No. 1:12-CV-03640-SCJ, 2013 WL 7874104 (N.D. Ga., Sept. 25, 2013).

[2] Equity stripping, an abusive form of "asset based lending," violates the FHA when conducted on a discriminatory basis. *Hargraves v. Capital City Mortgage Corp.*, 140 F. Supp. 2d 7, 20-21 (D.D.C. 2000), *on reconsideration in part*, 147 F. Supp. 2d 1 (D.D.C. 2001) (denying summary judgment for defendant on FHA equity stripping claim "including exorbitant interest rates [and] lending based on the value of the asset securing the loan rather than a borrower's ability to repay ('equity-stripping,' in other words is issuing a loan 'designed to fail' and profiting by acquiring the property through default, rather than by receiving loan payments, repeated foreclosures, and loan servicing procedures in which excessive fees are charged"); *see also, e.g., HUD and Treasury Joint Report on "Curbing Predatory Home Mortgage Lending"*, 54 Consumer Fin. L.Q. Rep. 218, 227 (2000).

and discriminatory, equity stripping mortgage loan Defendants originated, funded, purchased and/or serviced. The County's specific factual allegations are incorporated throughout this brief.

## ARGUMENT

### A.    Res Judicata Does Not Bar Cook County's Complaint

Cook County's single FHA claim is not barred by the doctrine of *res judicata*, which only precludes a subsequent action if it involves the same parties and the same claim, demand, or cause of action previously resolved by a final judgment rendered on the merits by a court of competent jurisdiction. *Indian Harbor Ins. Co. v. MMT Demolition, Inc.*, 13 N.E.3d 108, 114 (Ill. App. Ct. 2014). "The preclusive effect of a settlement or consent judgment," however, "depends upon the circumstances. . . . [A] consent judgment is not entitled to collateral estoppel effect which would preclude relitigation of the same issue in a different claim or cause of action." *Arnett v. Envtl. Sci. & Eng'g, Inc.*, 657 N.E.2d 668, 672-73 (1995) (emphasis added). *Res judicata* does not bar Cook County's suit because Defendants cannot prove the three essential elements: (1) a final judgment on the merits rendered by a court of competent jurisdiction, (2) identity of the causes of action, and (3) identity of the parties or their privies. *Indian Harbor*, 13 N.E. 3d at 115.

### 1.    The *Res Judicata* Effect Of A Consent Agreement Is Limited By Its Language; The Consent Decree Does Not Bar Cook County's FHA Claim

"[A] consent decree operates to the same extent for *res judicata* purposes as a judgment entered after contest and is conclusive ***with respect to the matters which were settled by the judgment or decree***." *City of Mattoon v. Mentzer*, 668 N.E.2d 601, 606 (Ill. App. Ct. 1996) (emphasis added). "Consent decrees entered by courts to effectuate settlement are. . . considered contracts between the parties to the litigation, and accordingly the law of contracts controls their interpretation." *People v. Scharlau*, 565 N.E.2d 1319, 1326, 1328-29 (Ill. 1990) (citing with

approval *Derrickson v. City of Danville, Ill.*, 845 F.2d 715, 721 (7th Cir. 1988) (refusing to apply

*res judicata*, notwithstanding consent decree, for reasons analogous here)). In determining "the

matters which were settled by the" Consent Decree, *Mentzer*, 668 N.E.2d 606, this Court must

"giv[e] effect to the words used in the decree and the parties' intention underlying the decree."

*Williamsville State Bank & Trust v. Shumaker*, 2012 IL App (4th) 110939-U, ¶20 (*unreported* in

N.E.2d) (*citing Allied Asphalt Paving Co. v. Vill. of Hillside*, 731 N.E.2d 425, 429 (2000)).

Because the Consent Decree explicitly limits the agreement to resolve only those civil

enforcement claims actually asserted in the AG Complaint, Consent Decree, ¶6 ("The parties

enter into this Consent Decree to resolve fully and finally ***all claims asserted in the [AG]***

***Complaint*. . . .**") (emphasis added), *res judicata* can only bar re-litigation of those same claims

by the same parties - not Cook County's distinct FHA claim.[3] *Dunn v. Carey*, 808 F.2d 555,

559-560 (7th Cir. 1986) ("Consent decrees are contracts. Their force comes from the agreement

of the parties, not from the statute on which the complaint was based.") (*citing Firefighters Local*

*93 v. City of Cleveland,* 478 U.S. 501, 522, 525 (1986) ("[I]t is the agreement of the parties . . .

that creates the obligations embodied in a consent decree. . . . [T]he parties' consent animates the

legal force of a consent decree.")).

Nor does the Consent Decree explicitly release or bar any claims by any individual

aggrieved parties for their actual damages. *See* Consent Decree. Instead, the Consent Decree

acknowledged that aggrieved individuals retained their private right of action for damages unless

they signed a release. *See id*, Ex. A, at 16 (incorporating U.S Consent Decree stating: "No

aggrieved person will be paid any amount under the settlement fund until he or she has executed

---

[3] *See also* Consent Decree, ¶3 ("The relief as provided in this paragraph resolves Defendants' pending litigation with the Illinois Attorney General in this matter, *People of The State of Illinois v. Wells Fargo Bank and Company, et al.,* 09 CH 26434."). Cook County's actual damages, as an aggrieved party itself, clearly does not fall within the relief in the Consent Decree, which is for the stated benefit of "allegedly aggrieved ***persons who lived in Illinois at the time of their loan origination*.**" *Id.* (emphasis added).

and delivered to Wells Fargo a 'Release'."), Appendix A (Release). Neither the Consent Decree, nor the U.S. Consent Decree, bars Cook County's claim because the County did not release Wells Fargo from the County's FHA claim, let alone for the actual damages it alleges.[4]

Thus, the existence of claims the Attorney General "could have brought" is not relevant here, given that the Consent Decree explicitly defines the scope of the parties' settlement which limits the *res judicata* effect that flows from it.[5] By its plain language, the Consent Decree does not, and cannot, bar Cook County's FHA claim for actual damages as an "aggrieved party." *Dunn*, 808 F.2d at 559-60.

## 2. There Is No Common Identity Of The Parties Plaintiff

Defendants cannot rely on the plain language of the Consent Decree to preclude the County, as either a "political subdivision of the State of Illinois" or as an individual party, from bringing its own claim for actual damages as an "aggrieved person" under the FHA. Neither the Consent Decree, nor the underlying AG Complaint, were nominally or substantively brought "on behalf of the State and its political subdivisions" as a real party in interest. Instead, the Consent Decree and the AG Complaint make clear that the Attorney General only was "acting in the public interest," only "on behalf of The People of the State of Illinois," and only in the context of

---

[4] For these same reasons, the fact that the Consent Decree incorporated the U.S. Department of Justice's consent order with only Wells Fargo Bank, N.A., does not bar Cook County's FHA claim, as Defendants suggest. *See* Def. Br. at 11-12. This is because the Consent Decree speaks only to the fact that the *relief obtained* by the DOJ served to *satisfy the relief sought* in the AG Complaint. The plain language of the Consent Decree makes clear that there was no "release" or "bar" of any individual FHA claim seeking actual damages as an aggrieved person thereunder.

[5] Defendants argue that Cook County is barred from asserting "any claim that '*was raised or could have been raised*' in the earlier [Attorney General] suit." *See* Def. Br. at 8 (emphasis added) (misapplying and selectively quoting *Abner v. Illinois Dep't of Transp.*, 674 F.3d 716, 720 (7th Cir. 2012)). *Abner* is not determinative. It did not involve the preclusive effect of *res judicata* arising from a consent decree. Instead, it merely applied basic *res judicata* principles to hold that a state court decision on the merits (reviewing an administrative agency determination of an employment matter) barred a subsequent federal retaliation lawsuit involving the same parties, facts, and termination issue. *Abner*, 674 F.3d at 719-20.

civil enforcement powers. Consent Decree, Intro., General Provisions, and ¶6;[6]

The distinction is critical. As the chief legal officer of the State, the Attorney General has enumerated powers to: (a) prosecute legal actions "on behalf of the State and its political subdivisions" as a real party in interest; or (b) investigate and enforce criminal and certain statutory civil matters "on behalf of the People" of the State, acting "in the public interest." *See, e.g., Envtl. Prot. Agency v. Pollution Control Bd.,* 372 N.E. 2d 50, 51-52 (Ill. 1977); *Lyons v. Ryan*, 780 N.E.2d 1098, 1105-06 (Ill. 2002); 15 Ill. Comp. Stat. Ann. 210/1; 15 ILCS 205/4. Defendants recognize this distinction, and the lack of any nominal identity between the Attorney General and Cook County, by relying on a privity argument. *See* Def. Br. at 12-14.

Privity requires both an identity of interest in the prior proceeding ***and*** adequate representation of that interest. *Indian Harbor*, 13 N.E. 3d at 119 ("It is the identity of interest that controls in determining privity, not the nominal identity of the parties.") (citations omitted)). Whether the parties at issue had "engaged in very different types of actions and sought different relief" determines whether privity exists. *Indian Harbor*, 13 N.E. 3d at 121 (distinguishing, on the facts before it, *Agolf, LLC v. Vill. of Arlington Heights*, 946 N.E.2d 1123 (Ill. App. Ct. 2011)). Indeed, "the question of who is a privy is a factual one, requiring a case-by-case examination." *Jackson v. Callan Pub., Inc.*, 826 N.E.2d 413, 428-429 (Ill. App. Ct. 2005) (remanding for resolution whether plaintiffs' interests were "represented fully and adequately" by the Attorney General in settlement of actions against defendants).

Here, there is neither an identity of interest between Cook County and the Attorney General, nor could the Attorney General have adequately represented those interests, as a matter of law. The Consent Decree covered only the claims asserted in the AG Complaint, *see* Consent

---

[6] Unable to dispute this plain language Defendants argue, without any basis, that the Attorney General was "***acting on behalf of***" the State and its political subdivisions. *See* Def. Br. at 10 (emphasis added).

Decree, ¶6, and the Attorney General prosecuted Wells Fargo's housing discrimination activities only under the Illinois Human Rights Act (the "IHRA"), 775 ILCS 5/1, Section 104(A)(1) (authorizing the Attorney General to bring only a civil enforcement action "in the name of the People of the State, as *parens patriae* on behalf of persons within the State to enforce the provisions of this Act."). *See* AG Complaint, ¶¶224, 232-46. Furthermore, the only remedies available to the Attorney General under the IHRA, and which were sought in the AG Complaint, are indisputably limited to "equitable relief" and the imposition of "a civil penalty." 775 ILCS 5/1, Section 104(B); *see* AG Complaint, Prayer for Relief, Counts I and II.[7]

The Attorney General clearly did not, in fact, sue Wells Fargo for actual damages as either an "aggrieved person" under either the FHA or as an "aggrieved party" under the IHRA.[8] Nor could the Attorney General have unilaterally brought suit against Wells Fargo for Cook County's actual damages as an aggrieved person under either the FHA or the IHRA without the participation or consent of the State's Attorney for Cook County because the Attorney General lacks exclusive authority to do so. *See People v. Buffalo Confectionery Co.*, 401 N.E. 2d 546, 549-50 (Ill. 1980); *People v. Massarella,* 382 N.E. 2d 262, 263-264 (Ill. 1978); *People v. Flynn*, 31 N.E.2d 591, 593 (Ill. 1940). *See also* Declaration of Kent S. Ray ("Ray Decl.") (submitted

---

[7] To the extent the Attorney General sought equitable relief of "restitution to all consumers who were affected by" Wells Fargo's practices, AG Complaint, Counts I and II, this is very different from any actual damages sought by Cook County, which was not a "consumer" of the mortgage loans at issue.

[8] On its face the AG Complaint did not represent the interests of Cook County as an aggrieved person in obtaining relief for the actual damages that Defendants caused to it. *See* AG Complaint. Nor did the AG Complaint seek actual damages on behalf of Cook County, the State of Illinois, or any other political subdivision thereof for any harm suffered as an aggrieved person. *Id.* Indeed, the IHRA does not expressly empower the Attorney General to bring a claim for "actual damages" as an "aggrieved party" on behalf of the People of the State of Illinois or on behalf of "the State and its political subdivisions" as a real party in interest. 775 ILCS 5/1, Section 104(B).

herewith), ¶2.[9]  This is because the State's Attorney has a statutory duty to represent the County in all civil matters in which the County has an interest. *See id*; 55 Ill. Comp. Stat. Ann. 5/3-9005(a)(1); *Cnty. of Cook ex rel. Rifkin v. Bear Stearns & Co.*, 831 N.E.2d 563, 573 (Ill. 2005) ("The State's Attorney, as a constitutional officer whose duties are analogous to and coincident with those of the Attorney General, is the only person empowered to represent the County in matters when, as here, the County is the real party in interest"); *Wilson v. Cnty. of Marshall*, 257 Ill. App. 220, 224 (Ill. App. Ct. 1930) ("In civil actions, the duty of representing the county is likewise imposed upon [the State's attorney], unless imposed upon another by express statutory provision."). Therefore the Attorney General's civil enforcement proceedings in the AG Complaint did not, and could not, have had an identity of interest with Cook County in a claim for Cook County's actual damages as an aggrieved party under the FHA, *Indian Harbor*, 13 N.E. 3d at 119-121, nor could the Attorney General have adequately represented such interests, as a matter of law, in the absence of the State's Attorney for Cook County, *Buffalo Confectionery Co.,* 401 N.E. 2d 549-50. Thus, there is no privity for the purpose of applying *res judicata* in the context of the facts here.

None of the cases cited by the Defendants support their overbroad privity argument – i.e., that any action by the Attorney General, no matter who the nominal parties are, simultaneously binds all the political subdivisions of the state and all of the state's civil enforcement powers on behalf of its citizens.  In addition, with the exception of *Friends of Milwaukee's Rivers v.*

---

[9] *See also* http://www.illinoisattorneygeneral.gov/about/history.html (discussing the history of the Office of the Illinois Attorney General, its power and its limitation of power). This further puts to rest the irrelevant question of whether Cook County's claims "could have been raised" by the Attorney General in the AG Complaint and resolved in the Consent Decree.  *See* Def. Br. at 8.  They could not have been absent the State's Attorney. The State's Attorney for Cook County has requested comment from the Illinois Attorney General's Office in this matter, should the Attorney General chose to comment, but as of the close of business on March 13, 2015, The State's Attorney has not received a formal response. Ray Decl., ¶3.

*Milwaukee Metro. Sewerage Dist.*, the cases Defendants cite are distinguishable because the state was a real party in interest in each such case. *See* Def. Br. at 12-14.[10] In *Friends of Milwaukee's Rivers,* the Seventh Circuit found that the Attorney General did not diligently prosecute the prior case, but the element of privity was nevertheless met because the citizen-suit was brought under the constitutional provision that allows citizens to sue as "private attorney generals" where the government fails to sue. *Friends of Milwaukee's Rivers,* 382 F.3d 743, 759 (7th Cir. 2004). Thus, the court found that the Attorney General's interests and the subgroups' interests were aligned expressly by the statutory scheme. *See id.* **The complete opposite is true here** where the IHRA distinguishes civil enforcement actions that only may be brought by the Attorney General on behalf of the People of the State of Illinois and in the public interest.  In contrast, civil claims for "actual damages" under the IHRA only may be brought by "aggrieved parties." *Compare* 775 ILCS 5/1 §104(A)(1) *with* §104(B)(3).

### 3.   There Is Not A Common Identity of Defendants

The signatory defendants in the Consent Decree are not the same as the Defendants in Cook County's Complaint.  Thus, even if *res judicata* could apply to Cook County as a privy of the Attorney General under the Consent Decree, which it does not, its effect would be limited to only those Wells Fargo defendants in the Consent Decree. *See, e.g., Shumaker*, 2012 IL App (4th) 110939U, ¶20; *Firefighters Local 93,* 478 U.S. at 522, 525; *Dunn*, 808 F.2d at 559-60.

---

[10] In *People ex rel. Barrett v. Finnegan*, 38 N.E. 2d 715 (Ill. 1941), the State of Illinois was a real party in interest because the State Treasurer, the Auditor of Public Accounts, the Director of Finance, and the members of the Civil Service Commission were named defendants in their official capacities.  In *People ex rel. Hartigan v. E & E Hauling, Inc*, 607 N.E. 2d 165 (Ill. 1992), the State of Illinois was a real party in interest because the Attorney General brought suit for common law fraud resulting from a breach of contract between defendants and a state agency. In *Nash Cnty. Bd. of Ed. v. Biltmore Co.*, 640 F.2d 484, 494 (4th Cir. 1981), the State of North Carolina was a real party in interest because the Attorney General, in filing the action, was "the legal representative, entitled to commence and maintain such suit on behalf of []each public school system in the State of North Carolina." *Id.*

The Consent Decree involved only the conduct of Wells Fargo Bank, N.A., Wells Fargo Home Mortgage, and Wells Fargo Financial Illinois, Inc., and only those Wells Fargo entities were signatories to it. *See* Consent Decree.[11] Cook County's Complaint, however, involves numerous additional Wells Fargo entities, particularly including Wells Fargo & Co., Wells Fargo Financial, Inc. and Wells Fargo "John Doe" Corps 1-375 through which Wells Fargo conducted its equity stripping scheme. *See, e.g.,* Cmplt., ¶¶ 27, 101, 143-44, 208, 211, 213, 219, 221, 223, 225, 233, 256, 286. Few, if any, of these other Wells Fargo entities would be covered by the introductory language in the Consent Order – i.e., the language describing the Consent Order's signatory defendants to include "their successors, assigns, predecessors, and any future acquired or created corporations or other business entities." *See* Def. Br. at 10. Wells Fargo & Co., a named Defendant in Cook County's Complaint, is not a signatory to the Consent Decree. And, as the ultimate ***parent*** holding company for all the Wells Fargo and acquired Wachovia entities, it is not a "successor," "assign," "predecessor," or "future acquired or created corporation" contemplated in the Consent Decree.

Moreover, Cook County's Complaint alleges that Wells Fargo & Co. also is liable for the ***separate*** discriminatory equity stripping scheme of Wachovia Corporation and its various subsidiaries, all of which Wells Fargo & Co. acquired in December 2008. *See, e.g.,* Cmplt., ¶¶18-27, 404-411. It is indisputable that none of the Wachovia entities were signatories to the Consent Decree and none were named in the AG Complaint. *See generally*, Consent Decree; AG Complaint. Nor do the Wachovia entities fall within the Consent Decree's language defining the Wells Fargo signatories as including "successors, assigns, predecessors, and any

---

[11] The Attorney General's Complaint originally also named "Wells Fargo And Company," which was not a signatory to the Consent Decree and was not released by it. AG Complaint.

future acquired or created corporations."[12] Thus, there cannot be a common identity of these defendants either.

### 4. There Is No Common Identity Of The Causes Of Action

Even if there was a common identity among the parties, which there is not, the Consent Decree and the AG Complaint make clear that there is no common identity of the causes of action in the AG Complaint and Cook County's Complaint. For this reason alone, *res judicata* will not apply. *Indian Harbor*, 13 N.E.3d at 115.

"Identity of the causes of action" extends "not only to those claims fully litigated in the first proceeding, but also to those issues that could have been raised or decided, but were not." *Phillips Electronics, N.V. v. New Hampshire Ins. Co.*, 728 N.E.2d 656, 664 (Ill. App. Ct. 2000). Illinois courts "pragmatically" apply the "transactional test," requiring examination of "the facts that give rise to the plaintiff's right to relief, not simply the facts which support the judgment in the first action." *Indian Harbor*, 13 N.E.3d at 116. "The factors relevant to ascertaining whether the two lawsuits are linked include their relation in time, space, origin, and motivation, whether they form a convenient trial unit, and whether their treatment as a single unit conforms to the parties' expectations and business usage or understanding." *Id* (internal citations omitted).

A fair reading of Cook County's Complaint, as compared to the AG Complaint and Consent Decree, reflects that Cook County's single FHA cause of action does not share an identity with the AG Complaint's IHRA civil enforcement cause of action (or other causes of action) – although there is some overlap in the underlying facts. Determinative here is that the AG Complaint does not arise from the "same transaction" as the Cook County Complaint, nor is

---

[12] As alleged in Cook County's Complaint, Wells Fargo & Co. (the ***parent*** of the signatory Wells Fargo defendants) acquired Wachovia on December 31, 2008, ***prior to*** the AG Complaint and Consent Degree. Complaint at ¶¶ 21-22, 24, 404-411. Therefore, the Wachovia entities also cannot be "successors," "assigns," "predecessors," or "future acquired or created corporations" under the Consent Decree.

it related in time, space, origin and motivation, and could not form a convenient trial unit.

Liability in the AG Complaint (for Wells Fargo's violations of the IHRA) is based only on Wells Fargo's mortgage lending practices through 2007.[13] *See generally*, AG Complaint. Cook County's Complaint, however, alleges a broad, continuing, intentional "discriminatory housing practice of 'equity stripping,' involving Defendants' interrelated predatory and discriminatory mortgage lending, mortgage securitization, mortgage loan servicing and foreclosure activities." *See, e.g.,* Cmplt., ¶3. It also alleges that the discriminatory housing practice of equity stripping occurs "over the entire life of each mortgage loan, continuing until the loan is either paid off (or refinanced with a non-predatory loan) or until the borrower defaults and the underlying asset is foreclosed upon." *See, e.g.,* Cmplt., ¶7. Because of the "continuing actions of servicing each of the predatory and discriminatory mortgage loans they made," Defendants in the Cook County Complaint "perpetuate[] equity stripping" and continue to violate the FHA "to this very day"; as such Cook County therefore seeks "injunctive relief as a remedial measure" and actual damages. *See, e.g.,* Cmplt., ¶¶9-10. As such, the basis for Cook County's FHA cause of action, and the evidence necessary to support it, ***cannot arise from the same transaction*** because Defendants' continuing, discriminatory mortgage loan servicing and foreclosure activities were neither the subject of the AG Complaint and Consent Decree, nor could they possibly have occurred within the same time frame.[14]

---

[13] To support their identity of the causes of action argument, Defendants recast Cook County's Complaint as primarily focused on the very same mortgage lending activity during the same time frame, mischaracterizing the entire gravamen of Cook County's Complaint. *See* Def. Br. at 5-6. Defendants rely on this same, critical, mischaracterization of Cook County's Complaint, as further discussed *infra* at footnotes 15, 19 to support their position on the statute of limitations. *See* Def. Br. at 23-24. The Court should not be misled by Defendants' self-serving and myopic restatement of Cook County's allegations.

[14] Indeed, as to the AG Complaint's reference to Wells Fargo's 2008 foreclosures, the purpose appears merely to identify some of the injury arising from the predatory and discriminatory lending practices of the named Wells Fargo entities. Cook County's Complaint focuses on the predatory and discriminatory

In sum, there is neither a common identity of the parties nor a common identity of the causes of action between the Consent Order, the underlying AG Complaint, and the Cook County Complaint. *Res judicata*, therefore, cannot bar Cook County's Complaint.

**B.    The Complaint Is Timely**

**1.   The Statue of Limitations Has Not Begun to Run, Nor Has it Expired.**

Wells Fargo does not, and cannot, reasonably challenge the timeliness of Cook County's Complaint under the plain language of the FHA and therefore does not, and cannot, meet its initial burden of establishing that it is entitled to this affirmative defense. *See United States v. Northern Trust Co.*, 372 F.3d 886, 888 (7th Cir. 2004) (defendants have the initial burden of showing that the allegations in the Complaint entitle them to a statute of limitations defense); *see also Xechem, Inc. v. Bristol-Myers Squibb Co.*, 372 F.3d 899, 901 (7th Cir. 2004) ("Only when the plaintiff pleads itself out of court—that is, admits all the ingredients of an impenetrable defense—may a complaint that otherwise states a claim be dismissed under Rule 12(b)(6)").[15]

The FHA's statute of limitations provides that "[a]n aggrieved person may commence a civil action in an appropriate United States district court or State court not later than *2 years after* the occurrence **_or the termination of an alleged discriminatory housing practice . . . whichever_**

---

nature of all the Defendants' mortgage servicing and mortgage foreclosure practices (as well as their predatory lending practices), particularly including the Wachovia-related entities, and it does so on an historical and a going forward basis. Moreover, unlike the AG Complaint, Cook County's Complaint focuses on the intentional nature of Defendants' schemes to generate mortgage servicing rights assets and revenue and profits from their loan origination, securitization, servicing and foreclosure activities. *See generally* Cmplt.

[15] To create their statute of limitations argument, Defendants necessarily mischaracterize Cook County's Complaint as focused on Defendants' predatory lending, *see, e.g.* Def. Br. at 3-4, 23-24, and not the continuing discriminatory equity stripping scheme Cook County actually alleges. *See, e.g.,* Cmplt. ¶¶ 3, 6-11, 14, 71, 85-88, 96, 107, 113-116, 266-67, 281-84, 286, 309-12, 322, 328-33, 370-73, 393-94, 397-98, 418-22. In this way Defendants rely on an entirely distinguishable case, *Estate of Davis v. Wells Fargo Bank*, 633 F.3d 529, 532 (7th Cir. 2001), to argue that "an FHA claim for discriminatory loan origination accrues and begins to run from the date of closing." *See* Def. Br. at 24. *Davis* involved isolated incidents of predatory lending, not a discriminatory equity stripping scheme. *See id.*

*occurs last*." 42 U.S.C. §3613(a)(1)(A) (emphasis added).[16] Applying the plain language of §3613(a)(1)(A) to the allegations in Cook County's Complaint results in but one conclusion: Defendants cannot meet their initial burden on their limitations defense. Cook County's Complaint alleges that Defendants ***continue to engage*** in a pattern and practice of equity stripping and, therefore, the FHA's two-year limitations period has not even begun to run, nor can it have expired. *See, e.g., Wallace v. Chicago Hous. Auth.*, 321 F. Supp. 2d 968, 973 (N.D. Ill. 2004) (Castillo, J.); *see also Fair Hous. Council, Inc. v. Vill. of Olde St. Andrews, Inc.*, 210 F. App'x 469, 479 (6th Cir. 2006) (holding that the FHA's two-year limitations period does not begin to run until an alleged continuing housing practice terminates).

Like *Wallace* and *Vill. of Olde St. Andrews*, other courts relying on the Supreme Court's binding precedent in *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 380-81 (1982), carefully have distinguished pattern and practice cases, such as Cook County's, from single occurrence cases. Indeed, this Court previously held that the "limitations defense fails at the pleading stage" where the face of an FHA complaint does not establish that an alleged discriminatory housing practice terminated at least two years before plaintiff filed suit. *See, e.g., Jafri v. Chandler LLC*, 970 F. Supp. 2d 852, 864-65 (N.D. Ill. 2013) (Feinerman, J.).[17] In an almost identical case, the

---

[16] There are no other relevant conditions stated in the plain language of 42 U.S.C. §3613(a)(1)(A), and, of course, none may be added by the courts or the parties. *See Patriotic Veterans, Inc. v. Indiana*, 736 F.3d 1041, 1047 (7th Cir. 2013). Thus, the statute is entirely dispositive because the Court's "task is to give effect to the will of Congress, and where its will has been expressed in reasonably plain terms, [its] language must ordinarily be regarded as conclusive," even if the resulting effect on the defendants is "hard or unexpected." *Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 570, 575 (1982). *See also Atunnise v. Mukasey*, 523 F.3d 830, 836 (7th Cir. 2008) (noting "the canon that plain and unambiguous statutes must be applied as written").

[17] *See also, e.g., Simovits v. Chanticleer Cond. Ass'n*, 933 F. Supp. 1394, 1404 (N.D. Ill. 1996) (FHA statute of limitations does not begin to run when plaintiff first becomes aware of a potential violation of the act, but on the date of the last asserted occurrence of the discriminatory act); *Honorable v. Easy Life Real Estate Sys., Inc.*, 182 F.R.D. 553, 564 (N.D. Ill. 1998) (where plaintiffs challenge "an unlawful practice that continues into the limitations period[,] the claim is timely if it is filed within two years of the last asserted occurrence of that practice").

13

Northern District of Georgia recently granted the plaintiff counties' motion for partial summary judgment, and denied the defendant banks' competing summary judgment motion, on this precise statute of limitations issue. *DeKalb County v. HSBC*, No. 1:12-cv-03640-ELR, (N.D. Ga. Mar. 3, 2015) (hereafter "*DeKalb* Order") (attached as Exhibit A to Declaration of Daniel A. Dailey ("Dailey Decl.") submitted herewith). The court in *DeKalb* reasoned that the counties' complaint, which alleged a similar "equity stripping" scheme to Cook County's allegations here, was "not time-barred" because "[p]laintiffs have properly pled an ongoing pattern of discriminatory housing practices which was alleged to have been continuing at the time of filing of the Complaint." *DeKalb* Order at 4.[18]

### 2. The "Continuing Violation Doctrine" Is Irrelevant At This Time.

Because Cook County's Complaint is not untimely under the plain language of 42 U.S.C. §3613(a)(1)(A), application of equitable doctrines to extend an expired limitations period -- such as the common law "continuing violation doctrine" or equitable tolling -- are irrelevant and wholly inappropriate at this time. Defendants may not shift their own initial burden of establishing a statute of limitations defense onto Cook County, *see, e.g., Northern Trust Co.*, 372 F.3d at 888, by arguing that the County is not entitled to rely on a "continuing violation" theory to extend a limitations period that has not been found to have begun to run, let alone found to have expired.[19] *See DeKalb* Order at 4 ("a decision regarding the common law continuing

---

[18] Three other federal courts recently have reached similar conclusions in analogous FHA predatory mortgage lending cases brought by the City of Los Angeles. *See City of Los Angeles v. Wells Fargo, et al.*, 22 F. Supp. 3d 1047 (C.D. Cal., 2014); *City of Los Angeles v. CitiGroup Inc., et al.*, 24 F. Supp. 3d 940 (C.D. Cal., 2014); *City of Los Angeles v. Bank of America Corp., et al*, No. 2:13-cv-9046, 2014 WL 2770083 (C.D. Cal., June 12, 2014).

[19] This same misleading briefing strategy was first employed by defendant HSBC in its motion to dismiss *DeKalb*, wrongly focusing that court on whether the "continuing violation doctrine" could save plaintiffs' claims, without ever determining that the complaint was untimely in the first instance, forcing the plaintiff counties to brief "irrelevant" topics. *See DeKalb* Order at 4, n. 1-2. In essence, HSBC conflated the

violations doctrine or the doctrine of equitable tolling is unnecessary" because plaintiffs properly

pled a continuing discriminatory housing practice under the FHA's statute of limitations).

But even if application of the "continuing violation doctrine" provided the correct legal

analysis, Cook County's Complaint is still timely given the continuing nature of the

discriminatory housing practice – equity stripping – alleged in Cook County's Complaint. Unlike

Defendants here who must rely on distinguishable non-FHA cases,[20] including one that expressly

has been superseded by statute,[21] Cook County's position is well-grounded in the broad language

of the FHA[22] and the case law interpreting and applying the FHA,[23] particularly the Supreme

---

equitable elements of the common law "continuing violation doctrine" with the plain language of
§3613(a)(1)(A). *See id.*; *DeKalb*, 2013 WL 7874104 at *9-*12. This is precisely what the Defendants
intentionally attempt to do here, *see* Def. Br. at 3, 24-26, and precisely what they and other defendant
groups have done in the *City of Los Angeles* FHA cases. *See Wells Fargo*, 22 F. Supp. 3d at 1058-59
(rejecting the statute of limitations defense, but focusing on the "continuing violation" doctrine discussed
in *Havens* without a direct application of the plain language of §3613(a)(1)(A) to the actual charging
allegations); *Citigroup Inc.*, 24 F. Supp. 3d at 951-52 (same); *Bank of America Corp.*, 2014 WL 2770083
at *9-*10 (same). This Court should not fall for Defendants' ruse – one that the *DeKalb* court eventually
upended. *See DeKalb* Order at 4.

[20] For example, Defendants rely on *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101,115 (2002), an
employment discrimination case that actually supports Cook County's position. Far from "prohibit[ing]
the County from challenging time-barred, pre-limitations conduct based on its supported "relationship to
'ongoing' origination, servicing, or foreclosure activities[,]" Def. Br. 24-25, *Morgan* recognized the
importance of examining the continuing nature of the claims asserted, stating that "[h]ostile environment
claims are different from discrete acts. *Their very nature involves repeated conduct. . . ." Morgan*, 536
U.S. at 115 (emphasis added). *Kimbrew v. Fremont Reorg. Corp.*, 2008 WL 5975083 at *3-*4 (C.D. Cal.
Nov. 14, 2008), is distinguishable for the same reason – the plaintiff's claim there was not based on the
cumulative effects of repeated conduct.

[21] No fewer than 100 courts around the U.S., including the Seventh Circuit, have recognized that
Congress abrogated *Ledbetter v. Goodyear Tire & Rubber Co.*, 550 U.S. 618, 625, 628 (2007), by passing
the Lily Ledbetter Fair Pay Act of 2009. *See, e.g., Groesch v. City of Springfield*, 635 F.3d 1020, 2023-26
(7th Cir. 2011) (acknowledging that *Ledbetter* was superseded by statute).

[22] The FHA defines an "aggrieved person" as "any person who claims to have been injured by a
discriminatory housing practice; or believes that such person will be injured by a supported discriminatory housing
practice that is about to occur." 42 U.S.C. §3602(i). Congress broadly defined a "discriminatory housing
practice" as "an act that is unlawful under section 3604, 3605, 3606, or 3617 of this title." 42 U.S.C.
§3602(f). Cook County alleges that it is an "aggrieved person." *See, e.g.,* Cmplt. ¶¶ 1, 17. As such, the
County may seek a broad range of remedies including actual and punitive damages, attorneys' fees, and
injunctive relief for injuries that have occurred ***or are about to occur***. 42 U.S.C. §3613(a) & (c).

Court decision in *Havens,* 455 U.S. at 380-81 (recognizing that "a plaintiff" may bring an action under the FHA for "an unlawful practice that continues into the limitation period" and warning lower courts that a "wooden" application of the FHA's statute of limitations that "ignores the continuing nature of the alleged violation" would only "undermine[] the broad remedial intent of Congress embodies in the Act.").

### 3. The FHA's Statute of Limitations Does Not Impose a Discovery Rule.

Under the plain language of the FHA—and the well-developed body of case law interpreting it—what a plaintiff knew, and when the plaintiff knew it, simply do not become part of the FHA's statute of limitations calculus when the plaintiff has pled that the alleged discriminatory housing practice was part of an ongoing illegal scheme when the complaint was filed.[24] *See, e.g., Garcia v. Brockway*, 526 F.3d 456 (9th Cir. 2008) (finding a discovery rule in

---

[23] *See, e.g., Barrett v. H & R Block, Inc.*, 652 F. Supp. 2d 104, 110-11 (D. Mass. 2009) (continuing violations doctrine preserved FHA disparate impact claims against mortgage lender based on "Discretionary Pricing Policy"); *Ramirez v. GreenPoint Mortg. Funding, Inc.*, 633 F. Supp. 2d 922, 929-30 (N.D. Cal. 2008) (same); *Miller v. Countrywide Bank, N.A.*, 571 F. Supp. 2d 251, 261-63 (D. Mass. 2008) (same; explaining that continued payments on discriminatory mortgage loans create continuing effects on which the plaintiff "continue[d] to experience"); *Taylor v. Accredited Home Lenders, Inc.*, 580 F. Supp. 2d 1062, 1065 (S.D. Cal. 2008) (same); *see also, e.g., Village of Olde St. Andrews*, 210 Fed. App'x at 479 (continuing violation theory applied to ongoing practice of designing and constructing housing units and limitations period tolled "until the sale of the last unit in that development"); *Nat'l Fair Housing Alliance v. A.G. Spanos Constr., Inc.*, 542 F. Supp. 2d 1054, 1060-62 (N.D.Cal.2008) (same; "That more than one incident of steering occurred only demonstrates a pattern of such violations, not that each incident, standing on its own, is not a violation of the FHA.").

[24] The County objects to the inclusion of any materials Defendants would use to demonstrate that the County had notice of its claims by a specified date (which the County absolutely does not concede) at this stage of the litigation, i.e. before the County has had an opportunity to conduct discovery to prove the continuing nature of Defendants' scheme in the first place since. Moreover, plaintiff's purported knowledge of a claim against a particular defendant is fact-intensive and entirely inappropriate in the context of a motion to dismiss on statute of limitations grounds because the issue must be analyzed under Rule 12(b)(6), not Rule 12(b)(1). *See, e.g., Ghartey v. St. John's Queens Hosp.*, 869 F.2d 160, 162 (2ⁿᵈ Cir. 1989); *Sports Bar, Inc. v. Vill. of Downers Grove, Ill.*, 129 F.R.D. 161, 162 (N.D. Ill. 1989 (citing *Ghartey*). To the extent such materials are not excluded by the Court, Rule 12(d) requires that Wells Fargo's motion be "treated as one for summary judgment under Rule 56." Fed.R.Civ.P. 12(d); *Hammond v. Sys. Transp., Inc.*, 11-CV-1295, 2012 WL 3234865 (C.D. Ill. Aug. 6, 2012). Thus, if the Court chooses to consider these materials, Plaintiff respectfully requests pursuant to Federal Rules 12(d) and 56(d) either that: (1) Wells Fargo's motion to dismiss be converted to a motion for summary judgment and denied on

FHA cases would "contradict[] the text of the FHA").[25] Nor may the court add any new requirements not already in the FHA's statute of limitations, particularly where those requirements in the context of this case would be contrary to the FHA's remedial purpose. *See Trafficante*, 409 U.S. at 209 (the language of the FHA is "broad and inclusive" and must be given "generous construction"); *Griffin*, 458 U.S. at 570; *Barnhart*, 534 U.S. at 450.

### C.   Cook County Has Standing to Pursue its FHA Claim.

#### 1.   Cook County Adequately Pled Article III Standing - All That Is Required.

U.S. Supreme Court precedent clearly and broadly defines standing under the FHA as limited only by the minimal constitutional requirements of Article III, such that a plaintiff "have suffered 'a distinct and palpable injury to himself' that is likely to be redressed if the requested relief is granted." *Gladstone Realtors v. Vill. of Bellwood*, 441 U.S. 91, 100, 110-11 (1978)

---

its face, or (2) that Plaintiff "be given a reasonable opportunity to present all the material that is pertinent to the motion," following an opportunity for discovery, because Defendants are in possession of the mortgage loan and loan servicing information that would establish the continuing nature of Defendants' equity stripping schemes.

[25] *See also DeKalb* Order at 8, n. 4 ("the only relevant inquiry at this stage is when the discriminatory housing practice terminated. A discovery rule like that encouraged by Defendants would be incompatible with the statute itself") (Dailey Decl., Ex. B); *Walton v. Wells Fargo Bank, N.A.*, CIV.A. AW-13-428, 2013 WL 3177888 (D. Md. June 21, 2013) ("The discovery rule . . . does not apply to the unambiguous language of the FHA's statute of limitations provision"); *Miller v. Countrywide Bank, N.A.*, 571 F. Supp. 2d 251, 263 (D. Mass. 2008) (no discovery rule under the FHA); *Thompson v. Mountain Peak Assoc., LLC*, No. 2:15-CV-145-BES-GWF, 2006 WL 1582126 at *2-*3 (D. Nev. June 5, 2006) (finding discovery rule inapplicable to FHA claims because "the relevant inquiry is when the last discriminatory act occurred"); *Moseke v. Miller & Smith, Inc.*, 202 F. Supp. 2d 492, 509-10 (E.D. Va. 2002) (rejecting application of "discovery rule" under FHA). *But see Jones v. Citibank, Fed. Sav. Bank*, 844 F. Supp. 437, 440 (N.D. Ill. 1994 (applying discovery rule in factually distinguishable context of a single occurrence mortgage discrimination FHA claim). Wells Fargo's cited cases do not compel a contrary conclusion. Neither *Moskowitz v. Trust. of Purdue Univ.*, 5 F.3d 279, 281-82 (7th Cir. 1993), nor *Shanoff v. State of Illinois Dep't of Human Serv's*, 258 F.3d 696, 703 (7th Cir. 2001), involved the FHA, but rather involved employment discrimination claims under Title VII. Furthermore, *Moskowitz* did not include allegations of a scheme of discrimination that continued through the filing of the complaint, but rather focused on a discrete act of employment discrimination that occurred outside the statute of limitations period. *Soto v. City of W. Chicago*, 2010 WL 4810612 at *5 (N.D. Ill. Nov. 19, 2010), also is factually distinguishable because the court found that there was no "pattern of conduct." Finally, *Krieman v. Crystal Lake Apt's Ltd. P'ship*, 2006WL1519320 at *5 (N.D. Ill. May 31, 2006), *Shanoff*, and *Moskowitz* are procedurally distinguishable because they were decided on the defendants' motions for summary judgment.

(holding that a municipal government has Article III standing to pursue an FHA claim when it has alleged a loss in its tax base and revenue due to defendants' discriminatory housing practice).[26] Here, *Gladstone* unequivocally resolves the standing issue, yet Defendants curiously fail to even cite *Gladstone* in their brief, let alone try to distinguish it.

Cook County's Complaint pleads the same types of injuries (in addition to many other injuries) that the Supreme Court found in *Gladstone* supported another municipal government's FHA standing. Moreover, Cook County's Complaint goes far beyond *Gladstone* and the three minimal pleading elements the Supreme Court has identified to establish constitutional standing: (1) an injury in fact—an invasion of a legally protected interest, which is both "concrete and particularized" and "actual or imminent[;]" (2) a "causal connection between the injury and the conduct complained of"—*i.e.* the injury must be "fairly traceable" to the challenged conduct; and (3) the alleged injuries will be "redressed by a favorable decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).[27]

Four federal district courts recently faced with similar motions to dismiss, similar facts, and the same legal issues now before this Court found that county and city government plaintiffs may pursue FHA claims under Article III standing as set forth in *Gladstone* and its progeny.

---

[26] *See also Havens*, 455 U.S. at 376; *Tyus v. Urban Search Mgm't*, 102 F.3d 256 (7th Cir. 1997) (a plaintiff need not even prove a "tangible injury" to prevail on an FHA claim); *Hargraves v. Capital City Mtg. Corp.*, 147 F. Supp. 2d 1, 3 (D.D.C. 2001) ("'Prudential limits' on standing [under the FHA] do not apply, as the Act confers standing to the full extent permitted by Article III"); *DeKalb* Order at 9 ("standing under the FHA has been repeatedly held to extend to the limits of Article III standing") (Dailey Decl., Ex B.).

[27] "For purposes of ruling on a motion to dismiss for want of standing . . . courts must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party." *Warth v. Seldin*, 422 U.S. 490, 501 (1975). Plaintiff's hurdle to allege facts establishing standing is not high. "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss [courts] 'presum[e] that general allegations embrace those specific facts that are necessary to support the claim." *Lujan*, 504 U.S. at 561. *Lujan* contradicts Defendants' bald assertions that the County "lack[ed]. . . specificity" in pleading the traceability of its harm to Defendants' discriminatory practices and this "lack of specificity" is somehow "inexcusable." Def. Br. at 15.

*DeKalb*, 2013 WL 7874104 at *6-*7 (finding county government plaintiffs had FHA standing to sue mortgage lender because they "alleged similar types of injuries as in *Gladstone* and had satisfied the "fairly traceable[] component of standing in that the government and industry findings, as well as the empirical data contained in the Complaint raise the pleadings above the speculative level"); *Wells Fargo*, 22 F. Supp. 3d at 1053-55; *Bank of America Corp.*, 2014 WL 2770083 at *4-*8; *Citigroup Inc.*, 24 F. Supp. 3d at 949-51.

Cook County has made concrete and particularized allegations leading to and regarding the numerous injuries that it has *in fact sustained* and which directly result from Defendants' broad equity stripping scheme.[28] The County alleged average estimated damages from each foreclosure of up to $34,000; was careful to expressly limit damages to only those that are actually caused by, and traceable to, Defendants; and alleged that such damages will be precisely determined upon discovery. Cmplt. ¶¶ 391, 399. The County also alleged that it faces **future harm** from the defaults and foreclosures resulting from Defendants' continuing equity stripping scheme, seeking injunctive relief to prevent this future harm, Cmplt. ¶¶ 10, 37, 282-83, 364, 421-

---

[28] The County took great care to allege facts specific to each Defendant's activities and the resulting increase in foreclosure rates, particularly within high minority percentage rate population tracts within Cook County, *see, e.g.,* Cmplt., ¶¶ 284-345, as well as the resulting causation and harm including, without limitation: (1) non-economic injuries to the fabric of the County's communities and constituents, including deterioration in its minority communities and urban blight, Cmplt., ¶¶ 68, 370-72, 374, 403; (2) economic harm (such as out-of-pocket costs, losses in property lien recording fee revenue, and a reduction in the County's tax base and tax revenues resulting from an underlying decline in property values caused by Wells Fargo's discriminatory practices, which can be precisely determined through regression analysis), Cmplt., ¶¶ 369, 374, 379, 381, 384-85, 387, 389-90; (3) a frustration of the purposes and missions of the County's various departments and authorities, requiring reallocation of their human and financial resources to address the home vacancies and foreclosures that Wells Fargo's illegal actions have caused. Cmplt., ¶392. Thus, Cook County's Complaint is distinguished from the complaints filed by the *City of Miami* that alleged "merely economic injuries." *See City of Miami v. Bank of America Corp.*, No. 13-24506-CIV, 2014 WL 3362348 (S.D. Fla. July 8, 2014) (Dimitrouleas, J.); *City of Miami v. Wells Fargo & Co.*, No. 13-14508-CIV (S.D. Fla. July 9, 2014 (Dimitrouleas, J.) (adopting and incorporating the order in Bank of America decision); *City of Miami v. Citigroup, Inc.*, No. 13-24510-CIV (S.D. Fla. July 9, 2014 (Dimitrouleas, J.) (same) (collectively, the "*Miami*" decisions). Those decisions concede that other courts hold that Article III standing alone is sufficient in FHA actions, but assert that *Nasser v. City of Homewood*, 671 F.2d 432 (11th Cir. 1982), required otherwise for cases in the Eleventh Circuit – a contention that Miami strongly disputes in its pending appeals of those decisions in the Eleventh Circuit.

22. This forms an independent basis for FHA standing. 42 U.S.C. §3602(e) & 3613(c); *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 262-63 (1977) ("[i]t has long been clear that economic injury is not the only kind of injury that can support a plaintiff's standing" under the FHA); *Havens*, 455 U.S. at 378-79 (finding standing for organization that alleged non-monetary organizational harm to include impairment of ability to fulfill its purpose).[29]

Cook County has established at the pleading stage that these injuries are fairly traceable to Defendants' conduct by alleging many specific facts supporting the unbroken causal link between Defendants' intentional discriminatory housing practices of equity stripping and the foreseeable, if not intended, resulting loan defaults, home vacancies, and increased foreclosures in Plaintiff's minority communities.[30] Cook County also has pled empirical data and industry and government findings showing that Defendants' actions and their terms of the predatory and illegal loans themselves caused the complained-of defaults, foreclosures, and vacancies, as well

---

[29] *See also, e.g., HUD v. Blackwell*, 908 F.2d 864, 872-73 (11th Cir. 1990); *Options Ct'r for Indep. Liv. v. G&V Dev. Co.*, 229 F.R.D. 149, 152 (C.D. Ill. 2005); *Samaritan Inns, Inc. v. Dist. Of Columbia*, 114 F.3d 1227, 1233 (D.C. Cir. 1997).

[30] These allegations, which also distinguish Cook County's Complaint from the *Miami* complaints, include: (1) the intentional nature of Wells Fargo's nationwide discriminatory housing practice of equity stripping, intentionally targeting minorities and knowingly making discriminatory and/or predatory loans to them that were destined to fail as a result of the loan terms themselves and the predatory way the loans were underwritten, *see, e.g.,* Cmplt., ¶¶ 4, 6, 48, 72, 128-77, 180-96, 198-208, 284, 286, 413-14; (2) Wells Fargo's top-down corporate driven policies and practices implementing its continuing scheme, supported by allegations of fact from numerous confidential witnesses, *see, e.g.,* Cmplt., ¶¶ 161-77, 180-96, 198-208; (3) the further continuation of Wells Fargo's scheme through additional loan making and the continued servicing of Wells Fargo's predatory and discriminatory mortgage loans until they did fail or until they will fail in the future, *see, e.g.,* Cmplt., ¶¶ 6-7, 9, 265-67, 279-83, 418; (4) Wells Fargo's loan originations and wholesale loan purchases or funding of loans made by brokers in Plaintiff's communities, as reflected in the precise statistical, empirical, and numerical loan data Plaintiff alleged, and the discriminatory impact of such lending in Plaintiff's communities, *see, e.g.,* Cmplt., ¶¶ 284-345; (5) explicit causal allegations, supported by Congressional and industry findings, that the terms of the predatory loans themselves disparately affected minorities, particularly in Plaintiff's communities, *see, e.g.,* Cmplt., ¶¶ 38-67; (6) Wells Fargo's active efforts to conceal their scheme from federal regulators and Plaintiff, impending Plaintiff's ability to provide the specific property address information Defendants claim is necessary at the pleading stage, including through Wells Fargo's membership in and use of Mortgage Electronic Registration System (MERS), Wells Fargo's use of its complex bank holding company legal structure, and Wells Fargo's securitization activities, *see, e.g.,* Cmplt., ¶¶ 346-63.

as the general economic downturn and job losses that Defendants claim break the causal chain. *See, e.g.*, Cmplt., ¶¶ 38-67, 345, 364, 374, 386-87, 392, 415. These allegations are far more than sufficient at the pleading stage to show that many of the so-called "intervening" causes Defendants identify in their brief were the direct result of Defendants' own predatory and discriminatory equity stripping scheme at issue in the Complaint.[31] *See, e.g., Wells Fargo & Co.*, 22 F. Supp. 3d at 1054 (finding "that many of the independent actions that Defendants contend defeat causation are produced by or the result of Defendants' challenged conduct"); *CitiGroup Inc.*, 24 F. Supp. 3d at 949 (same). Thus, Defendants' unsupported assertion that the County "does not plead facts that would rule out non-discriminatory causes of the foreclosure-related harm it alleges" is a patent mischaracterization of the Complaint. *See* Def. Br. at 16.

All of these allegations also definitively distinguish Cook County's Complaint from the complaints filed in the early *Birmingham* and *Baltimore* cases upon which Wells Fargo primarily—and incorrectly--relies. *See* Def. Mem. at 15-18 (*citing Mayor & City Council of Baltimore v. Wells Fargo Bank, N.A.*, 677 F. Supp. 2d 847 (D. Md. 2010) ("*Baltimore II*");[32] and

---

[31] At this early stage of the litigation, Cook County need not specify addresses of vacant or foreclosed properties as the Complaint's loss-causation allegations are more than adequate. *See, e.g., DeKalb Cty.*, 2013 WL 7874104 at *7 (denying motion to dismiss and allowing plaintiff to amend complaint before trial and after discovery to include list of properties on which actual damages are being sought, but not limiting plaintiffs' relief to only damages from foreclosures or vacancies of such properties); *Baltimore I*, 631 F. Supp. 2d 702 (denying initial motion to dismiss although complaint did not identify specific property addresses). In addition, the County's basis for standing encompasses the ***additional future harm it believes is about to occur as a result of the continuation of Defendants' scheme***. As a practical matter, it is not possible to identify addresses of foreclosures or vacancies that did not occur before the Complaint was filed, but the County will certainly identify these "future" properties at trial after an opportunity for discovery. Imposing any requirement on Cook County at the pleading stage to identify specific property addresses goes far beyond *Gladstone* and its progeny and would conflict with the FHA's "broad and inclusive" language that must be given "generous construction," *Trafficante*, 409 U.S. at 209, 212, particularly given Cook County's statutory right to relief from harm that is "about to occur."

[32] Defendants misleadingly abbreviate the name of this decision as "*Baltimore I*." *See* Def. Mem. at 15. In fact, this was the second decision in the *Baltimore* litigation. The prior decision, *Mayor & City Council of Baltimore v. Wells Fargo Bank, N.A.,* 631 F. Supp. 2d 702 (D. Md. 2009) (hereafter *"Baltimore I"*) denied defendants'' initial motion to dismiss and found that the City of Baltimore had

*City of Birmingham v. Citigroup, Inc., et al.*, No. 2:09-CV-00467-KOB, 2009 WL 8652915 (N.D. Ala. Aug. 19, 2009) (*"Birmingham"*)). The plaintiffs in *Birmingham* and *Baltimore* failed to limit their damages to those actually caused by the respective defendants in those cases, and instead sought all of their damages resulting from the entire foreclosure crisis, presenting a patent traceability issue that Cook County has avoided through careful and precise pleading. And, both *Birmingham* and *Baltimore II* lacked particularized loss causation allegations unlike Plaintiff's Complaint here.[33]

### 2. *Lexmark* Supports Cook County's Standing.

Defendants' statutory standing argument, in the context of the FHA violations alleged here, borders on the frivolous. Neither *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S.Ct. 1377 (2014), nor *Thompson v. N. Am. Stainless, L.P.*, 131 S.Ct. 863 (2011), abrogated the Supreme Court's prior holdings in *Gladstone*, *Havens*, or *Trafficante* requiring an aggrieved municipality to meet only the minimal Article III standing requirements to maintain an FHA

---

standing under the FHA to pursue a claim against a mortgage lender for predatory loans that caused foreclosures and home vacancies.

[33] The same court in *Baltimore II*, however, subsequently held that the City of Baltimore **had Article III standing** after Baltimore amended its complaint to include additional factual allegations—like the intent and knowledge allegations already alleged in Cook County's Complaint here—that provided the "missing causal link." *Mayor & City Council of Baltimore v. Wells Fargo Bank, N.A.*, CIV. JFM-08-62, 2011 WL 1557759 at *3 (D. Md. Apr. 22, 2011) (*"Baltimore III"*). In reaching that conclusion, *Baltimore III* expressly distinguished *Birmingham*, and the *Tingley v. Beazer Homes Corp.*, No. 3:07-CV-176, 2008 WL 1902108 (W.D.N.C. Apr. 25, 2008) decision on which it relied, because those "plaintiffs sought sweeping damages but presented only general and conclusory allegations of harm." *Id.* at *5, n.5. *See also City of Memphis v. Wells Fargo Bank, N.A.*, 2011 WL 1706756 at *5, *9 (W.D. Tenn. 2011) (also distinguishing *Birmingham* and the initial *Baltimore* complaint in denying defendants' motion to dismiss). Curiously, Defendants also fail in their briefing to cite to *Baltimore I* or to point out that *Baltimore III* expressly distinguished the *Birmingham* decision and each of the complaints filed in *Birmingham*, *Baltimore I, Baltimore II,* and *Tingley*. Cook County's Complaint goes much farther than the *Baltimore* and *Memphis* cases, as well as the *Los Angeles* and *Miami* cases for that matter, because Cook County alleges that Defendants actively sought to conceal property address and specific loan information, including through the use of MERS, as part of their equity stripping schemes. *See, e.g.,* Cmplt., ¶¶ 149, 152, 346, 349, 361. Thus, Cook County has alleged that complete property address information only can be obtained through discovery, *see, e.g.,* Cmplt., ¶¶ 358-59, 401, and the County should be afforded the opportunity to conduct this discovery. *See, e.g., DeKalb Cty.,* 2013 WL 7874104 at *7.

claim. *Gladstone*, 441 U.S. at 110; *Havens*, 455 U.S. at 372; *Trafficante*, 409 U.S. at 209 (stating that the language of the FHA is "broad and inclusive and that Congress intended to define standing as broadly as permitted by Article III"). Regardless, the Supreme Court has instructed lower courts not to abandon direct precedent—like *Gladstone*—because of other lines of decisions. *Rodriguez de Quijas v. Shearson/Am. Express, Inc.*, 490 U.S. 477, 484 (1989) ("If a precedent of this Court has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, the Court of Appeals should follow the case which directly controls, leaving to this Court the prerogative of overruling its own decisions."). This is particularly relevant here because *Lexmark* applied the Lanham Act, a law never understood to confer standing coexistent with Article III limits in the first place, and not the FHA. *Lexmark*, 134 S.Ct. at 1388.

Indeed, in three recent post-*Lexmark* decisions addressing this precise issue—including one decision denying a similar motion to dismiss by Wells Fargo— three federal district courts found wholly unpersuasive the same "zone of interest" argument Defendants advance again here. *Wells Fargo*, 22 F. Supp. 3d at ("Since the Court has already found that the city has adequately alleged Article III standing [for both economic and non-economic injury], the City's alleged injuries fall within the FHA's zone of interests"); *DeKalb* Order at 9-10 ("There is no reason to believe that *Lexmark* materially changed the requirements for standing under the FHA which courts have consistently held is coextensive with the limits of Article III standing") (Dailey Decl., Ex A.); *Bank of America Corp.*, 2014 WL 2770083 at *8 ("based on current precedent, to establish standing to bring a claim under FHA, a plaintiff is only required to satisfy Article III").

Even if this Court could possibly find that Plaintiff's Article III standing alone is insufficient, the zone of interests test is not "especially demanding," and it "forecloses suit only

when a plaintiff's interests are so marginally related to or inconsistent with the purposes implicit in the statute that it cannot reasonably be assumed that" Congress authorized the plaintiff to sue. *Lexmark,* 134 S. Ct. 1389. The benefit of any doubt must go to the plaintiff. *Id.*

Congress's establishment of a very broad zone of interest to fulfill the FHA's remedial purpose is clear from the operative provisions of the statute itself.[34] The FHA defines an "aggrieved person" as "***any person*** who ***claims*** to have been injured by ***a discriminatory housing practice***; ***or believes*** that such person ***will be injured*** by a discriminatory housing practice ***that is about to occur.***" 42 U.S.C. §3602(i) (emphasis added). Congress broadly defined a "discriminatory housing practice" as "an act that is unlawful under section 3604, 3605, 3606, or 3617 of this title." 42 U.S.C. §3602(f). And in *Trafficante,* the Supreme Court held that plaintiffs need not have been the direct target of discrimination to have standing under the FHA. 409 U.S. at 209-12. By claiming injury from a discriminatory housing practice—Defendants' equity stripping schemes—Cook County is an "aggrieved person," and is explicitly authorized to seek a broad range of remedies including actual and punitive damages, attorneys' fees, and injunctive relief, including for injuries from Defendants' discriminatory housing practices that have occurred or are "about to occur." 42 U.S.C. §3613(a) & (c). Importantly, Cook County is

---

[34] Defendants' reliance on *Thompson* is both misplaced and misleading. The Supreme Court there limited its holding to a Title VII employment discrimination suit, not a suit under Title VIII, such as an FHA claim. *Thompson,* 131 S.Ct. at 870. Indeed, Defendants failed to apprise this Court of numerous decisions explicitly finding that *Thompson* does not preclude standing in FHA cases. *See, e.g., Equal Rights Ctr. v. Post Prop's, Inc.,* 633 F.3d 1136, 1138 (D.C. Cir. 2011); *Mazzocchi v. Windsor Owners Corp.,* 2012 WL 3288240 at *6 (S.D.N.Y. Aug. 6, 2012); *Levy v. Trent Motel Assoc., L.P.,* 2011 WL 3903647 (E.D. Pa. Aug. 26, 2011); *Equal Rights Ctr. v. Equity Res.,* 788 F. Supp. 2d 707 (D. Md. 2011). Wells Fargo also mischaracterizes the holding of the court in *Hous. Opp. Proj. for Excellence, Inc. v. Wedgewood Condo. Ass'n, Inc.,* 2012 WL 4193969 (S.D. Fla., Sept. 19, 2012). The court there actually did not apply *Thompson* to an organization that brought suit under the FHA "because the case law makes clear that it has standing to file suit for [d]efendants's violations of the Federal Fair Housing Act." *Id.* at *4-*5 (citing *Havens,* 455 U.S. at 379). Instead, the court in *Wedgewood Condo* applied *Thompson* to individual FHA plaintiffs and found that they had standing because "aggrieved persons" under the FHA encompasses "more than merely the persons who are the object of discriminatory housing practices . . . [if] they could show they had suffered an injury because of the discriminatory practice." *Id.*

24

not seeking to "assert claims under the guise of another's FHA rights." *See DT Apt. Grp., LP v. CWCapital, LLC*, 2012 WL 6693192 at *16 (N.D. Tex. 2012). Cook County's injuries—both economic and non-economic, including the segregative and discriminatory effects and the resulting blight in Cook County,[35] Cmplt. ¶¶ 11, 68, 370-72, 374, 403, are separate and distinct from mortgage borrowers' injuries and are not merely "derivative."

Cook County also has adequately alleged proximate causation sufficient to defeat Defendants' standing argument. To show proximate causation for an FHA claim a plaintiff need only demonstrate that its injury is a direct result of the defendant's alleged discriminatory practice. *See U.S. v. Valistrieri*, 981 F.2d 916, 933 (7th Cir. 1992) (upholding mental anguish damages award to plaintiff "testers," who never actually suffered a denial of integrated living, because their injuries were "direct result" of defendant's violation of the FHA). Not only has Cook County specifically alleged the steps in the unbroken chain of causation between Defendants' intentional discriminatory housing practices and the County's injuries, ***it has gone several steps further***: (i) alleging that Defendants' purported intervening causes (e.g., the economic downturn and job losses) were the product of Defendants' own actions; and (ii) alleging specific empirical mortgage lending and foreclosure data demonstrating both the increased numbers and concentration of non-prime mortgage loans in higher minority communities and the increased numbers and concentration of foreclosures resulting there. Finally, by virtue of the nature of the Defendants' scheme, Cook County's Complaint goes ***even further*** than is necessary to demonstrate causation, alleging that the last step in Defendants'

---

[35] Increased urban blight and decay, caused by the explosion of foreclosures and vacancies, is widely recognized as leading to "white flight," thereby in turn further segregating affected communities and neighborhoods. *See, e.g., Laufman v. Oakley Bldg. & Loan Co.*, 408 F. Supp. 489, 497 (S.D. Ohio 1976) (discussing problems of residential housing segregation, racial slum formation, redlining and the interplay of "white flight" including "barriers to occupancy" such as "higher mortgage interest rates").

equity stripping scheme – the loan default and foreclosure itself – damages Cook County.[36]

### D.     The Complaint States a Valid FHA Claim.

Cook County's Complaint fairly puts Defendants on notice of the claim, which is all that Federal Rule 8 requires. *See, e.g., Bank of America.*, 2014 WL 2770083 at *6-7; *Citigroup, Inc.*, 24 F. Supp. 3d. at 945; *Wells Fargo*, 22. F. Supp. 3d at 1052; *DeKalb Cty.,* 2013 WL 7874104 at *7. Here, Defendants' Rule 12(b)(6) motion attempts to challenge the sufficiency of the Complaint on the ground that the allegations do not establish a claim on which relief may be granted. *See, e.g., Engel v. Buchan*, 710 F.3d 698, 709 (7th Cir. 2013). A plaintiff need not plead evidence, however, *see, e.g., Erickson v. Pardus*, 551 U.S. 89, 93 (2007), and "legal conclusions can provide the framework of a complaint so long as they are supported by factual allegations." *Engel*, 710 F.3d at 709 (*quoting Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)). Thus, the County's Complaint should not be dismissed for failure to state a claim because it contains "enough facts to raise a reasonable expectation that discovery will reveal evidence" supporting the complaint's allegations. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007). In ruling on a motion to dismiss, the Court must accept the Complaint's factual allegations as true. *See, e.g., Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009).

### 1.   The Complaint States An Intentional Or Disparate Treatment FHA Claim.

An "aggrieved person," like Cook County, indisputably may bring an intentional discrimination claim under the FHA. 42 U.S.C. §3613; *Whitley v. Taylor Bean & Whitacker Mortgage Corp.*, 607 F. Supp. 2d 885, 901 (N.D. Ill. 2009); *Martinez v. Freedom Mortgage Team, Inc.*, 527 F. Supp. 2d 827, 834-35 (N.D. Ill. 2007). "Disparate treatment involves a

---

[36] *See Adkins v. Morgan Stanley*, No. 12 CV 7667 (HB), 2013 WL 3835198 (S.D.N.Y. July 25, 2013) ("[A] plaintiff need not allege that the defendant's actions were the very last step in the chain of causation to demonstrate that the defendant's actions caused the claimed injury"; a lapse of time between the outset of a continuing FHA violation and a plaintiff's injuries does not mean those injuries are too remote to support standing).

showing of intentional discrimination, provable via either direct or circumstantial evidence." *Daveri*, 934 F. Supp. 2d at 997 (quoting *Nikolich v. Vill. of Arlington Heights*, 870 F.Supp.2d 556, 562 (N.D. Ill. 2012) (Shadur, J.)). Thus, at the pleading stage, the County need only allege specific conduct that "if proven at trial, could support an inference of intentional discrimination," enabling a fact finder to "determine that defendants had harbored ill will toward racial minorities, *or* that they had used race as a proxy, doing business exclusively with minorities out of the biased perception that those individuals would be especially vulnerable to fraud. The second conclusion, no less than the first, would support a judgment for plaintiffs." *Barkley v. Olympia Mortgage Co.*, 04 CV 875 RJD/KAM, 2007 WL 2437810 at *11-15 (E.D.N.Y. Aug. 22, 2007) (emphasis added) (*collecting* and *citing* cases).[37]

Contrary to Defendants' spurious assertion, *see* Def. Br. at 28, the Complaint extensively alleges discriminatory intent, including by explaining how the various Defendants used targeted marketing of predatory and discriminatory loans and used minority status as a proxy based on the biased assumption that minority borrowers were more vulnerable to the Defendants' because of perceived, if not actual, lack of minority "access to traditional credit," and perceived, if not actual, minority borrower "limited credit histories, lower credit scores, homes with lower values," and "higher personal debt to income ratios" than non-minority borrowers. *See, e.g.,*

---

[37] *See also Whitley,* 607 F. Supp. 2d at 901 (sustaining FHA claim of intentional discrimination on allegations mortgage borrowers received loans on less favorable terms); *Martinez,* 527 F.Supp.2d at 834-35 (sustaining FHA claim on allegations of targeting minority mortgage borrowers for higher-cost loans). Defendants rely on *South-Suburban Hous. Ctr. v. Greater S. Suburban Bd. of Realtors*, 935 F.2d 868 (7th Cir. 1991), to argue that the County's intentional discrimination claim must be dismissed under Rule 12(b)(6) in the absence of additional allegations that Defendants "purposefully" made predatory mortgage loans to minorities "'*because of*' those borrower's minority status." Def. Br. at 29 (emphasis in original). This is argument is baseless because neither *South-Suburban* nor the *Village of Bellwood v. Dwivedi,* 895 F.2d 1521, 1529–30 (7th Cir.1990) on which *South-Suburban* relied, addressed pleading standards on a motion to dismiss. Both cases dealt with post-trial appeals of purported errors relating to findings of fact on the evidence, not the adequacy of the pleadings. The same is true of Defendants' reliance on *Gilty v. Village of Oak Park*, 919 F 2d. 1247, 1250 (7th Cir. 1990), *see* Def. Br. at 29.

Cmplt. ¶¶133, 156-208. [38] Whether Defendants used race as a proxy to illegally boost their profits, and not because they harbored a particular animus towards minorities and women, is irrelevant. *See, e.g., Barkley*, 2007 WL 2437810 at *11-15. In either circumstance, Defendants still intentionally targeted borrowers based on their minority status for higher cost mortgage loans, which is both reprehensible and expressly prohibited. Cook County's Complaint therefore undoubtedly adequately pleads disparate treatment. *See, e.g., Wells Fargo*, 22 F. Supp. 3d at 1059-60; *Citigroup*, 24 F. Supp. 3d at 953; *Bank of America*, 2014 WL 2770083 at *10-11; *DeKalb Cty.*, 2013 WL 7874104 at *12-16; *City of Memphis*, 2011 WL 1706756 *14-15, n. 56 (citing cases from courts nationwide supportive of this proposition).

## 2. The Complaint States An FHA Claim Based on Disparate Impact[39]

Cook County adequately alleges a valid FHA claim based on disparate-impact by identifying Defendants' numerous mortgage lending, securitization, servicing and foreclosure policies and practices, all underlying Defendants' equity stripping scheme, that could be viewed

---

[38] Proof of discriminatory motive can be shown in some situations by the mere fact of difference in treatment. *See International Brotherhood of Teamsters,* 431 U.S. 324, 339 (1977) ("we have repeatedly approved the use of statistical proof, where it reached proportions comparable to those in this case"). Here, however, Defendants' alleged actions are supported by confidential witness allegations of Defendants' former employees. *See, e.g.,* Cmplt. ¶¶ 161-77, 180-87, 193, 198-206. And, although a plaintiff may choose direct or circumstantial evidence, *see Daveri*, 934 F. Supp. 2d at 997, the Complaint here also alleges empirical data further reflecting the intentional nature of Defendants' lending practices. Cmplt. ¶¶284-348. Furthermore, Cook County's statistical information is actually the publicly available empirical data of Defendants' own mortgage lending activity that Defendants themselves reported to the federal government pursuant to the Home Mortgage Disclosure Act ("HMDA"). Cmplt. ¶¶ 284. That data reveals the extent to which Defendants' predatory lending activities were focused on minorities, in minority communities, and in high-foreclosure-rate high-minority neighborhoods. Cmplt. ¶¶ 284-345.

[39] Although Defendants do not explicitly challenge the availability of a disparate impact theory under the FHA in their motion to dismiss papers, Cook County acknowledges that a definitive ruling by the Supreme Court on his issue will be made this term in *Texas Dept. of Hsng and Community Affairs, et al v. The Inclusive Communities Project, Inc.*, No. 13-1371. But even if the Supreme Court rejects a disparate impact theory under the FHA, this Court already indicated at the January 29, 2015 status conference that there is a sufficient likelihood that Cook County's disparate treatment claim would survive, or could at least be amended, such that Cook County's FHA claim would still go forward. The detailed allegations of Cook County's Complaint support that.

as facially race-neutral, but that disproportionately affect minority mortgage borrowers. *See, e.g., Smith v. City of Jackson*, 544 U.S. 228, 241-43 (2005); *Daveri Dev. Grp., LLC v. Vill. of Wheeling*, 934 F. Supp. 2d 987, 1002 (N.D. Ill. 2013) (Lee, J.). [40] Cook County's alleges (with the support of empirical data) that Defendants' mortgage lending, securitization, servicing and foreclosure policies, even if not "intentionally" discriminatory, had discriminatory effects, particularly increased numbers and concentrations of "high cost" and higher cost mortgage loans, and resulting foreclosures, in communities with higher percentages of minority homeowners. [41] Cook County has more than sufficiently "isolate[ed] and identif[ied] the specific. . . practices that are allegedly responsible for [the] observed statistical disparities." Def. Br. at 28 (*quoting Wards Cove Packing Co. v. Atonio*, 490 U.S. 642, 656 (1989) (also superseded by statute)).

At the pleading stage, alleging reliable statistics is sufficient, and the Court must accept the Complaint's factual allegations as true. *See, e.g., Brooks*, 578 F.3d at 581. Cook County submits that it has alleged "enough facts to raise a reasonable expectation that discovery will reveal evidence" supporting its FHA claim based on a disparate-impact theory. *Bell Atlantic Corp.*, 550 U.S. at 556. [42] Several courts have recognized as much based on factual allegations

---

[40] The County notes that the Seventh Circuit has identified four factors for courts to consider in assessing disparate-impact-theory claims. *See Metro. Housing Dev. Corp.*, 558 F.2d at 1290. The County does not address these factors here because they probe the sufficiency of the evidence, and cannot be applied at this stage of proceedings. *See, e.g., id.* (applying these factors after a trial on the merits); *Daveri*, 934 F.Supp.2d 987 (applying these factors after an evidentiary hearing).

[41] These include: (1) making mortgage loans based on the value of the real-estate and irrespective of the borrower's ability to repay; *see, e.g.*, Cmplt. ¶¶ 3, 146; (2) steering credit worthy borrowers to more costly loans (Cmplt. ¶¶ 5, 13, 37, 48, 68, 146, 206, 223); (3) discretionary pricing policies that encouraged employees and agents to impose additional fees and costs on borrowers (Cmplt. ¶¶ 209, 211, 221, 227, 260, 284, 417); and (4) underwriting, appraisal, and override policies that encouraged the issuance of loans to borrowers who might not be able to repay their loans (Cmplt. ¶¶ 230-63). All of this results in (1) increased numbers of predatory loans being made to minorities (even adjusting for credit scores), Cmplt. ¶¶ 31, 37, 68, 70, 300, 336; leading to (2) increased concentrations of loan defaults, vacancies and foreclosures in minority communities. Cmplt. ¶¶ 281, 288, 309-22, 329-32.

[42] *See also Arlington Heights*, 558 F.2d at 1289-90 (holding that "at least under some circumstances a

very similar to those alleged here. *See, e.g., Bank of America*, 2014 WL 2770083 at *10-11; *Citigroup*, 2014 WL 2571558 at *10-11; *Wells Fargo*, 2014 WL 2206368 at *10. *DeKalb Cty.*, 2013 WL 7874104 at *12-16; *City of Memphis*, 2011 WL 1706756 *11-15.[43]

## CONCLUSION

For all the foregoing reasons, Defendants' motion to dismiss should be denied.

Dated:  March 13, 2015

ANITA ALVAREZ,
STATE'S ATTORNEY FOR COOK COUNTY

By:   /s/ Daniel A. Dailey
        Special Assistant State's Attorney

James D. Montgomery, Sr.
jmontgomery@jdmlaw.com
James D. Montgomery, Jr.
james2@jdmlaw.com
John K. Kennedy
jkennedy@jdmlaw.com
Daniel A. Dailey
ddailey@jdmlaw.com
JAMES D. MONTGOMERY AND
ASSOCIATES, LTD.
One North LaSalle Street
Suite 2450
Chicago, Illinois 60602

---

violation of section 3604(a) can be established by a showing of discriminatory effect without a showing of discriminatory intent… As overtly bigoted behavior has become more unfashionable, evidence of intent has become harder to find."); *Hoffman v. Option One Mortgage Corp.*, 598 F. Supp. 2d 1009 (2008) (Bucklo, J.) (collecting cases) (denying defendants' motion to dismiss where FHA plaintiff proffered sufficient statistical analyses showing discriminatory impact of defendants' credit pricing).

[43] Wells Fargo's reliance on *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011) is misplaced. *Wal-Mart* held that Rule 23 commonality could not be established because plaintiffs did not "identif[y] a common mode of exercising discretion that pervades the entire company." *Id.* at 2554-55. Regardless, Cook County's Complaint alleges that Defendants had interrelated, corporate-wide, discriminatory policies and practices, which were intentionally implemented, encouraged and facilitated by a variety of mechanisms, including financial incentives – exactly the facts that *Wal-Mart* criticized as lacking. *See, e.g.,* Cmplt. ¶¶ 230-63. Cook County does allege discretionary pricing as one of a number of policies and practices that have had a discriminatory impact, but it is not the only policy or practice upon which the County relies to state its FHA claim.

Phone: (312)977-0200
Fax: (312)977-0209

James M. Evangelista (admitted pro hac vice)
jim@hpllegal.com
Jeffrey R. Harris (admitted pro hac vice)
jeff@hpllegal.com
Darren W. Penn (admitted pro hac vice)
darren@hpllegal.com
David J. Worley (admitted pro hac vice)
david@hpllegal.com
HARRIS PENN LOWRY LLP
400 Colony Square, Suite 900
1201 Peachtree Street, NE
Atlanta, GA 30361
Phone: (404)961-7650
Fax: (404)961-7651

*Special Assistant State's Attorneys*

## CERTIFICATE OF SERVICE

I hereby certify that on this day I served the above and foregoing PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS on all parties by causing a true and correct copy to be filed with the court's electronic filing system, which should automatically send a copy to all counsel of record.

Dated:  March 13, 2015                                      /s/ Daniel A. Dailey
                                                            Daniel A. Dailey