# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | | |
|---|---|---|
| DEKALB COUNTY, FULTON COUNTY, and COBB COUNTY, GEORGIA, | * * * * | |
| Plaintiffs, | * * | |
| v. | * * | 1:12-CV-003640-ELR |
| HSBC NORTH AMERICA HOLDINGS, INC., HSBC INVESTMENTS NORTH AMERICA, INC., HSBC FINANCE CORPORATION, HSBC MORTGAGE CORPORATION, HSBC MORTGAGE SERVICES, INC., HSBC MORTGAGE SERVICES WAREHOUSE LENDING, INC., HSBC USA INC., HSBC BANK USA, NATIONAL ASSOCIATION, DECISION ONE MORTGAGE COMPANY, LLC, HSBC MARKETS (USA) INC., HSBC SECURITIES, and HSBC CORPS 1-50, | * * * * * * * * * * * * * * * * | |
| Defendants. | * * | |

_____

**O R D E R**

_____

This case is before the Court on Plaintiffs' Motion for Partial Summary Judgment (Doc. No. 50), Defendants' Motion for Summary Judgment Based on the Statute of Limitations (Doc. No. 63), and Plaintiffs' Objection to Defendants'

Motion for Summary Judgment (Doc. No. 64). By prior Order of this Court, this case was trifurcated. (Doc. No. 38). The instant motions are meant to resolve the issue of whether Plaintiffs' claim is time-barred, representing the first stage of the trifurcation. After reviewing the record, the Court enters the following Order.

## I. BACKGROUND

Plaintiffs DeKalb County, Fulton County and Cobb County, Georgia have brought this action against the above-named Defendants claiming a violation of the Fair Housing Act, 42 U.S.C. § 3601 *et seq.* ("FHA"). (Doc. No. 1). Plaintiffs seek to redress alleged injuries caused by Defendants' "predatory and discriminatory residential mortgage lending and servicing activities" which Plaintiffs claim have caused and will continue to cause mortgage loan delinquencies, defaults, foreclosures, and numerous vacancies in Plaintiffs' respective neighborhoods and communities, particularly those with high concentrations of minority residents. (Id. at ¶ 2). Plaintiffs' Complaint includes detailed allegations regarding discriminatory lending and loan servicing behavior in the years immediately preceding the economic crisis, and allegations that such predatory behavior continued at least until the time of the filing of this suit.

## II. ANALYSIS

### a. Standard for Review

Summary judgment must be granted if the record shows that there "is no genuine issue as to any material fact and that the movant is entitled to judgment as a

2

matter of law." Fed. R. Civ. P. 56(c). However, "summary judgment is inappropriate when the party opposing the motion has been unable to obtain responses to his discovery requests." Snook v. Trust Co. of Ga. Bank of Savannah, N.A., 859 F.2d 865, 870 (11th Cir. 1988).

### b. Discussion

#### i. *Statute of Limitations*

The statute of limitations for a claim under the FHA is two years after the "occurrence or the termination of an alleged discriminatory housing practice … whichever occurs last." 42 U.S.C. § 3613(a)(1)(A). The present case was filed on October 18, 2012. Defendants argue that the Plaintiffs have filed their suit well out of time, as they only allege predatory lending practices which ended in 2008 and would thus require the filing of a complaint by 2010. As such, Defendants maintain that Plaintiffs must rely on the common law doctrine of continuing violations in order to overcome a statute of limitations defense. They claim, however, that Plaintiffs cannot toll the statute based on this doctrine, because they knew or should have known of their cause of action well before the October 18, 2010 deadline. (Doc. No. 63-1, pp. 12-19). On the other hand, Plaintiffs contend that reliance on the doctrine of continuing violations is unnecessary, because only the plain language of the FHA applies and the statute of limitations had not yet begun to run as of the time of the filing of the Complaint. (Doc. Nos. 50-1, 66).

It appears from the briefing that Defendants misunderstood the Court's prior Order denying dismissal of the case. (Doc. No. 23). The Court never definitively held that Plaintiffs were only able to rely on the doctrines of continuing violations or equitable tolling in order to overcome the statute of limitations. It merely afforded the parties an opportunity to further develop the factual record on this issue. This was for the benefit of the Court, so that it could make an informed decision, should it be necessary for Plaintiffs to rely on those doctrines in order to make their case timely. However, the Court now finds that a decision regarding the common law continuing violations doctrine or the doctrine of equitable tolling is unnecessary at this time.[1] The Plaintiffs have properly pled an ongoing pattern of discriminatory housing practices which was alleged to have been continuing at the time of the filing of the Complaint. The allegations include the continued origination of predatory loans, as well as continued discriminatory servicing of loans. As such, the Court finds at this juncture that Plaintiffs' claim is not time-barred.[2]

---

[1] The Court wishes to clarify any confusion caused by the Order denying dismissal and the trifurcation. In its attempts to streamline and simplify the various complex issues presented in this case, matters regarding common law continuing violations and ongoing patterns of discrimination became conflated, leading the parties to brief irrelevant topics.

[2] Defendants have argued that Plaintiffs' Motion for Partial Summary Judgment is, in fact, an out-of-time motion for reconsideration of the Order on the Motion to Dismiss. While it is true that Plaintiffs are essentially making arguments that were made in their briefs regarding the Motion to Dismiss, and that appear to apply the standard utilized on motions to dismiss, the Court has reconsidered the issue upon the instant Motions for Summary Judgment, as it indicated it would do in the Scheduling Order.

To the extent that the Defendants understood the Court to hold that the statute of limitations had run, allow the Court to correct that misconception. The Court never decided that the statute of limitations had run, nor was its Order meant to imply such a finding, though it recognizes there could be some confusion on this point. Regardless, "a court has the power to

In <u>Hargraves v. Capital City Mortg. Corp.</u>, 140 F. Supp. 2d 7 (D.D.C. 2000), which was the approach adopted in this case, the District Court for the District of Columbia explained why it was necessary to further examine the nature of the defendants' activities before deciding the question of whether a continuing violation could be found for purposes of the statute of limitations. The distinction centers on whether the offer of the loans was the only discriminatory act, or whether the loans themselves included terms that were predatory and illegal. If it is only the former, then the limitations period would begin at the settlement of the loan, and all of the negative effects experienced by plaintiffs throughout the life of the loan would constitute "lingering effects." However, if it is "not only the decision to extend the loans, but the loans themselves [that] were predatory and illegal," then an ongoing pattern or practice of discrimination[3] might be found. <u>Id.</u> at 19. Thus, this Court was cautious in making a decision at the Motion to Dismiss stage, as further factual development appeared necessary to determine the nature of Defendants' actions, *i.e.* whether Plaintiffs were merely experiencing lingering effects, or whether

---

revisit prior decisions of its own or of a coordinate court in any circumstance." <u>Christianson v. Colt Industries Operating Corp.</u>, 486 U.S. 800 (1988). This is especially true where the prior decision was erroneous and would work an injustice. <u>Id.</u> It is clear from the face of the Complaint that Plaintiffs alleged an ongoing discriminatory practice, both with regards to the lending and servicing of loans. Thus, at the motion to dismiss stage, any finding that the statute of limitations had run would have been clearly erroneous.

[3] The Court notes that several cases identified by both Plaintiffs and Defendants use the term "continuing violations" where, in fact, the issue centers on an ongoing pattern of discriminatory behavior. For the purposes of this case, and to ensure clarity going forward, the Court would like to differentiate between these concepts. The continuing violations doctrine operates to toll a statute of limitations, necessarily indicating that the statute had begun to run at some point. In the case of an ongoing pattern or practice of discrimination in violation of the FHA, however, the limitations period would not begin to run until the termination of the discriminatory practice.

Defendants engaged in an actual pattern of ongoing violations. However, at this time, it appears to the Court that this is a topic so intertwined with the merits of the case, it may not be as easily separated as previously hoped.

In adopting the method of the Hargraves court, this Court permitted limited fact discovery that was intended to be dispositive of the statute of limitations question. That is, Defendants were permitted to inquire as to when Plaintiffs were aware they may have a cause of action and what they did to pursue that cause. This would, in turn, enable Defendants to overcome any arguments to toll the limitations period pursuant to the continuing violations doctrine. Likewise, Plaintiffs were permitted to examine the nature of the loans in question. In order for this stage of summary judgment to be effective as intended, Plaintiffs would have had to be given information about the lending behaviors of Defendants, including the number of loans extended, terms of those loans, refinancing activities, and information about foreclosures. Otherwise, the Court would be unable to make the determination called for in Hargraves, *i.e.* the difference between the decision to extend a discriminatory loan and the loan itself being discriminatory or containing predatory terms. The Court sees now that such a split would be more inefficient than anticipated, and that the question is best left for after both parties have had time to conduct merits discovery.

Regardless, the Court feels it is necessary to address Defendant's alleged "stonewalling" of Plaintiffs' requests for discovery during this initial phase. If a

6

showing of an ongoing pattern of discrimination were to be made, Plaintiffs would necessarily have needed access to the information that they requested from Defendants regarding the number of subprime loans extended.[4] By failing to provide any substantive responses to Plaintiffs' requests, and by failing to serve what limited responses they did provide until one business day before filing their Motion for Summary Judgment, Defendants made it nearly impossible for Plaintiffs to make their case regarding the ongoing nature of the alleged predatory and discriminatory practices. The Court hopes that this refusal to meaningfully engage in discovery was the result of a misreading of earlier Orders, and a belief that only Defendants had a burden to show what Plaintiffs knew and when. Still, the Court is skeptical, and takes this opportunity to remind Defendants that they, like any litigant, are expected to meaningfully and in good faith participate in discovery. Failure to do so may result in sanctions.

"While a statute of limitations defense may be raised on a motion to dismiss … when the complaint shows on its face that the limitations period has run, the defect may be raised by motion for summary judgment where the alleged failure to comply with the statute of limitations does not appear on the face of the complaint." AVCO Corp. v. Precision Air Parts, Inc., 676 F.2d 494, 495 (11th Cir. 1982). Therefore, if investigation into the merits of the case reveals grounds for further challenges on the statute of limitations issue, the parties are free to move

---

[4] Additionally, the Court has twice ordered Defendants to comply with Plaintiffs' discovery requests. (Doc. Nos. 55, 61).

the Court for relief. In other words, if the merits discovery phase bears out that Defendants, as alleged, continued to service and extend loans in a predatory manner as of the date of the filing of the Complaint, or at least into the period of two years preceding the Complaint, then the case may not be dismissed on statute of limitations reasons. Where the violation is ongoing as of the time of the filing of the Complaint, it is immaterial when Plaintiff knew or should have known of the acts which would constitute an actionable offense.[5] If, however, the predatory lending did, in fact, end before October 18, 2010, and the terms of the loans that continued to be serviced past that date are not discriminatory in and of themselves, Plaintiffs may once again be subject to a statute of limitations challenge. See Hargraves, 140 F. Supp. 2d at 18-19 (explaining the difference between lingering effects and continuous pattern of violations based on predatory loan terms).

    *ii. Standing*

Next, Defendants again raise the issue of standing in their Motion for Summary Judgment. (Doc. 63-1, p. 23). While they are correct in their assertion that standing is a jurisdictional requirement and cannot be waived, allowing them

---

[5] Defendants' arguments otherwise are inapposite. While Defendants cite numerous cases and urge the Court to adopt a discovery rule – which would require a finding of when Plaintiffs were on notice that they had a potential claim – Defendants have not identified, and the Court has not found, a case where such a rule has been used to overcome the plain language of a statute. Here, the statute clearly states that the limitations period is two years from "the occurrence or the termination of an alleged discriminatory housing practice … whichever occurs last." 42 U.S.C. § 3613(a)(1)(A). Thus, the only relevant inquiry at this stage is when the discriminatory housing practice terminated. A discovery rule like that encouraged by Defendants would be incompatible with the statute itself. Indeed, such a rule could only be applied to revive a stale claim, one in which the limitations period had already run but where Plaintiff was not put on notice of the offense until the period had expired.

8

to bring their jurisdictional challenge at any point in the litigation, their arguments do not long detain the Court. Briefly, Defendants argue that a recently decided case, Lexmark Int'l Inc., v. Static Control Components, Inc., 134 S.Ct. 1377 (2014), clarifies the requirements of statutory standing and that, in accordance with this new guidance, Plaintiffs do not fall within the zone of interests sought to be protected by the FHA. However, the "zone of interests" test for statutory standing is not new, and standing under the FHA has been repeatedly held to extend to the limits of Article III standing. See e.g., Havens Realty Corp. v. Coleman, 455 U.S. at 372 ("[T]he sole requirement for standing to sue [under the FHA] is the Art. III minima of injury in fact."); Gladstone Realtors v. Village of Bellwood, 441 U.S. 91, 110 (1979) (finding standing for a municipality where it alleged that the discriminatory practices of defendants decreased property values and deprived the village of its 'racial balance and stability'). This Court has already found that Plaintiffs have established Art. III standing (Doc. No. 23, pp. 6-24), and sees no reason to revisit that determination at this time. Lexmark was decided in the context of the Lanham Act, which the Supreme Court noted includes an unusually detailed statement of the statute's purposes. 134 S.Ct. at 1389 (2014). This enabled the Court to more easily determine the "zone of interests" protected by that statute as opposed to other statutory causes of action. There is no reason to believe that

Lexmark materially changed the requirements for standing under the FHA, which courts have consistently held is coextensive with the limits of Art. III standing.[6]

Defendants correctly note that the position adopted by the Court in its earlier motion was to "assume jurisdiction" while leaving open the possibility that a lack of standing might be shown at a later stage in the case. This was in the context of leaving open the possibility that Defendants may be able to show, after merits discovery, that Plaintiffs experienced no injury in fact that was fairly traceable to the Defendants' actions. There is nothing on the record before the Court at this time that would require revisiting that determination. If Defendants are able to successfully challenge Plaintiffs' standing on the basis of injury in fact or causation, it will only be after both parties have had a chance to engage in merits discovery.

For reasons stated herein, Defendants' Motion for Summary Judgment Based on the Statute of Limitations (Doc. No. 63) is **DENIED**. Plaintiffs' Motion for Partial Summary Judgment (Doc. No. 50) is **GRANTED**. The parties are **ORDERED** to begin discovery in the next phase of this litigation, pursuant to the Scheduling Order (Doc. No. 38).

---

[6] This remains true, despite Defendant's assertion that Lexmark "explicitly recognized that its decision would 'provide clearer and more accurate guidance' to courts evaluating statutory standing." (Doc. No. 68, p. 11) Rather, the full quote is that "The principles set forth above will provide clearer and more accurate guidance than the 'reasonable interest' test." This is a test specifically applied by some courts in the context of a claim under the Lanham Act, and the Supreme Court was providing more clear guidelines for assessing such a claim than was offered by that particular test. This is not a general statement about delineating between statutory standing and Art. III standing in all cases where a cause of action is provided for by statute.

**IT IS SO ORDERED** this 3rd day of March, 2015.

_____
Eleanor L. Ross
United States District Judge
Northern District of Georgia