# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| COUNTY OF COOK, ) | |
| ) | Case No. 14-cv-9548 |
| Plaintiff, ) | |
| v. ) | Hon. Gary Feinerman |
| ) | |
| WELLS FARGO & CO., et al., ) | |
| ) | |
| Defendants. ) | |

## PLAINTIFF'S MOTION FOR CLARIFICATION OR RECONSIDERATION

Plaintiff County of Cook, by and through its undersigned attorneys, hereby moves the Court for clarification or reconsideration of its Memorandum Opinion and Order, dated March 26, 2018 (Dkt. 143). In support of this Motion, the County states as follows:

1. On March 26, 2018, the Court issued its Memorandum Opinion and Order ("Order"), granting in part and denying in part the motion to dismiss of Defendants Wells Fargo & Co., Wells Fargo Financial, Inc., Wells Fargo Bank, N.A., and Wells Fargo "John Doe" Corps. 1-375 (Defendants or "Wells Fargo"). Dkt. 143.

2. In the "Conclusion" section of the Order, the Court stated:

> Wells Fargo's motion to dismiss is granted in part and denied in part. *Cook County may proceed on its FHA claims to the extent they allege* that Wells Fargo's equity-stripping practice directly resulted in *increased expenditures by the Cook County Sheriff's Office and the Cook County Circuit Court in connection with administering and processing an increased number of foreclosures*. The motion otherwise is granted. Wells Fargo shall answer the surviving portions of the complaint by April 16, 2018.

Order at 37 (emphasis added).

3. In reaching this conclusion, the Court reasoned that the "financial harms arising from the County's administering and managing mortgage foreclosures flow inexorably from

Wells Fargo's alleged conduct, and thus are sufficiently 'direct' for purposes of the proximate cause inquiry." Order at 13. The Court also stated that "default and foreclosure are the inexorable consequences of Wells Fargo's denial of loan modification requests from already-distressed borrowers. Wells Fargo's conduct thus led to additional expenditures by the County, with the same 1:1 correlation present in *Lexmark*." *Id.* at 15. In commenting on the administrative feasibility of Cook County's damages, the Court stated that "[s]tatistical analysis could establish the likelihood that a loan modification denial would lead to foreclosure, and therefore could help a factfinder assess how many unnecessary foreclosures Cook County processed as a result of Wells Fargo's conduct." *Id.* at 16.

4. Other than specifically allowing Cook County to recover "increased expenditures by the Cook County Sheriff's Office and the Cook County Circuit Court in connection with administering and processing an increased number of foreclosures" (Order at 37), the Court did not address or mention other specific out-of-pocket financial expenditures that Cook County alleged it suffered and could be demonstrated flow directly from Wells Fargo's equity stripping scheme. *See e.g.,* Second Amended Complaint ("SAC") Dkt. 106 at 12-13, 150, 152-53 ¶¶23a, 23b, 395, 402, 405. Neither did the Court address, nor Defendants object to, Cook County's right to recover for its non-economic and organizational injuries or Cook County's right to obtain injunctive relief, which are long-standing remedies under the Fair Housing Act.

5. Cook County requests clarification or reconsideration of the Court's Order with respect to these matters.

6. This Court has the inherent authority to clarify and reconsider its Order because "any order or other decision . . . that adjudicates fewer than all the claims. . . may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and

2

liabilities." *See LG Elecs. v. Whirlpool Corp.*, 08 C 242, 2009 U.S. Dist. LEXIS 125004 at *3 (N.D. Ill. Nov. 23, 2009).

**Out of Pocket Costs And Lost Revenue Tied to Specific Wells Fargo Foreclosed Properties**

7. The Court's Order suggests that Cook County should have an opportunity to prove and recover its increased expenditures that "inexorably" flowed from Wells Fargo's conduct to the extent they can be tied to specific Wells Fargo foreclosed properties. Yet, the Order appears to limit Cook County's damages to just the "increased expenditures by the Cook County Sheriff's Office and the Cook County Circuit Court in connection with administering and processing an increased number of foreclosures." Order at 37. Thus, the Court's Order is unclear as to whether Cook County should have the opportunity to prove its other direct "out-of-pocket costs" that "inexorably flow" from Wells Fargo's equity stripping scheme as alleged in the Complaint and can be tied to the specific foreclosed properties, *e.g.*,: a) "repair [and] demolition of vacant properties" resulting from borrowers' abandonment or eviction due to foreclosure (SAC at 12 ¶23a); b) "cleaning, repairing, securing, acquiring, or demolishing vacant or abandoned properties" (*Id.* at 13 ¶23b); and c) other direct "out-of-pocket and lost revenue damages" that can be attributed to "each individual [foreclosed] property secured by a non-prime loan . . . ." *Id.* at 153 ¶405. This includes the loss of "intangible property recording and transfer fee income", *Id.* at ¶¶ 11, 363, 366, 368.

8. The Court did not address recoverability of these other out-of-pocket damages alleged by Cook County (*see e.g.,* SAC at 12-13, 150, 152-53 ¶¶23a, 23b, 395, 402, 405) ***to the extent they can be tied to specific foreclosed properties for which Wells Fargo is responsible,*** and it is unclear whether Cook County is precluded from proving and ultimately recovering for these direct financial injuries to the extent that they are directly traceable to Wells Fargo foreclosed or vacated properties. This is a critical distinction. Wells Fargo' motion did not

3

challenge the recoverability of such damage items to the extent they are specifically identifiable to a vacated or foreclosed property and has, therefore, waived any such challenge. [*See* Dkt. 108.] Regardless, the record needs to be clear.

9. With respect to the aforementioned damages, Cook County pled that it could isolate those damages suffered on an individual foreclosed property by using the "foreclosure property addresses, and Defendants' loan application registry, loan servicing, and loan default and foreclosure information obtained from Defendants. . . ." *Id.* In essence, Cook County will be able to identify its specific out-of-pocket costs directly flowing from a specific foreclosed or vacated property that is tied to Wells Fargo's equity stripping scheme. For example, if Cook County can prove that Wells Fargo discriminatorily originated, serviced, or foreclosed on a loan to Borrower A who lived at Address Y in Cook County; and the property was foreclosed on (or Borrower A vacated Address Y after default in anticipation of foreclosure or as a direct consequence of a foreclosure – provable by Wells Fargo's own mortgage servicing records), then Cook County should have the opportunity to prove and recover those out-of-pocket expenditures or other damages to its affected Departments that are ***specifically traceable to the property and which the County*** can show "flow directly from" Wells Fargo's equity stripping scheme, e.g.,: a) "repair [and] demolition of vacant properties" resulting from borrowers' abandonment or eviction (SAC at 12 ¶23a); b) "cleaning, repairing, securing, acquiring, or demolishing vacant or abandoned properties" (*Id.* at 13 ¶23b); and c) other "out-of-pocket and lost revenue damages attributable to each individual property secured by a non-prime loan. . . ." *Id.* at 153 ¶405. These damages "differ from the harms the borrowers themselves experienced due to Wells Fargo's conduct" and "no other party would be able to recover for the[se] specific harms. . . ." Order at 15. It also is possible that, as the Court indicated, Cook County may be able to establish some

of these damages in an administratively preferable manner to the Court by using the type of statistical analysis it identified. *See* Order at 16.

10. Cook County's ability to recovery these unique types of costs and damages should not arbitrarily be limited to just the expenditures by only the Cook County Sheriff's Office and the Cook County Circuit Court. Instead, Cook County should have an opportunity to prove the direct damages suffered by its other Departments that also directly flow from specific Wells Fargo foreclosures and/or home vacancies.

**Shifted Costs of County Services & Other Organizational Damages**

11. Cook County has alleged that it suffered economic and non-economic harm as a result of Wells Fargo's equity stripping scheme (see e.g., SAC at 8-9, 12-15, 152, 155 ¶¶13, 23a-e, 400-01, 413) and also has alleged facts establishing that it has organizational standing – with distinct and recoverable injuries (see e.g., SAC at 12-15, 152-53 ¶¶23a-e and 401-403). Cook County seeks to recover for the costs associated with the shifting of resources to provide services relating to the specific properties foreclosed upon as a result of Wells Fargo's equity stripping scheme. See SAC at ¶¶ 11, 13. 395. That additional cost is the direct result of the loan default and foreclosure proceedings caused by Wells Fargo's equity stripping scheme.

12. The Court concluded that injuries Cook County alleged with respect to increased demand for county services were too remote. Order at 18-22. But the Court did not address, and Defendants did not raise in their Motion, the recoverability of such damages to the extent that they "inexorably flow" from, or could be directly tied to, the specific vacancies or foreclosures Defendants are responsible for -- identifiable from the property addresses. However, the Court's ruling, and Defendants' motion, were focused on the extent the County could recover generally

5

for an increased demand for services, not for increased services tied to specific foreclosed properties or vacancies resulting from Wells Fargo's equity stripping scheme.

13. To be clear Cook County specifically seeks only those organizational damages that ***can be directly traced to an identifiable foreclosed property address and/or homeowner vacancy*** resulting from the discriminatory equity stripping scheme alleged by the County. Cook County does not seek to recover generally for the overall increase in its costs for services as a whole, but, rather, those costs it incurred that can be shown directly relate to specific Wells Fargo foreclosed properties and displaced homeowners. *See* SAC at ¶¶ 11, 13, 395. It is clear that such identifiable damages to the County result not from intervening events but are the first step of damages from Defendants' discriminatory housing practices.

14. These organizational injuries Cook County claims are the precise type of damages the Supreme Court has recognized under the FHA in a long line of case law which was not overturned by *City of Miami*. Nothing in the Supreme Court's *City of Miami* decision suggests that it was abandoning its prior Fair Housing Act precedent securing the rights of organizations to seek redress for their organizational injuries caused by discriminatory housing practices.

15. In *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 378-79 (1982), the Supreme Court held that it was error to dismiss a complaint for lack of standing when, "as broadly alleged, petitioner's steering practices have perceptibly impaired HOME's ability to provide counseling and referral services for low- and moderate-income home-seekers. . . . Such concrete and demonstrable injury to the organizations' activities -- with the consequent drain on the organization's resources -- constitutes far more than simply a setback to the organization's abstract social interests." (internal citation omitted). *City of Miami* did not overturn *Havens*. As discussed above, district courts are "not to anticipate the overruling of a Supreme Court decision,

6

but are to consider themselves bound by it until and unless *the Court* overrules it. . . ." *Saban*, 509 F.3d at 378.

16. Cook County has alleged distinct injuries flowing directly from Wells Fargo's discriminatory lending, servicing and foreclosure practices and it should be permitted to recover, economically or non-economically, for the harms to its primary missions and purposes, as well as the destabilization of its communities. This recovery is expressly permitted by the Seventh Circuit. *See City of Chicago v. Matchmaker Real Estate Ctr., Inc.,* 982 F.2d 1086, 1095 (7th Cir. 1993) (holding that "a destabilization of the community and a corresponding increased burden on the City in the form of increased crime and an erosion of the tax base" along with diversion of scarce resources and a frustration of the City's ability to perform services satisfied the injury in fact requirement); *Bellwood*, 895 F.2d at 1526 (the "only injury which need be shown to confer standing on a fair-housing agency is deflection of the agency's time and money from counseling to legal efforts directed against discrimination."); *see also Reeves v. Carrollsburg Condo. Unit Owners Ass'n*, No. 96-2495(RMU), 1997 U.S. Dist. LEXIS 21762, *9-10 (D.D.C. Dec. 18, 1991) (an organization establishes injury under the FHA by alleging that the "purportedly illegal action increases the resources the group must devote to programs independent of its suit challenging the action" or that its "interest in promoting equal housing opportunities" was harmed).

**Non-economic Damages and Injunctive Relief**

17. In the Order, the Court ruled that Cook County's alleged "loss of racial balance and stability due to Wells Fargo's equity-stripping practice, standing alone," is "too far removed from Wells Fargo's equity stripping practice to satisfy the proximate cause analysis." Order at 21. However, Wells Fargo did not dispute in its motion to dismiss that Cook County has standing to seek relief for its organizational harms and did not dispute Cook County's ability to recover non-economic damages or seek injunctive relief related to these types of harm, focusing instead

7

only on Cook County's ability to recover its "indirect *financial* injuries." [Dkt. 108; Dkt. 109 at 5-13.] (emphasis added). Wells Fargo ignores that Cook County alleges such organizational and non-economic harm. *See* SAC ¶¶11 (harm to "the fabric of Plaintiff's communities and residents."), 23(d) ("frustration of the various purposes and missions" including to "foster equality and opportunity") and 23(e) ("destabilization of the County's minority communities and neighborhoods that has robbed the County of its racial balance and stability").

18. Importantly, Cook County is seeking both injunctive and monetary relief for its incurred injuries, and to prevent its future harm, and the FHA grants the Court wide-discretion in awarding such relief:

> In a civil action under subsection (a), if the court finds that a discriminatory housing practice has occurred or is about to occur, the court may award to the plaintiff actual and punitive damages, and subject to subsection (d), may grant as relief, as the court deems appropriate, any permanent or temporary injunction, temporary restraining order, or other order (including an order enjoining the defendant from engaging in such practice or ordering such affirmative action as may be appropriate)

42 U.S.C. § 3613(a) and (c)(1). Even if Cook County cannot recover economic damages for the shifting of resources resulting from Wells Fargo's FHA violations, Cook County can still seek injunctive relief and punitive damages under 42 U.S.C. § 3613(a) and (c)(1).

19. It is undoubtedly and undisputedly the case that Cook County may seek redress for non-economic harms and seek injunctive relief under the Fair Housing Act ("FHA"), 42 U.S.C. § 3613(a) and (c)(1), and a long line of Supreme Court and Seventh Circuit precedent recognizes such organizational standing and harm.

20. In *Havens*, 455 U.S. at 378-79 the Supreme Court also held that it was error to dismiss the complaint of two individuals who alleged that the petitioner's steering practices deprived them of "important social, professional, business and economic, political and aesthetic

benefits of interracial associations that arise from living in integrated communities free from discriminatory housing practices." *Id*. at 376 (internal quotations and citation omitted). Although the Supreme Court noted that these individuals were not directly harmed like testers, the court stated that "[t]his distinction is . . . of little significance" because they only needed to allege "distinct and palpable injuries that are 'fairly traceable' to petitioners' actions. . . ." *Id*. at 375. Although the individuals did not allege what neighborhoods they lived in or the proximity of their homes to the site of the petitioners' alleged steering practices, the Supreme Court stated that absent "further factual development, we cannot say as a matter of law that no injury could be proved." *Id*. at 377.

21. More recently, the court in *City of Philadelphia v. Wells Fargo & Co.*, No. 17-2203, 2018 U.S. Dist. LEXIS 6443 at *11 (E.D. Pa. Jan. 16, 2018), concluded that the City of Philadelphia sufficiently alleged "plausible proximate cause by alleging a connection between Wells Fargo's lending practices and the non-economic injuries to the City based on its goal of promoting fair housing as part of an integrated community." The court stated that "[n]on-economic injuries are especially cognizable when, as here, resources are allegedly spent by a plaintiff to combat the non-economic harm." *Id.* The non-economic injuries alleged by the City of Philadelphia were plausibly connected to Wells Fargo's discriminatory practices because discriminatory "lending causes injury to the goal of integrated communities by negatively impacting the ability of minorities to purchase homes" and harms "integrated communities by reducing overall minority homeownership, because if a minority borrower is provided a high-risk or high-cost loan, then the loan is more likely to end in an inability to purchase property or, once property is purchased, to avoid foreclosure." *Id.* at *12-13.

22. In light of *Havens*, 455 U.S. at 378-79; *Bellwood*, 895 F.2d at 1526; and *Reeves*, No. 96-2495(RMU), 1997 U.S. Dist. LEXIS 21762, *9-10, Cook County should be able to recover for these injuries to the extent they flow inexorably from Defendants' equity stripping scheme. Here, Cook County should have the opportunity to offer such proof where the injury flows directly from Wells Fargo's actions.

23. Wells Fargo has conceded and waived any challenge to Cook County's ability to recover for noneconomic harm and/or seek injunctive relief. Presumably, this is why the Court did not address this issue in its Order. Nonetheless, Cook County seeks clarification from the Court in order to avoid any confusion that it may seek to recover non-economic damages and seek injunctive relief for Wells Fargo's fair housing violations.

**Lost Tax Revenue**

24. The Court ruled that Cook County could not recover generally for lost property tax revenue or the erosion of its tax base at large. Order at 19-20. Cook County respectfully requests that the Court reconsider its ruling but, again, only as it relates to the injury from lost property value – property tax revenue or tax lien sale revenue -- on specific Wells Fargo foreclosed or vacated properties that are tied to Wells Fargo's equity stripping scheme. *See* SAC at 150, 153 ¶¶395 ("lost property tax revenue on vacant, abandoned or foreclosed properties that have not been recovered via tax lien sales"); 405 ("Plaintiff can isolate out-of-pocket and lost revenue damages attributable to each individual property…").

25. The Supreme Court in *Gladstone Realtors v. Bellwood*, 441 U.S. 91, 110-11 (1979), stated that one of the adverse consequences from the defendant's alleged steering practice was a "significant reduction in property values *directly* injures a municipality. . . ." (emphasis added.) The Seventh Circuit in *Bellwood v. Dwivedi*, 895 F.2d 1521, 1525 (7th Cir.

1990), likewise acknowledged that *Gladstone* "detailed the various types of injury that tipping, brought about by racial steering can inflict. . . ." *City of Miami* not only endorsed *Gladstone* but spoke about principles of *stare decisis* that rendered *Gladstone* unimpeachable. *City of Miami*, 137 S. Ct. at 1304-05. Accordingly, *Gladstone* is still the last word by the Supreme Court on this issue. District courts are "not to anticipate the overruling of a Supreme Court decision, but are to consider themselves bound by it until and unless *the Court* overrules it. . . ." *Saban v. United States DOL*, 509 F.3d 376, 378 (7th Cir. 2007) (emphasis in original).

26. The County's alleged tax base related injuries are exactly the kind of harms that the drafters of the FHA sought to prevent -- "the ruin brought on by absentee ownership of property" as well as "further deterioration" of "municipal tax bases." Kerner Commission Report 10; 114 Cong. Rec. at 2993 (1968). Where, as here, the FHA constitutes a "broad legislative plan to eliminate all traces of discrimination within the housing field," *Marr v. Rife*, 503 F.2d 735, 740 (6th Cir. 1974), and its language "is broad and inclusive," *Trafficante v. Metro Life Insurance Co.*, 409 U.S. 205, 209 (1972), a more liberal proximate cause standard is appropriate. *See, e.g., CSX Transp., Inc. v. McBride*, 564 U.S. 685, 692 (2011) (Federal Employers' Liability Act, 45 U.S.C. § 51 *et seq.*, uses a relaxed proximate cause standard in recognition of the importance the statute places on the safety of railroad workers.).

27. Regardless, the first step test is met here because the County is not seeking recovery for its tax base related injuries ***at large***, but only as to those specific properties foreclosed on by Wells Fargo. This eliminates any proximate cause issue because a foreclosure on a specific property directly results in a reduced value on that property and reduced tax revenues from it and property taxes are unpaid when the property is abandoned. The unpaid property taxes and decrease in assessed value for purposes of determining property taxes ***on a***

*particular property* directly result from the foreclosure. These are not downstream injuries or "ripples," but, rather are the *direct* result of the foreclosure which is the last step in Wells Fargo's improper equity stripping scheme. Accordingly, this direct result of a foreclosure is a first step damage and is not a remote or second step injury in the same way as a revenue decrease of a merchant, for example.

28. Moreover, simply because the County's overall property tax receipts remain relatively constant -- through the adjustment of millage rates as property values fall -- does not mean that the County (which is the embodiment of its residents and communities) is not injured on an individual property basis. This is because when taxes are not paid (or less taxes are paid) on specific properties affected by Defendants' discriminatory housing practice, that tax burden necessarily shifts to other taxpayers within the County. A recovery of such damages by the County effectively returns those monies (dollar for dollar) to the community by funding the County's operations and/or reducing the need to collect such monies from taxpayers going forward.

29. That there may be multiple factors generally affecting Cook County's property tax base and resulting tax revenue at large does not foreclose recovery of lost property value or lost tax revenue on a specific foreclosed property tied to Defendants' equity stripping scheme because proximate cause ***does not mean sole cause***. *See Sosa v. Alvarez-Machain*, 542 U.S. 692, 704 (2004) (proximate cause must only be "substantial enough and close enough to the harm to be recognized by law, [and] a given proximate cause need not be, and frequently is not, the exclusive proximate cause of harm."); *Cox v. Adm'r U.S. Steel & Carnegie*, 17 F.3d 1386, 1399 (11th Cir. 1994) ("A proximate cause is not [] the same thing as a sole cause. Instead, a factor is a proximate cause if it is a substantial factor in the sequence of responsible causation."); *W. Page*

*Keeton et al., Prosser and Keeton on the Law of Torts* § 41, at 268 (5th ed. 1984) ("If the defendant's conduct was a substantial factor in causing the plaintiff's injury, it follows that he will not be absolved from liability merely because other causes have contributed to the result, since such causes, innumerable, are always present.").

30. In light of the Court's conclusion that the "default and foreclosure are the inexorable consequences of Wells Fargo's denial of loan modification requests from already-distressed borrowers," (Order at 15), there can be little doubt that Cook County has alleged a "direct relation" between Wells Fargo's unlawful behavior and its injuries, including lost tax revenue. *See Holmes v. Sec. Investor Prot. Corp.*, 502 U.S. 258, 268 (1992).

31. Cook County should at least be given the opportunity to prove lost receipt damages from lost property values and collections caused by Wells Fargo's equity stripping scheme ***on specific foreclosed or vacated properties***. Again, it also is possible that Cook County may be able to establish some of these damages in an administratively preferable manner to the Court by using the type of statistical analysis it identified. *See* Order at 16.

**Conclusion**

32. Allowing Cook County to recover for all of the above injuries, in addition to those already permitted by the Court, does not "risk massive and complex damages litigation," *Bank of Am. Corp. v. City of Miami*, 137 S. Ct. 1296, 1306 (2017), because Cook County can "isolate out-of-pocket and lost revenue damages attributable to each individual property" by using "foreclosure property addresses, and Defendants' loan application registry, loan servicing and loan default and foreclosure information obtained from Defendants in discovery." SAC at 153 ¶405.

33. In light of the foregoing, Cook County requests the Court reconsider and/or clarify its Order to permit Cook County to recover for all of the economic and non-economic harms that it can prove directly flow from Wells Fargo's equity stripping scheme, and that are permitted by binding precedent. *See Havens*, 455 U.S. at 378-79; and *Gladstone*, 441 U.S. at 110-11.

WHEREFORE, Cook County requests the Court amend the Order to permit Cook County the opportunity to prove and, if proven, recover for its economic and non-economic harms directly flowing from Wells Fargo's FHA violations, including: (a) the out-of-pocket costs Cook County incurred in processing foreclosures tied to Defendants' equity stripping scheme; (b) costs of registration and monitoring of foreclosed properties tied to Defendants' equity stripping scheme; (c) costs of inspecting, securing, cleaning, maintaining and/or demolishing abandoned or vacant properties tied to Defendants' equity stripping scheme; (c) organizational damages from the costs associated with the shifting of resources to provide services – such as policing and housing support services to evicted borrowers - relating to the specific properties foreclosed upon as part of Wells Fargo's equity stripping scheme; (d) non-economic organizational damages to the County from Defendants' equity stripping scheme and injunctive relief to prevent future harm; and (e) lost tax revenue on foreclosed or vacant properties tied to Defendants' equity stripping scheme.

Dated: April 11, 2018

Respectfully Submitted,

**KIMBERLY M. FOXX,
STATE'S ATTORNEY FOR COOK COUNTY**

By: /s/ James M. Evangelista
James M. Evangelista *(pro hac vice)*
jim@ewlawllc.com
David J. Worley *(pro hac vice)*
david@ewlawllc.com
**EVANGELISTA WORLEY, LLC**
8100 A Roswell Road, Suite 100
Atlanta, GA 30350
Phone: (404) 205-8400

James D. Montgomery, Sr.
james@jdmlaw.com
Michelle M. Montgomery
mmm@jdmlaw.com
John K. Kennedy
jkennedy@jdmlaw.com
**JAMES D. MONTGOMERY &
ASSOCIATES, LTD.**
One North LaSalle Street, Suite 2450
Chicago, IL 60602
Phone: (312) 977-0200
Fax: (312) 977-0209

*Special Assistant State's Attorneys*

Sanford P. Dumain (*pro hac vice*)
Peggy J. Wedgworth (*pro hac vice*)
Jennifer S. Czeisler (*pro hac vice*)
J. Birt Reynolds (*pro hac vice*)
Melissa R. Clark (*pro hac vice*)
**MILBERG LLP**
One Pennsylvania Plaza, 50th Floor
New York, NY 10119
Phone: (212) 594-5300

*Additional Counsel*

**CERTIFICATE OF SERVICE**

      I hereby certify that on the 11th day of April, 2018, I electronically filed the foregoing motion with the Clerk of Court for the United States District Court of the Northern District of Illinois by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

                                                      <u>/s/ John K. Kennedy</u>
                                                      John K. Kennedy, Attorney