**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| COUNTY OF COOK, | ) | |
| | ) | Case No. 1:14-cv-09548 |
| Plaintiff, | ) | |
| | ) | Hon. Gary Feinerman |
| v. | ) | |
| | ) | Mag. Judge Mary Rowland |
| WELLS FARGO & CO., et al., | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' MOTION TO COMPEL ANSWERS TO INTERROGATORY NO. 1**

1

Defendants Wells Fargo & Co., Wells Fargo Financial, Inc., and Wells Fargo Bank, N.A. (collectively, "Wells Fargo") respectfully move under Fed. R. Civ. P. 37 to compel Plaintiff County of Cook ("County") to provide, in response to Wells Fargo's Interrogatory No. 1, the names and contact information for the "confidential witnesses" whose statements the County relied upon in the Second Amended Complaint (the "SAC"). The County represented to this Court in the SAC that alleged statements made by "confidential witnesses" provide a factual basis for accusing Wells Fargo of violating the Fair Housing Act. The County also argued that the alleged statements of these "confidential witnesses" provided a basis for the Court to deny Wells Fargo's motion to dismiss and allow this case to reach discovery. But when asked in discovery to identify the "confidential witnesses" the County backtracked, contending that the facts underlying those allegations are no longer "relevant" because the County has not decided whether it will "rely on anything from confidential witnesses at summary judgment or at trial."

The County's obstruction of such basic discovery is remarkable—in nearly five years of litigating similar Fair Housing Act ("FHA") cases, Wells Fargo has never confronted a plaintiff that refused to identify alleged "confidential witnesses" in discovery. The federal pleading standards do not permit a plaintiff to make allegations in a complaint and later contend that the allegations may be irrelevant after the pleading survives a motion to dismiss. The County's objections to producing this information are baseless. This Motion concerns both the integrity of the judicial process and Wells Fargo's fundamental right to take discovery on the factual basis underlying the SAC's allegations.

**I.     Background Regarding the County's Refusal to Identify the Confidential Witnesses**

To support its FHA claims, the County alleges that six anonymous former Wells Fargo employees, each of whom is referenced in the SAC only as a "CW" or "confidential witness,"

2

gave statements regarding misconduct by Wells Fargo. (SAC ¶¶ 166-214.) The County alleges, for example, that:

- "CW2 confirmed that he . . . received 'color-coded maps' that detailed the concentrations of African American and Latino borrowers in [] neighborhoods," (*id.* at ¶ 174); and

- "According to a former Mortgage Consultant Wells Fargo employed from October 2003 through December 2006, and again in 2008 in another capacity ("CW3"), Wells Fargo trained its employees to 'scrub' (i.e., review) internal Wells Fargo mortgage data." (*Id.* at ¶ 189.)

The County also expressly relied on the confidential witness allegations in a brief that it submitted, subject to Rule 11, in opposition to Wells Fargo's motion to dismiss the SAC. (*See* Opp'n to Mot. to Dismiss [Dkt. No. 112].) Specifically, the County argued that the SAC should survive dismissal and reach discovery because "Defendants' alleged actions also are supported by confidential witnesses" and because "the County presented statements from former bank employees establishing that the Bank intentionally discriminated against minority borrowers." (*Id.* at 4 n.3 (citing ¶¶ 161-76, 180-87, 203-06), 19 n.23 (citing ¶¶167-83, 186-93, 199, 204-212).)

After the Court resolved the motion to dismiss and the case proceeded to discovery, Wells Fargo's Interrogatory No. 1 asked the County to identify and provide contact information for "each of the individuals described in the Complaint as 'CW1,' 'CW2,' 'CW3,' 'CW4,' 'CW5,' and 'CW6.'" (the "Interrogatory") (*See* Defs' First Set of Interrogatories, attached hereto as Ex. A.) In response, the County refused to reveal the identities and contact information of the confidential witnesses alleged in the SAC.[1] (*See* Pl.'s Resp. to Defs.' First Set of Interrogatories,

---

[1] This Motion also implicates Wells Fargo's Request for Production No. 1, which asked the County to produce "(a) any statements made by CW1, CW2, CW3, CW4, CW5, and CW6, (b) all documents identifying CW1, CW2, CW3, CW4, CW5, and CW6, (c) all communications between Plaintiff and CW1, CW2, CW3, CW4, CW5, and CW6, (d) all documents CW1, CW2,

3

attached hereto as Ex. B, at 4.) The County objects that (1) "the information sought is *not relevant* to any party's claims or defenses," (2) "it is *not proportional* to the needs of the case," (3) "it is *not important* in resolving the issues in this case," and (4) "the *burden* of providing this information outweighs its likely benefit." (*Id.*) (emphasis added) The County also "objects to Defendants' request for the identification of and contact information concerning CW1-6 as protected by the work product doctrine, and the informer's privilege." (*Id.*)

The County's refusal to identify its confidential witnesses is without precedent in the many other similar FHA actions that have been filed against Wells Fargo since 2013. Like the County's SAC, all of the similar FHA complaints against Wells Fargo have included allegations of "confidential witness" statements. *See, e.g.,* Compl.*, City of Los Angeles v. Wells Fargo*, No. 2:13-cv-09007 (C.D. Cal.) (Dkt. No. 1) ¶¶ 101-126, 129-130, 132-143; Am. Compl., *City of Miami Gardens v. Wells Fargo*, No. 1:14-cv-22203 (S.D. Fla.) (Dkt. No. 20) ¶¶ 98-111, 116-123. None of the local government entity plaintiffs in those cases has ever refused to provide the identities of the alleged "confidential witnesses" to Wells Fargo in discovery. Indeed, one district court did not even permit "confidential witness" allegations at the pleading stage, and in granting Wells Fargo's motion to dismiss held that "if statements attributed to certain witnesses are included in the [second amended] complaint, then the Court will require that the witnesses are identified by name and not as 'confidential witnesses,' 'CW1,' 'CW2,' and the like." Order of Dismissal Without Prejudice, *City of Miami Gardens v. Wells Fargo*, 14-cv-22203 (S.D. Fla.) (Dkt. No. 28) at 2.

---

CW3, CW4, CW5, and CW6 provided to Plaintiff, and (e) all documents Plaintiff provided to CW1, CW2, CW3, CW4, CW5, and CW6." The County responded that it "has no responsive nonprivileged/protected documents."

Significantly, "confidential witness" discovery in the only two FHA cases against Wells Fargo to have reached summary judgment—both of which were resolved in favor of Wells Fargo—revealed that the confidential witnesses did not make the statements attributed to them in the complaints. *City of Los Angeles v. Wells Fargo*, No. 2:13-cv-09007, 2015 WL 4398858, at *6 n.3 (C.D. Cal. July 17, 2015), *aff'd*, 691 Fed. App'x. 453 (9th Cir. 2017); *City of Miami Gardens v. Wells Fargo*, No. 1:14-cv-22203, 2018 WL 3213488, at *8 (S.D. Fla. June 29, 2018). The current status of discovery in this case suggests that history may repeat itself: despite the allegations of the SAC quoting statements supposedly made by the confidential witnesses, in response to Wells Fargo's Interrogatory No. 14, the County recently admitted that it "has not had any communications with these individuals." (*See* Pl.'s Resp. to Defs' Second Set of Interrogatories, attached hereto as Ex. C, at 20-21.)

II.     **Wells Fargo Is Entitled to Discover the Factual Basis for the Confidential Witness Allegations of the SAC, and No Authority Permits the County to Avoid Discovery by Claiming That It May Decide Not to Rely on the Allegations at Summary Judgment**

The County improperly objects that the identity and contact information of the confidential witnesses "is not relevant to any party's claims or defenses." (Ex. B at 4.) Under Rule 26(b)(1) and 28 U.S.C. § 3602(f), it is difficult to conceive of any possible basis for the County's relevance objection—the SAC expressly alleges that these witnesses made statements regarding Fair Housing Act discrimination that they supposedly observed. It is axiomatic that the purpose of discovery is to uncover the evidence supporting or refuting the allegations of a complaint. And the County's confidential witness allegations are not trivial; at least 33 paragraphs of the SAC attribute statements or observations to the six confidential witnesses. (*See* SAC ¶¶ 166-83, 189-90, 196, 203-212, 214, 256); *see also Johnson v. Tellabs, Inc.*, No. 02-cv-4356, slip op. at 2 (N.D. Ill. Mar. 31, 2008) (ECF No. 170) ("*Tellabs II*") (when plaintiffs rely on

5

confidential witnesses in a complaint, the identities of those witnesses are "unquestionably relevant" and "clearly discoverable.").[2] Indeed, the only non-conclusory allegations in the SAC supporting the County's disparate-treatment claim are statements by confidential witnesses. In order to defend themselves against the County's claims, Defendants must be able to depose the confidential witnesses to test the veracity and reliability of their statements in the SAC.[3]

Apparently to justify its refusal to provide the requested information, the County stated at the September 18, 2018 hearing that it has not yet decided whether or not it will "rely on anything from confidential witnesses at summary judgment or at trial." (Ex. E, Sept. 18, 2018 Hr'g Tr. at 5:17-6:7.) A plaintiff cannot circumvent its Rule 11 or Rule 26 obligations with a self-serving statement that it may not rely on certain allegations at the proof stage. It is well-settled that a plaintiff must participate in discovery concerning its allegations, regardless of the information the plaintiff may choose to use later in the proceedings. *See United States v. Lewis*, No. 07-cr-07, 2008 WL 5083131, at *7 (N.D. Ill. Nov. 25, 2008), *aff'd*, 641 F.3d 773 (7th Cir. 2011) (ordering disclosure of the identity of an informant who "participated in and witnessed the events alleged" and recognizing that witness was not likely to be called by the plaintiff at trial).

The consequences of the legal standard that the County urges the Court to accept are untenable. A plaintiff would be able, despite the requirements of Rule 11, to present materially false allegations in a complaint to survive a motion to dismiss, and then contend that the truth of the allegations cannot be tested in discovery because the plaintiff does not intend to reply upon the allegations to prove its case. Such a standard would defy the Federal Rules of Civil Procedure and allow fishing expeditions by a party merely hoping that discovery will provide the

---

[2] A copy of this decision is attached hereto as Exhibit D.

[3] Defendants' need to test the veracity of the confidential witnesses' statements is particularly pressing in light of the County's recent revelation that the County "has not had any communications with" the confidential witnesses. (*See* Ex. C, at 20-21.)

basis for a lawsuit. Yet, it is a longstanding rule that "factual allegations [] must not be speculative or conclusory *because* discovery is not intended to be a fishing expedition." *Higgason v. Lemmon*, 6 F. App'x 433, 436 (7th Cir. 2001) (emphasis added); *Brandt v. Schal Assocs., Inc.*, 121 F.R.D. 368, 374 (N.D. Ill. 1988) (a plaintiff "cannot rely on the results of extensive post-filing discovery to provide the justification for bringing suit in the first place").

In any event, discovery is not limited to information on which the County will rely in support of its claims at summary judgment or trial—rather, discovery encompasses ***all*** facts and issues raised in a complaint, ***including those facts that tend to disprove the claims***. And discovery of the "confidential witness" allegations in the only two cases to have reached summary judgment have done just that. In granting summary judgment to Wells Fargo in a similar FHA suit filed by Los Angeles, a district court observed that the "Complaint contains several suspicious allegations of purposeful discrimination," including allegations attributed to "a confidential Wells Fargo employee, identified as 'CW2' in the complaint," but "[o]nce litigation began, CW2 gave a sworn statement that he 'did not make the statements that are attributed to 'CW2' in the City of L.A.'s legal complaint." *Los Angeles*, 2015 WL 4398858, at *6 n.3. Similarly, in granting summary judgment to Wells Fargo in a related FHA lawsuit filed by Miami Gardens, another district court found that evidence from such a witness did not support the FHA claims. *See City of Miami Gardens*, 2018 WL 3213488, at *8. The County presented very serious allegations attributed to "confidential witnesses," and Wells Fargo is entitled to test the truth of the allegations in discovery.

### III. There is no Burden to Producing Information Regarding the Confidential Witnesses

The County also makes boilerplate proportionality and burden objections to the Interrogatory. (Ex. B at 4.) But the County strains credibility by asserting that the burden of providing six names, addresses, and phone numbers is somehow too great or outweighs the

7

benefit of Defendants' deposing the confidential witnesses and testing the veracity and reliability of their statements in the SAC. That is nonsense, and counsel for the County admitted as much during the parties' meet and confer teleconference on September 24, 2018, when counsel stated that it would not be a burden to produce the names and contact information for each of the confidential witnesses. Accordingly, these objections should be over-ruled and the County should be ordered to produce the sought-after information.

### IV. The Work Product Doctrine Does Not Protect Underlying Facts About the Confidential Witnesses

The County's objection that the confidential witnesses' identities and contact information are protected by the work-product doctrine is meritless. While the work-product doctrine protects an attorney's "mental impression," "mental processes," "thoughts," and "personal beliefs" from disclosure during discovery, *Hickman v. Taylor*, 329 U.S. 495, 508-14 (1947), it "does not protect factual information that a lawyer obtains when investigating a case." *EEOC v. Jewel Food Stores, Inc.*, 231 F.R.D. 343, 346 (N.D. Ill. 2005) (citations omitted). Indeed, "a party may properly inquire into the identity and location of persons having knowledge of relevant facts." *Id.* at 346-47 (rejecting argument that disclosing the identities of individuals its lawyers interviewed would "invade the attorneys' mental processes, by revealing whom [defendant's] attorneys deemed important enough to interview" and ordering disclosure of the persons who made statements relating to allegations in the complaint); *see also Tellabs II*, slip op. at 2 (granting motion to compel because the Court "has not found any [] cases" supporting plaintiffs' assertion that the work-product doctrine protects identities of confidential witnesses cited in complaint); *Plumbers and Pipefitters Local Union No. 630 Pension-Annuity Tr. Fund v. Arbitron, Inc.*, 278 F.R.D. 335, 340 (S.D.N.Y. 2011) ("[T]he names of the persons identified in the [complaint] as confidential informants are not entitled to any work product protection"). The confidential

8

witnesses' names and contact information are clearly underlying facts that are not protected by the work product doctrine and the County must provide them to Defendants.

## V. The Informer's Privilege Does Not Protect the Identities of the Confidential Witnesses

The County further objects to Interrogatory No. 1 on the ground that the confidential witnesses' identities and contact information are protected by the informer's privilege. The doctrine is wholly inapplicable under these circumstances.

### A. The Seventh Circuit no longer recognizes the informer's privilege in civil litigation.

The Seventh Circuit's most recent decisions addressing this issue unequivocally held that "[t]here is no 'informer's privilege' in civil litigation." *Higginbotham v. Baxter Int'l, Inc.*, 495 F.3d 753, 757 (7th Cir. 2007). The Seventh Circuit has further explained that because informants whose statements are relied upon in a civil complaint "have no evidentiary privilege, their identity will be revealed in pretrial discovery." *Makor Issues & Rights, Ltd. v. Tellabs Inc.* 513 F.3d 702, 711 (7th Cir. 2008) ("*Tellabs I*").[4] This Court has applied these holdings on at least one occasion to order plaintiffs to respond to an interrogatory virtually identical to the one at issue here. *See Tellabs II*, slip op. at 2 (ordering plaintiffs to respond to interrogatory seeking identities of confidential witnesses cited in complaint because "the Seventh Circuit made clear that a plaintiff cannot maintain the confidentiality of an informant upon whom he or she relies in a complaint"); *see also City of Livonia Emps.' Ret. Sys. v. The Boeing Co.*, No. 09-cv-7143, 2010 WL 2169491, at *5 (N.D. Ill. May 26, 2010) ("Boeing is entitled to learn [confidential witness identities] in discovery" because "'[t]here is no informer's privilege in civil litigation.'")

---

[4] While there are some Seventh Circuit decisions condoning the use of informer's privilege in civil litigation, *see, e.g., Dole v. Local 1942, Int'l Bhd. of Elec. Workers, AFL-CIO*, 870 F.2d 368 (7th Cir. 1989), those decisions all predate *Higginbotham* and *Tellabs*, which rejected the use of informer's privilege in non-criminal cases after a motion to dismiss has been denied.

(quoting *Higginbotham*, 495 F.3d at 757). As the Seventh Circuit has made clear that such protections are no longer available in private litigation, the County's objection must be overruled and, as this Court noted during the September 18, 2018 hearing, "the veil is going to have to come off." (Ex. E at 5:15.)

### B. The informer's privilege only protects information conveyed to law enforcement officials.

Even if the Seventh Circuit still recognized the use of the informer's privilege in civil litigation, which it does not, the County cannot invoke the privilege here because the privilege only protects the identities of individuals who relay information to officials charged with enforcing the law, which the County cannot claim to be in this litigation.

"What is usually referred to as the informer's privilege is in reality the Government's privilege to withhold from disclosure the identity of persons who furnish information of violations of law to ***officers charged with enforcement of that law***." *Roviaro v. United States*, 353 U.S. 53, 59 (1957) (emphasis added). "The scope of the privilege is limited by its underlying purpose," which is "the furtherance and protection of the public interest in ***effective law enforcement***." *Id.* at 59-60 (emphasis added). In other words, in order to avail itself of the informer's privilege in this litigation, the County must be acting as an officer charged with enforcing the law. But the County does not, and cannot, claim to be an "officer[] charged with enforcement of" the FHA. *See id.* The FHA provides for only three enforcement mechanisms: by the Secretary of Housing and Urban Development; by the Attorney General; and, as in this case, by "private persons" in "civil actions." 42 U.S.C. §§ 3612-14. The County explicitly conceded that it is not acting as a law enforcement officer in this case by pleading that it "brings this action for its own damages pursuant to the ***private persons*** civil enforcement provisions" of the FHA.

10

*See* SAC at ¶ 19 (citing 42 U.S.C. § 3613) (emphasis added). That concession alone is fatal to the invocation of the informers' privilege.

That the County is a municipal government entity does not transform it into a law enforcement officer, particularly not when the County has explicitly identified itself as a private person for purposes of civil litigation. As the Court has noted, the County "disavowed bringing this suit in a representative capacity, or as a '*parens patriae*,' on behalf of its residents" so that it might "avoid walking into the claim preclusion trap set by the 2012 DOJ and Illinois Attorney General consent decrees, which compensated Cook County residents for their injuries." *Cty. of Cook v. Wells Fargo & Co.*, 115 F. Supp. 3d 909, 919-20 (N.D. Ill. 2015). The County cannot simultaneously claim on the one hand to be a "private person[]" suing "for its own damages" to avoid the effects of claim preclusion, while on the other claim to be an officer enforcing the law to shield presumptively discoverable facts from discovery. Courts have refused to apply the informer's privilege where, like here, government entities are not acting as law enforcement officials. *See, e.g., Fruchtman v. Town of Dewey Beach*, 886 F. Supp. 2d 427, 428 (D. Del. 2012) (rejecting invocation of informer's privilege by town mayor in property zoning dispute because general grant of power to faithfully execute laws "does not grant to [the mayor] the degree of participation in law enforcement required to confer the status of law enforcement official for purposes of invoking the informer's privilege"). The result here should be no different.

### C. The Defendants' need for the confidential witnesses' identities outweighs the County's interest in keeping them confidential.

Even if the County could properly invoke the informer's privilege in private civil litigation where it is not acting as a law enforcement officer, which it cannot, the Defendants' need for the confidential witnesses' names and contact information outweighs the County's interest in keeping the identities confidential.

11

The informer's privilege is limited by "fundamental requirements of fairness." *Roviaro*, 353 U.S. at 60. "Where the disclosure of an informer's identity . . . is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the privilege must give way." *Id.* at 60-61. To determine whether to disclose an informer's identity, courts must "balanc[e] the public interest in protecting the flow of information against the [defendant's] right to prepare his defense," considering "the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors." *Id.* at 62. "Informants who play major roles" in the conduct being charged "will likely offer more significant testimony than those whose participation is merely peripheral." *United States v. Delgado*, No. 02-cr-50002-4, 2002 WL 1467653, at *1 (N.D. Ill. July 3, 2002); *see also United States v. Dawson*, 243 F. Supp. 2d 780, 781 (N.D. Ill. 2003) (where informant is "heavily involved" in the charged conduct, "the defendant's right to prepare an adequate defense outweighs the government's privilege to keep the informant's identity secret"). For the reasons explained in detail in Section II above, the confidential witnesses' identities are "relevant" and not only helpful but essential to Defendants' ability to investigate the allegations of and develop defenses to the County's SAC.

## VI.    Certification Pursuant to Fed. R. Civ. P. 37(a)(1)

Pursuant to Rule 37(a)(1) of the Federal Rules of Civil Procedure, counsel for Wells Fargo hereby certifies that they have conferred with counsel for the County in a good-faith effort to resolve by agreement the issues raised in this motion. Specifically, counsel for Wells Fargo (Nicola Bunick, Hannah Koesterer, Abram Moore, Nicole Mueller, and Peter Wilson) and counsel for the County (James Evangelista, Kristi McGregor, and Birt Reynolds) participated in a teleconference in which they conferred in good faith by telephone call on September 17, 2018. On September 18, 2018, counsel for Wells Fargo (Abram Moore, Nicole Mueller, Peter Wilson,

and Sheldon Zenner) met with counsel for the County (Jim Evangelista and Birt Reynolds) in person regarding their respective positions on the issues in the foregoing motion, but the parties were unable to reach an agreement.

## CONCLUSION

For the foregoing reasons, the Court should order the County to respond to Defendants' Interrogatory No. 1.

Dated: October 2, 2018　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　WELLS FARGO & CO., WELLS FARGO
　　　　　　　　　　　　　　　　　　FINANCIAL, INC., AND WELLS
　　　　　　　　　　　　　　　　　　FARGO BANK, N.A


　　　　　　　　　　　　　　　　　　By: /s/ Abram I. Moore_____

　　　　　　　　　　　　　　　　　　K&L GATES LLP
　　　　　　　　　　　　　　　　　　Paul F. Hancock
　　　　　　　　　　　　　　　　　　Paul.Hancock@klgates.com
　　　　　　　　　　　　　　　　　　Olivia Kelman@klgates.com
　　　　　　　　　　　　　　　　　　200 South Biscayne Blvd., Suite 3900
　　　　　　　　　　　　　　　　　　Miami, Florida 33131-2399

　　　　　　　　　　　　　　　　　　Abram I. Moore
　　　　　　　　　　　　　　　　　　Nicole C. Mueller
　　　　　　　　　　　　　　　　　　abe.moore@klgates.com
　　　　　　　　　　　　　　　　　　nicole.mueller@klgates.com
　　　　　　　　　　　　　　　　　　70 West Madison Street, Suite 3100
　　　　　　　　　　　　　　　　　　Chicago, Illinois 60602
　　　　　　　　　　　　　　　　　　KATTEN MUCHIN ROSENMAN LLP
　　　　　　　　　　　　　　　　　　Sheldon T. Zenner
　　　　　　　　　　　　　　　　　　Sheldon.Zenner@kattenlaw.com
　　　　　　　　　　　　　　　　　　David C. Bohan
　　　　　　　　　　　　　　　　　　David.Bohan@kattenlaw.com
　　　　　　　　　　　　　　　　　　Peter G. Wilson
　　　　　　　　　　　　　　　　　　Peter.Wilson1@kattenlaw.com
　　　　　　　　　　　　　　　　　　Hannah O. Koesterer
　　　　　　　　　　　　　　　　　　Hannah.Koesterer@kattenlaw.com
　　　　　　　　　　　　　　　　　　525 W. Monroe Street
　　　　　　　　　　　　　　　　　　Chicago, Illinois 60661-3693
　　　　　　　　　　　　　　　　　　Tel: (312) 902-5200
　　　　　　　　　　　　　　　　　　Fax: (312) 902-1061

　　　　　　　　　　　　　　　　　　*Attorneys for Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that on October 2, 2018, I caused a true and correct copy of the foregoing to be served upon the following counsel of record as of this date by filing same through the ECF system:

>James M. Evangelista
>David J. Worley
>Kristi Stahnke McGregor
>EVANGELISTA WORLEY LLC
>8100 A Roswell Road, Suite 100
>Atlanta, GA 30350
>jim@ewlawllc.com
>david@ewlawllc.com
>kristi@ewlawllc.com
>
>James D. Montgomery, Sr.
>John K. Kennedy
>JAMES D. MONTGOMERY &
>ASSOCIATES LTD.
>One North LaSalle Street, Suite 2450
>Chicago, Illinois 60602
>jmontgomery@jdmlaw.com
>jkennedy@jdmlaw.com
>
>Sanford P. Dumain
>Peggy J. Wedgworth
>Melissa R. Clark
>Jennifer S. Czeisler
>J. Birt Reynolds
>MILBER TADLER PHILLIPS
>GROSSMAN LLP
>One Pennsylvania Plaza, Suite 1920
>New York, NY 10119
>sdumain@milberg.com
>pwedgworth@milberg.com
>mclark@milberg.com
>jczeisler@milberg.com
>breynolds@milberg.com

/s/ Abram I. Moore