UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| COUNTY OF COOK, | ) | |
| | ) | Case No. 14-cv-9548 |
| Plaintiff, | ) | |
| v. | ) | Hon. Gary Feinerman |
| | ) | |
| WELLS FARGO & CO., et al., | ) | Mag. Judge Mary Rowland |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF'S MOTION FOR RECONSIDERATION**

Plaintiff County of Cook ("County"), by and through its undersigned attorneys, hereby moves this Court to reconsider its Memorandum Opinion and Order ("Order"), dated March 26, 2018 (Dkt. 143), *Cnty. of Cook v. Wells Fargo & Co.*, 314 F. Supp. 3d 975 (N.D. Ill. 2018). In support of this Motion,[1] the County states as follows:

In its Order this Court found that the "financial harms arising from the County's administering and managing mortgage foreclosures flow inexorably from Wells Fargo's alleged conduct, and thus are sufficiently 'direct' for purposes of the proximate cause inquiry." *Cnty. of Cook*, 314 F. Supp. 3d at 985. With respect to the County's damages related to lost property values and property tax revenue, and increased demand for services, the Court found these harms involved "too many 'intricate, uncertain inquiries' to establish proximate cause." *Id.* at 988 (internal citation omitted).

Since the Court issued its Order, the Eleventh Circuit conducted the proximate cause analysis directed on remand by the Supreme Court in *Bank of America Corp. v. City of Miami*, 137 S. Ct. 1296 (2017), and concluded that the City of Miami adequately pled proximate cause with

---

[1] The County also is moving for reconsideration in *County of Cook v. Bank of America Corp.*, No. 14 Civ. 2280 (EEB) (N.D. Ill. Mar. 30, 2018) and *County of Cook v. HSBC North America Holdings Inc.*, No. 14 Civ. 2031 (JZL) (N.D. Ill. May 30, 2018).

respect to its "tax-base injury" because there was a "logical and direct bond between discriminatory lending as a pattern and practice applied to neighborhoods throughout the City and the reduction in property values." *City of Miami v. Wells Fargo & Co.*, No. 14 Civ. 14544, 2019 U.S. App. LEXIS 13343, at *83–84 (11th Cir. May 3, 2019) (hereafter, "*Miami*"). The fact that an "individual home might go under" for a variety of reasons did not render proximate cause too attenuated: "when discriminatory lending practices pervade a neighborhood or a city, the city's fisc will necessarily be affected because we know some number of homes will go under, and some number of properties will lose value." *Id.* at *84.

The County's alleged tax base injury is identical to the injury alleged by the City of Miami. *See, e.g.*, Second Amended Complaint ("SAC"), Dkt. 106, ¶¶ 395–96. The County has also alleged that it would use statistical and regression analysis to prove that injury. Accordingly, the Court should adopt the reasoning in *Miami* and find that the County has adequately alleged proximate cause for its damages of lost property value, lost tax revenue, and any increased county services that are alleged to have a direct and logical bond to Defendants' discriminatory equity stripping scheme. The County should have the opportunity to present evidence to prove these damages at trial.

### A. Standard of Review

This Court has the discretion, pursuant to its inherent authority, to reconsider the Order because "any order or other decision . . . that adjudicates fewer than all the claims . . . may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." *Bonner v. O'Toole*, No. 12 Civ. 981 (MSS), 2015 U.S. Dist. LEXIS 154990, at *10–11 (N.D. Ill. Nov. 17, 2015). "The considerations that govern the reconsideration of interlocutory orders are essentially equitable." *Harrisonville Tel. Co. v. Ill. Commerce Comm'n*, 472 F. Supp. 2d 1071, 1074 (S.D. Ill. 2006). Motions to reconsider an interlocutory order "may be

entertained and granted as justice requires." *Akzo Coatings, Inc. v. Ainger Corp.*, 909 F. Supp. 1154, 1160 (N.D. Ind. 1995); *see also Fisher v. Nat'l R.R. Passenger Corp.*, 152 F.R.D. 145, 149 (S.D. Ind. 1993) (noting that district courts have "practically unbridled discretion" to reconsider an interlocutory order). A motion for reconsideration is valuable when there was a "controlling or significant change in the law or facts" since the issue was submitted to the court. *Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1191 (7th Cir. 1990).[2]

### B. The Eleventh Circuit's Decision in *City of Miami v. Wells Fargo*

In *Miami*, on remand from the Supreme Court's decisions in *Bank of America* and *City of Miami v. Wells Fargo*, the Eleventh Circuit[3] provided a careful, thoughtful and thorough analysis of the considerations and Supreme Court precedent relevant to determining whether proximate cause is plausibly alleged in an FHA suit. The Court did not have the benefit of this decision when it decided the Order. The Eleventh Circuit's decision is highly persuasive legal authority in favor of permitting the County to proceed on all of its alleged damages. The Eleventh Circuit emphasized that, given the policies underlying the FHA's statutory scheme, a strict "first step" analysis is not appropriate and a plaintiff can meet the proximate cause requirement by alleging *some* direct

---

[2] Some cases suggest that a motion for reconsideration of an interlocutory order is only appropriate to correct a manifest error of law or fact, or present newly discovered evidence. *See, e.g.*, *Velsicol Chem., LLC v. Westchester Fire Ins. Co.*, No. 15 Civ. 2534 (AJE), 2017 U.S. Dist. LEXIS 212908, at *5 (N.D. Ill. Dec. 29, 2017). This standard is incorrect for two reasons. First, it ignores the fact that a court may grant reconsideration based on equitable considerations or when justice so requires. *See Harrisonville Tel. Co.*, 472 F. Supp. 2d at 1074; and *Akzo Coatings*, 909 F. Supp. at 1160. Second, it appears to be premised on the standard set forth by Federal Rule of Civil Procedure ("Rule") 59 for motions seeking a new trial or amending a judgment. *See Oto v. Metro. Life Ins. Co.*, 224 F.3d 601, 606 (7th Cir. 2000) (on a motion for reconsideration under Rule 59, the movant must present newly discovered evidence or establish a manifest error of law or fact); and *Caisse Nationale de Credit Agricole v. CBI Indus.*, 90 F.3d 1264, 1269 (7th Cir. 1996) (stating that a motion for reconsideration was limited to correcting manifest errors of law or fact or presenting newly discovered evidence in context of reviewing a motion for reconsideration after an order granting summary judgment). The County is not moving for reconsideration under Rule 59.

[3] The Eleventh Circuit collectively addressed Miami's amended complaints against Bank of America and Wells Fargo.

relation -- "a meaningful and logical continuity" -- between the discriminatory conduct at issue and the plaintiff's resulting injuries. 2019 U.S. App. LEXIS 13343 at *25. This approach supports the County's claims for lost property value and tax related damages, as well as other types of costs that can be linked to specific foreclosed or vacant properties for which Wells Fargo was responsible. Indeed, the County's analysis and oral argument in its opposition to Wells Fargo's Motion to Dismiss (Dkt. 112 at 15–17) prognosticated the Eleventh Circuit's decision in *Miami*, which the County discusses in detail below. Similar to the County's SAC, the complaints at issue in *Miami* alleged that Wells Fargo and other nationwide banks "intentionally targeted black and Latino Miami residents for predatory [mortgage] loans" with "unfair terms that [borrowers] could not afford." *Miami* at *2, 9. The complaints further alleged that Wells Fargo engaged in redlining and reverse redlining, and that this conduct resulted in disproportionately fast and frequent foreclosures on minority borrowers, "diminished property values in predominantly minority neighborhoods, substantially reduced tax revenue . . . and increased expenditures by [Miami] for municipal services." *Id*. at *2-3, 11.

The Eleventh Circuit concluded that Miami adequately pled proximate cause between the banks' alleged discriminatory lending practices and Miami's foreclosure-related lost property-value injuries. In doing so, the Eleventh Circuit flatly rejected Wells Fargo's arguments that Miami's injuries fell outside of the "first step" and that there were up to "six steps" between Wells Fargo's discriminatory lending and Miami's injuries -- the very same arguments Wells Fargo made in support of dismissing the SAC.[4]

---

[4] *Compare Miami*, 2019 U.S. App. LEXIS 13343 at *33 and *36 *with* Mem. of Law in Supp. of Defs.' Mot. to Dismiss the Second Am. Compl., Dkt. 109 at 9–10, 11 n.8 (Defs.' Mot. to Dismiss).

To begin its analysis, the Eleventh Circuit first acknowledged that, while "[p]roximate cause under the FHA certainly requires foreseeability," it "also requires 'some direct relation between the injury asserted and the injurious conduct alleged.'" *Id.* at \*22 (citing *Bank of Am. Corp.*, 137 S. Ct. at 1305–06). The Eleventh Circuit particularly focused on the word "some," stating that "the law requires '<u>some</u> direct relation' not any quantifiable amount of it," and further emphasized that "[t]he requirement is therefore somewhat easier to meet than if the [Supreme] Court had said we needed to find "<u>a</u> direct relation.'" *Id.* at \*24 (emphasis in original).

The Eleventh Circuit next recognized that determining the contours of proximate cause under the FHA depended upon the nature of the FHA's statutory cause of action and the policy judgments underlying it. *See id.* at \*23 ("Supreme Court twice emphasized that the policy judgments that shape our proximate cause analysis will necessarily depend on the FHA."). Applying the Supreme Court's "four guiding principles" outlined in *Bank of America*, the Eleventh Circuit began by examining the "the general tendency. . . not to go beyond the first step." *Id.* at \*24 (citing *Bank of Am. Corp.*, 137 S. Ct. at 1306). After considering that "Supreme Court precedent makes crystal clear that an intervening step does not necessarily mean proximate cause has not been plausibly alleged," *id.* at \*24, 25–30 (reviewing pertinent Supreme Court precedent, including *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118 (2014) and *Hemi Grp., LLC v. City of N.Y.*, 559 U.S. 1 (2010)), the Eleventh Circuit concluded: "***[t]he essential point for us then is that the 'general tendency' to stop at the first step is just that, a general tendency, not an inexorable rule***." *Id* at \*30 (emphasis added). This eviscerated Wells Fargo's entire "first step" argument co-opted from the "general tendency" language in *Bank of America*. *Id.* at \*30–33; *see* Defs.' Mot. to Dismiss at 9–10.

5

The Eleventh Circuit also observed that the banks "overstate the length of the causal chain by reading the complaints unfavorably to the City," ignore allegations that the banks failed to refinance the predatory loans, ignore that such actions "may have occurred far down the causal chain, shortly before foreclosure" and, as to Wells Fargo's purported six steps, "count only from the point of loan origination" when "[a]t the very least there might only be one step between the denial of refinancing and a bank's foreclosing on a property already in default." *Id.* at *33–34.[5] This is exactly the tack Wells Fargo took in their Motion to Dismiss here, *see* Defs.' Mot. to Dismiss at 3, 9–10, and which the County criticized in its Opposition. *See* Pls.' Resp. in Opp'n to Defs.' Mot. to Dismiss, Dkt. 112 at 15–16 (Pls.' Resp.)

Perhaps more important in rejecting Wells Fargo's "first step" argument is the Eleventh Circuit's concurrent rejection of the banks' intervening factors argument, which Wells Fargo made here[6] and which this Court relied on in limiting Cook County's damages. *See Cnty. of Cook*, 314 F. Supp. 3d at 983–84, 988–90. As the Eleventh Circuit explained, the various intervening factors set forth by the banks -- as reasons for why a borrower's home might go into foreclosure -- do not intervene in the short causal chain between those foreclosures and the resulting injuries to the municipal entity:[7]

---

[5] The Eleventh Circuit even chastised Wells Fargo's exaggerated step-counting -- as "self-evidently conducted so as to identify as many steps as possible" after the point of loan origination – and Wells Fargo's ignoring of "the complaints' allegations that distinct FHA violations occurred when homeowners already having financial difficulties were attempting to refinance or otherwise modify their loans." *Miami*, 2019 U.S. App. LEXIS 13343 at *36, 39.

[6] *Compare* Wells Fargo Bank, N.A.'s and Wells Fargo & Co.'s Mot. to Dismiss and Incorporated Mem. of Law, *City of Miami v. Wells Fargo & Co.*, No. 13 Civ. 24508 (WPD) (S.D. Fla. Mar. 18, 2014), Dkt. 31 at 1, 9 (attached as Exhibit A) *with* Defs.' Mot. to Dismiss at 10.

[7] The Eleventh Circuit noted that "Supreme Court precedent shows that an intervening step will not vitiate proximate cause in all instances. What is more important, precedent reveals, is the certainty with which we can say the injury is fairly attributable to the statutory violation." *Miami*, 2019 U.S. App. LEXIS 13343 at *26. In fact, "the Supreme Court has <u>never</u> held that the presence of an intervening casual step or the involvement of a third party necessarily bars a finding of proximate cause as a matter of law." *Id.* at *82 (emphasis in original).

> [A] further problem with the Bank's count is that the variety of factors that we worry might independently explain a homeowner's foreclosure (like the loss of a job or a spiking health care costs) all occur a the front end of the step-counting, between the act or acts of redlining and the foreclosure, not later. ***Once we have reached increased foreclosures on a neighborhood or citywide basis, it seems to us that the path to the City's substantially decreased tax base is clear, direct and immediate***; we can discern no obvious intervening roadblocks. ***Virtually all the independent variables posited by the Banks occur before foreclosure . . . .There is no discontinuity in this portion of the causal chain***. Thus, since the risks of multiple independent variables after foreclosure are not likely, and are not many, even if we were to count steps in the way the Banks have suggested, ***the principles animating the general first-step rule do not support the Banks' calculation of the post-foreclosure causal chain***.

*Miami*, 2019 U.S. App. LEXIS 13343 at *35 (emphasis added). Thus, the Eleventh Circuit found that "[b]ecause loan modification and refinancing can occur after a borrower defaults, FHA violations of this type could be far more closely connected to the City's lost revenue. ***At the very least there might only be one step between the denial of refinancing and a bank's foreclosing on a property already in default***." *Id*. at *36 (emphasis added).

The ***Eleventh Circuit's analysis of Supreme Court precedent on this point warrants the exact opposite conclusion that this Court reached*** when relying on Wells Fargo's strict "first step" and "too attenuated" arguments to limit the County's damages to just the costs directly incurred in processing foreclosures. *See Cnty. of Cook*, 314 F. Supp. 3d at 983–84; 988–90. As the Eleventh Circuit held, "[p]roceeding beyond a first step here is consistent with the instruction that we stop at the first step only as a 'general tendency,' and that we also consider the nature of the cause of action, principles of continuity, and administrative feasibility." *Miami*, 2019 U.S. App. LEXIS 13343 at *33 (quoting *Bank of Am. Corp.*, 137 S. Ct. at 1306).[8]

---

[8] The County suggested this analysis in its Opposition. *See* Pls.' Resp. at 15–16.

Applying the guidelines from *Bank of America*, the Eleventh Circuit next evaluated the nature of the FHA's statutory cause of action, its policies and its remedial nature. *Miami*, 2019 U.S. App. LEXIS 13343 at *36–43. It first explained that "the FHA has a broad remedial purpose, is written in decidedly far-reaching terms, and is perfectly capable of accommodating the type of aggregative causal connection that the City has identified between the Banks' alleged misconduct and financial harm to Miami." *Id*. at *39–40.[9] Recognizing that the FHA prohibits "a wide range of conduct," the Eleventh Circuit found that the FHA's legislative history and context "both comport with a proximate cause standard that can accommodate claims like the City's." *Id*. at *41, 44. The Eleventh Circuit concluded that the FHA "as its sponsors saw it, was designed to extend through chains of causation," because the legislation's goals "were directed at the neighborhood level," "aimed beyond the housing market," and the FHA's sponsors "quite specifically referenced harm to a city's tax base, arising out of discrimination in the housing market." *Id*. at *46–47 (quoting 114 Cong. Rec. 3421 (Feb. 6, 1968), Senator Mondale's statement) ("<u>Declining tax base</u>, poor sanitation, loss of jobs, inadequate educational opportunity, and urban squalor will persist as long as discrimination forces millions to live in the rotting cores of central cities.") (emphasis in original). Thus, the Eleventh Circuit could not discern any "reason to think as a general matter that the City's claims are out of step with the 'nature of the statutory cause of action' and the remedial scheme that Congress created." *Id*. at *47.

---

[9] *See also Havens Realty Corp. v. Coleman*, 455 U.S. 363, 380 (1982) (recognizing the "broad remedial intent of Congress embodied in the [FHA]"); *Trafficante v. Metro Life Ins. Co.*, 409 U.S. 205, 209, 211, 212 (1972) (stating that the "broad and inclusive" language of the FHA must be given "generous construction" in order to carry out a "policy that Congress considered to be of the highest priority."); *Nationwide Mut. Ins. Co. v. Cisneros*, 52 F.3d 1351, 1360 (6th Cir. 1995) (holding that the scope of the FHA was broad enough to include "redlining," where the discriminatory practice of limiting availability of property insurance directly impacted a person's ability to obtain housing).

Turning to whether it was administratively possible and convenient to trace Miami's alleged property value and tax related damages to Wells Fargo's discriminatory behavior under *Holmes v. Securities Investor Protection Corp.*, 503 U.S. 258 (1992), the Eleventh Circuit concluded that there was no difficulty in apportioning damages because only Miami could allege and recover these types of damages. *Id*. at *63 ("Substantially decreased tax revenue and increased municipal costs are injuries that affect the interests of the City alone, so there could not plausibly be any difficulty in apportioning them between multiple plaintiffs."). The Eleventh Circuit also concluded that Miami was the more appropriate party to bring its damages claims to deter Wells Fargo's injurious and discriminatory behavior of widespread redlining and reverse redlining. *Id*. at *68–70; *see also id*. at *48 ("Since the City's injuries are unique to its treasury, no other plaintiff will plead the same injuries, or attempt to recover the same funds. ***The City is in the best position to allege and litigate this peculiar kind of injury, to deter future violations and, theoretically, to actually remedy its distinctive injury.***") (emphasis added).

Another factor in concluding that Miami adequately alleged proximate cause for its property value and tax related injuries was that Miami plausibly alleged the ability to conduct an "analysis of reduced tax revenue that is precise enough to avoid difficulties with isolating the role of the Banks' alleged violations . . . ." *Id*. at *52. Specifically, the Eleventh Circuit found that Miami "plausibly pled that it is practicable and convenient to quantify the property tax injury's causal connection to the Banks' policies," (*id*. at *56), because Miami alleged it would use "[r]outinely maintained property tax and other data" along with Hedonic regression to isolate the loss of property values attributable to Wells Fargo's unlawful behavior. *Id*. at *53–54.[10] The

---

[10] In its analysis, the Eleventh Circuit also relied on *City of Oakland v. Wells Fargo Bank, N.A.*, No. 15 Civ. 4321 (EMC), 2018 U.S. Dist. LEXIS 100915 (N.D. Cal. June 15, 2018) and stated that *City of Oakland* "recognized, as we have, that '[w]hile the fact of aggregative injury itself does not obviate proximate cause analysis,' the proffer of 'a specific statistical analysis in regard to [the City's] property tax injury'

Eleventh Circuit concluded that these allegations were sufficient to allege proximate cause because "Miami has alleged *a substantial injury to its tax base* that is not just reasonably foreseeable, but is also necessarily and *directly connected* to the Banks' conduct in redlining and reverse-redlining throughout much of the City." *Id*. at *4–5 (emphasis added). The County made similar allegations in its SAC. *See* SAC ¶¶ 410–11.

Finally, while the Eleventh Circuit found that Miami's mere generalized allegations of damages for providing additional governmental services "fail[ed] to explain how [the court] can ascertain with any level of detail or precision which expenditures will be attributable to the Banks," *Miami*, 2019 U.S. App. LEXIS 13343 at *59–60, **the Eleventh Circuit favorably cited to the County's SAC and this Court's Order**, as well as the County's complaints against Bank of America and HSBC and their motion to dismiss orders, **as examples of how such damages can be properly alleged**. *Id* at *61, n.11. However, the Eleventh Circuit implicitly suggested its disagreement with the three decisions in this Court to preclude Cook County's property value and tax related damages in its complaints against Wells Fargo, Bank of America and HSBC by pointing out that "all three [Illinois] courts [] found that Cook County had failed to adequately plead proximate cause for the kinds of tax-revenue and municipal expenditure injuries that Miami pleads here," *id*, which the Eleventh Circuit in fact sustained in its ruling in *Miami*.

---

adequately supports the idea that there was 'an alleged provable and quantifiable causal link between the defendant's conduct and plaintiff's injury' notwithstanding the suggested length of the causal chain." *Miami*, 2019 U.S. App. LEXIS 13343 at *58–59 (quoting *City of Oakland*, 2018 U.S. Dist. LEXIS 100915, at *8); *see also id*. at *59 (stating that "[a] district court in Philadelphia found that city had 'adequately [pled] proximate cause for . . . non-economic injuries' stemming from FHA violations in part by relying on 'a regression analysis of [bank] loan data' that had demonstrated Latino and African-American borrowers were 2.641 and 4.147 times more likely to go into foreclosure than similarly situated white borrowers." (quoting *City of Phila. v. Wells Fargo & Co.*, No. 17 Civ. 2203 (ABB), 2018 U.S. Dist. LEXIS 6443, at 13, 14 (E.D. Pa. Jan. 16, 2018)).

Importantly, as shown below, the County made even stronger allegations than Miami by alleging that it could use "foreclosure property addresses, and Defendants' loan application registry, loan servicing and loan default and foreclosure information," "[r]outinely maintained property tax and other financial data," "mortgage lien and foreclosure data, and well-established statistical regression techniques," to identify its actual out-of-pocket and property value and tax related damages on specific foreclosed properties at issue, as well as property value and tax related damages occurring at properties surrounding the subject foreclosed properties. SAC at ¶¶ 405, 410–11.

> **C. In short, and as further set forth below, the analysis and reasoning in *Miami* on proximate cause weighs heavily in favor of this Court reconsidering those aspects of its Order limiting the County's alleged damages that it is permitted to try to prove. The SAC and the Court's Order Denying the County's Damages for Lost Property Tax Revenue and Increased Services**

In the SAC, the County alleged that Defendants' discriminatory conduct directly caused a reduction in the County's property tax digest and an increased demand at the vacant or foreclosed properties for the County's services. SAC ¶¶ 11, 23, 395, 400, 402, 408–09. The Court found these allegations of harm did not sufficiently allege proximate cause because they "are precisely the 'ripples' that *City of Miami* cautions 'flow far beyond the defendant's misconduct[,] . . . risk[ing] massive and complex damages litigation,' and involving too many 'intricate, uncertain inquiries' to establish proximate cause." *Cnty. of Cook*, 314 F. Supp. 3d at 988 (quoting *Bank of Am. Corp.*, 137 S. Ct. at 1306; *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 460 (2006)). With respect to the County's property tax damages the Court found these damages were too speculative because it would "require estimating at least" how long the borrower would have remained in the home absent Wells Fargo's discriminatory conduct and counterfactually valuing the property for every tax year a "borrower subject to equity stripping lived in and maintained the property." *Id*. at 988–89. The Court found that the County's property tax damages on properties surrounding those

11

foreclosed are "even further removed from Wells Fargo's conduct and so plainly not within proximate cause." *Id*. at 989. Finally, the Court found that the County could not establish, with the "necessary rigor," its damages for increased county services because there were too many intervening factors. *Id*.

The County respectfully requests the Court reconsider these conclusions in light of the Eleventh Circuit's decision that provides full support for this Court to allow these damages ***resulting directly from vacancy or foreclosure***, as intended by the broad remedial purpose of the FHA.[11] The County's damages with respect to its lost property tax digest "directly injure[] a municipality by diminishing its tax base" and the Supreme Court "has not traditionally considered this type of injury to be overly attenuated or nebulous." *Miami* at *43 (emphasis in original) (quoting *Gladstone, Realtors v. Bellwood*, 441 U.S. 91, 110 (1979)). Because the County's claims are aggregative in nature, there is no concern of a discontinuity between Wells Fargo's unlawful behavior and the County's injury. *Id*. at *57. When the County's alleged violations and resultant injuries are considered "in the aggregate – that is, at the scale that the complaints present them – it becomes clearer that injuries to the [County's] treasury are necessary, direct, and immediate results of these kinds of FHA violations." *Id*. at *84.

Most importantly, the County alleged how it would attribute its tax digest loss to Wells Fargo's unlawful behavior: by using "[r]outinely maintained property tax and other financial data," "mortgage lien and foreclosure data, and well-established statistical regression techniques .

---

[11] Courts have substantial discretion to effectuate the FHA's broad and remedial purpose. The FHA provides that "if the court finds that a discriminatory housing practice ***has occurred or is about to occur*** . . . , the court . . . ***may grant as relief, as the court deems appropriate***, any permanent or temporary injunction, . . . or ***other order*** (including an order enjoining the defendant from engaging in such practice ***or ordering such affirmative action as may be appropriate***)." 42 U.S.C. §3613(c)(1) (emphasis added).

. . ." SAC ¶¶ 410–11;[12] *see also id.* at ¶¶ 34, 285, 293–357 (alleging that statistical data will demonstrate the County's tax-revenue injury).[13] In concluding that the County's damages for increased out-of-pocket expenditures were adequately alleged, the Court recognized that the County could use "[s]tatistical analysis" to establish the likelihood a loan would result in foreclosure. *Cnty. of Cook*, 314 F. Supp. 3d at 987. In light of the allegations in the SAC, the County can likewise use regression analysis to isolate its property tax digest damages to Wells Fargo.

The County also should be allowed to pursue its damages for increased services for the same reasons. The SAC alleges that the County can "isolate" the damages attributable to the increased services it had to provide to individual properties by using "foreclosure property addresses, and Defendants' loan application registry, loan servicing and loan default and foreclosure information . . . ." SAC ¶ 405.[14] The County will utilize this information to pinpoint the damages attributable to Wells Fargo. The County can do this because Wells Fargo's loan amount and servicing data precisely track the date of when the property becomes vacant or is foreclosed because of the loan default. The Eleventh Circuit concluded these types of damages were within the ambit of the FHA, but only disallowed them because Miami did not sufficiently allege how it could attribute those damages to Wells Fargo. Because the County has done so, it

---

[12] The County also cited a study from the Woodstock Institute that applied regression analysis to determine the effect of foreclosures on surrounding property values and damages. *See id.* at ¶ 386.

[13] If the Court finds that the County's allegations are not sufficientlty specific, the County requests leave to amend. *Bausch v. Stryker Corp.*, 630 F.3d 546, 562 (7th Cir. 2010) (stating that "a court should 'freely give leave [for a party to file an amended complaint] when justice so requires'" and that "denials are disfavored") (citing Fed. R. Civ. P. 15(a)(2)).

[14] That information can be matched to the specific property address and date of additional services provided by the County at additional cost. *See, e.g.*, SAC ¶ 423 (stating that the County's out-of-pocket costs for providing increased county services "can be established from Plaintiff's records once the locations of the homes upon which such loans were made can be identified from discovery of Defendants").

will be able to show, "with the necessary rigor," what amount of the increased services it provided that is attributable to Wells Fargo's unlawful conduct.[15]

### D. Conclusion

The Eleventh Circuit's analysis in *Miami* reflects that this Court took too narrow a view relying on Wells Fargo's proximate cause arguments to limit the County's damages to just the costs of processing foreclosures. *See Cnty. of Cook*, 314 F. Supp. 3d at 983–84, 988–90. As such the County urges this Court to reconsider its decision limiting its damages – at the pleading stage – to just the costs of foreclosures. Based on the foregoing, the County requests the Court grant its motion and allow the County to pursue damages for lost property tax digest and other increased municipal services to the extent those costs can be shown to emanate from Wells Fargo's discriminatory housing schemes alleged in the SAC.

Dated: June 4, 2019                                  Respectfully Submitted,

By: /s/ James M. Evangelista

**KIMBERLY M. FOXX,
STATE'S ATTORNEY FOR COOK
COUNTY**

James M. Evangelista
*jim@ewlawllc.com*
David J. Worley
*david@ewlawllc.com*
Kristi Stahnke McGregor
*kristi@ewlawllc.com*
Evangelista Worley, LLC
8100A Roswell Road
Suite 100
Atlanta, GA 30350
(404) 205-8400

---

[15] There is very little reason to believe that allowing the County to recover these additional damages would open the floodgates of litigation. As the Eleventh Circuit stated, less-directly injured plaintiffs would struggle with calculating damages with a reasonable degree of certainty and "suits by grocers, neighbors, or power companies" will be disjoined and far less likely to achieve deterrence. *Miami*, 2019 U.S. App. LEXIS 13343, at *72, 75.

14


will be able to show, "with the necessary rigor," what amount of the increased services it provided that is attributable to Wells Fargo's unlawful conduct.[15]

### D. Conclusion

The Eleventh Circuit's analysis in *Miami* reflects that this Court took too narrow a view relying on Wells Fargo's proximate cause arguments to limit the County's damages to just the costs of processing foreclosures. *See Cnty. of Cook*, 314 F. Supp. 3d at 983–84, 988–90. As such the County urges this Court to reconsider its decision limiting its damages – at the pleading stage – to just the costs of foreclosures. Based on the foregoing, the County requests the Court grant its motion and allow the County to pursue damages for lost property tax digest and other increased municipal services to the extent those costs can be shown to emanate from Wells Fargo's discriminatory housing schemes alleged in the SAC.

Dated: June 4, 2019                                  Respectfully Submitted,

By: /s/ James M. Evangelista

**KIMBERLY M. FOXX,
STATE'S ATTORNEY FOR COOK
COUNTY**

James M. Evangelista
*jim@ewlawllc.com*
David J. Worley
*david@ewlawllc.com*
Kristi Stahnke McGregor
*kristi@ewlawllc.com*
Evangelista Worley, LLC
8100A Roswell Road
Suite 100
Atlanta, GA 30350
(404) 205-8400

---

[15] There is very little reason to believe that allowing the County to recover these additional damages would open the floodgates of litigation. As the Eleventh Circuit stated, less-directly injured plaintiffs would struggle with calculating damages with a reasonable degree of certainty and "suits by grocers, neighbors, or power companies" will be disjoined and far less likely to achieve deterrence. *Miami*, 2019 U.S. App. LEXIS 13343, at *72, 75.

*Special Assistant State's Attorneys*

Sanford P. Dumain
*sdumain@milberg.com*
Peggy J. Wedgworth
*pwedgworth@milberg.com*
Melissa Ryan Clark
*mclark@milberg.com*
Jennifer Sara Czeisler
*jczeisler@milberg.com*
J. Birt Reynolds
*breynolds@milberg.com*
Milberg Tadler Phillips Grossman LLP
One Pennsylvania Plaza, Suite 1920
New York, NY 10119
(212) 594-5300

*Additional Counsel*

## CERTIFICATE OF SERVICE

I hereby certify that on this day I served the above and foregoing PLAINTIFF'S MOTION FOR RECONSIDERATION on all parties by causing a true and correct copy to be filed with the court's electronic filing system, which should automatically send a copy to all counsel of record.

Dated:  June 4, 2019 /s/ James M. Evangelista
James M. Evangelista