UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| COUNTY OF COOK, ILLINIOIS, | ) | |
| | ) | |
| Plaintiff, | ) | 14 C 9548 |
| | ) | |
| vs. | ) | Judge Gary Feinerman |
| | ) | |
| WELLS FARGO & CO., WELLS FARGO FINANCIAL, INC., WELLS FARGO BANK, N.A., and WELLS FARGO "JOHN DOE" CORPS. 1-375, | ) ) ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

The background of this Fair Housing Act ("FHA") case brought by Cook County against Wells Fargo is set forth in the court's opinion on Wells Fargo's motion to dismiss. Doc. 143 (reported at 314 F. Supp. 3d 975 (N.D. Ill. 2018)). Before the court are two motions to compel. Because resolution of the motions turns on legal questions that may have broader application to the case, the court sets forth its rationale in a written opinion.

### A. Wells Fargo's Motion to Compel Production of 16 Solicitation and Pre-Retention Communications

Cook County withheld on attorney-client privilege and work product grounds sixteen pieces of correspondence that its litigation counsel exchanged with Cook County officials from June 2012 through June 2013. Doc. 263-1. Wells Fargo moves to compel Cook County to produce those documents, arguing that they are neither privileged nor work product. Doc. 263. Cook County responds that the documents are privileged and work product, that it did not waive those protections, and that the documents are not relevant in any event. Doc. 269.

As to relevance, Wells Fargo argues as follows: a two-year statute of limitations governs FHA claims; the limitations period commences when the plaintiff knew or should have known of

1

its claim, such that this suit "would be timely only if the County knew (or should have known) of its claims no earlier than November 28, 2012," or two years before suit was filed; and the withheld correspondence could shed light on whether Cook County in fact knew or should have known of its claims before that date. Doc. 263 at 2; *see also* Doc. 278 at 2. The argument rests on a faulty view—one that the court itself mistakenly embraced in its prior opinion, 314 F. Supp. 3d at 996—of the FHA's statute of limitations. The provision states that an FHA claim must be filed "not later than 2 years after the occurrence *or the termination* of an alleged discriminatory housing practice … whichever occurs last." 42 U.S.C. § 3613(a)(1)(A) (emphasis added). The original complaint alleged that Wells Fargo's unlawful conduct continued through the date suit was filed. *E.g.*, Doc. 1 at ¶ 96. Accepting that allegation as true, as the court must at this stage, Cook County filed this suit not later than two years after the termination (if any) of Wells Fargo's alleged discriminatory housing practice. Because it would be improper to read into the limitations provision a notice restriction that does not appear in its text, *see Rotkiske v. Klemm*, 140 S. Ct. 355, 360-61 (2019), the suit is timely regardless of when Cook County knew or should have known of its claims. *Cf. Bishop v. ALPA, Int'l*, 331 F.R.D. 481, 485 (N.D. Ill. 2019) (explaining that a plaintiff need not rely on a non-textual tolling principle to extend the limitations period where she files suit within the limitations period set by statute).

Wells Fargo alternatively argues that even if this suit were timely filed, Cook County's damages are limited to those that accrued after November 28, 2012. Doc. 278 at 6-7; *see also* Docs. 289, 295. In support, Wells Fargo contends that the continuing violation doctrine does not allow a plaintiff to recover damages from outside the limitations period (here, before November 28, 2012) if the plaintiff learned of the defendant's allegedly unlawful conduct before that period commenced. Doc. 278 at 6-7. That argument fails. As the Seventh Circuit explained in one of

the cases cited by Wells Fargo: "The continuing violation doctrine allows a plaintiff to get relief for time-barred acts by linking them to acts within the limitations period." *Shanoff v. Ill. Dep't of Human Servs.*, 258 F.3d 696, 703 (7th Cir. 2001). There are no "time-barred acts" here, at least as can be determined at this stage of the case, because the statute of limitations did not begin to run until "the termination of an allegedly discriminatory housing practice" and the complaint alleged that Wells Fargo's discriminatory housing practices did not terminate before the suit was filed.

Although the analysis could stop there, it bears mention that Wells Fargo's position on the continuing violation doctrine cannot be reconciled with *Tyus v. Urban Search Management*, 102 F.3d 256 (7th Cir. 1996). The plaintiff fair housing organizations in *Tyus* brought an FHA suit on April 9, 1992, alleging that the defendants engaged in discriminatory housing practices that the plaintiffs had monitored since as early as 1989. *Id*. at 260. At trial, the court instructed the jury that it could award damages to the plaintiffs only for "the defendants' conduct occurring after April 9, 1990," or two years before suit was filed. *Id*. at 265. The Seventh Circuit held that this time restriction was error, explaining:

> The Fair Housing Act requires that a suit be filed within two years 'after the occurrence or termination of an alleged discriminatory housing practice.' No one argues that the plaintiffs' suit was late here. Instead, the problem is that the district court limited *damages* to those experienced by plaintiffs between April 1990 and April 1992, apparently believing that the two-year period also created a cut-off point for damages. In a suit claiming that the defendant engaged in a continuous course of conduct that causes damages, however, a plaintiff can recover for damages that preceded the limitations period if they stem from a persistent process of illegal discrimination.

*Ibid*. (citation omitted). If Wells Fargo's continuing violation argument were correct, then the Seventh Circuit would have affirmed the instruction limiting the *Tyus* plaintiffs' damages to the two-year limitations period (April 1990 through April 1992) on the ground that they learned of the defendants' alleged discriminatory practices in 1989, before that two-year period

3

commenced. By rejecting the instruction, the Seventh Circuit necessarily rejected Wells Fargo's understanding of the continuing violation doctrine's application in an FHA case.

Because the documents sought by Wells Fargo are irrelevant to application of the statute of limitations or the continuing violation doctrine, and because Wells Fargo offers no other ground on which the documents are relevant, its motion to compel is denied. *See* Fed. R. Civ. P. 26(b)(1). This disposition makes it unnecessary to determine whether the documents are protected by the attorney-client privilege or work product doctrine and, if so, whether Cook County waived those protections.

> B. **Wells Fargo's Motion to Compel Cook County Entities to Produce Documents Relating to the Financial Impact of Administering and Processing Foreclosures**

Wells Fargo moves to compel Cook County to produce information and documents regarding the revenues it collected—*e.g.*, fees for recording foreclosure-related documents such as *lis pendens*, serving summonses in foreclosure cases, and conducting judicial sales of foreclosed properties—in connection with Wells Fargo-related foreclosures. Docs. 271, 274, 275. Cook County objects on relevance grounds, arguing that those revenues have no bearing on the calculation of its compensatory damages. Doc. 291, 306, 308. In other words, Cook County argues that its compensatory damages should be determined solely by examining the amounts it *expended* to administer the foreclosure process and should not take account of the revenues it *earned* from administering that process.

Cook County's argument misunderstands the nature of the only damages it is entitled to seek in this case—those arising from its administration and processing of Wells Fargo foreclosures. 314 F. Supp. 3d at 984. An FHA damages action "is, in effect, a tort action." *Meyer v. Holley*, 537 U.S. 280, 285 (2003). Given this, "general tort principles govern the award and calculation of damages in FHA cases," and under those principles, "compensatory damages

4

are designed to place the plaintiff in a position substantially equivalent to the one that he would have enjoyed had no tort been committed." *Anderson Grp., LLC v. City of Saratoga Springs*, 805 F.3d 34, 52 (2d Cir. 2015). To determine the position Cook County would have enjoyed had Wells Fargo not (allegedly) violated the FHA, it is necessary to consider not only the money Cook County expended to operate the foreclosure system for Wells Fargo foreclosures, but also the money it earned in fees as a result of those foreclosures. *See* Restatement (Second) of Torts § 906 cmt. a (Am. Law Inst. 1979) ("In determining the measure of recovery, … a balance sheet is in effect set up by the court in which are stated the items of assets and liabilities that have affected by the tort, (a) before the tort, and (b) as they appear at the time of trial.").

Cook County's contrary arguments are without merit. The fact that Cook County is obligated by law to collect foreclosure-related fees, Doc. 291 at 5-6, is irrelevant because revenue is revenue, regardless of whether the recipient is legally required to accept it. The fact that Cook County may have been a bad actor in violating the FHA, *id*. at 7-8; Doc. 306 at 9, is irrelevant for present purposes because the compensatory damages inquiry focuses on the financial consequences to the plaintiff of the defendant's bad acts. *See Rogers v. Loether*, 467 F.2d 1110, 1122 (7th Cir. 1972) ("The payment of compensatory damages in a housing discrimination case … is … a payment in money for those losses … which plaintiff has suffered by reason of a breach of duty by defendant."), *aff'd sub nom. Curtis v. Loether*, 415 U.S. 189 (1974). The fact that Wells Fargo sought reimbursement from its borrowers for the fees it paid to Cook County, Doc. 291 at 7-8; Doc. 306 at 4-5, is irrelevant because, again, the compensatory damages inquiry focuses on the plaintiff's ledger, not the defendant's. Cook County's efforts to characterize the consideration of its foreclosure-related revenues as a "set-off" or as coming from a collateral source, Doc. 291 at 8-9; Doc. 306 at 2-7; Doc. 308 at 7-9, are groundless because

those revenues do not arise from a separate or collateral transaction, but instead are inextricably intertwined with the allegedly wrongful foreclosure practices at the heart of its FHA claims against Wells Fargo. *See Clanton v. United States*, 943 F.3d 319, 326 (7th Cir. 2019) ("The collateral-source doctrine allows a tort victim whose out-of-pocket costs are compensated—for example, by insurance or a benefits program—to still recover his full losses from the tortfeasor if the compensation comes 'from a source wholly independent of, and collateral to, the tortfeasor.'") (quoting *Wills v. Foster*, 892 N.E.2d 1018, 1022 (Ill. 2005)); Restatement (Second) of Torts § 920 cmt. a ("A tortiously digs a channel through B's land, thereby making it impossible to grow crops upon the land through which the channel runs. It may be shown in mitigation that the digging of the channel drains the remainder of B's land, making it more valuable."). Cook County's submission that it is not seeking to recover the costs directly associated with the fees it collected—for example, the costs for services provided by the Recorder of Deeds Office in connection with foreclosure filings, or costs incurred by the Sheriff's Office in serving foreclosure summonses or conducting judicial sales, Doc. 291 at 10-12—is meritless because Cook County's damages turn on the impact of Wells Fargo's violations on its overall bottom line, not on particular line items on its ledger.

All that said, Wells Fargo has no valid answer to Cook County's contention, *id*. at 12-14, that it should not have to produce borrower-specific information and data already in Wells Fargo's possession as the payor of the fees Cook County collected. Accordingly, the parties should meet and confer to determine which borrower-specific revenue information and data is in Wells Fargo's possession and which is not. Cook County must produce only the information and data not in Wells Fargo's possession—though if it chooses not to produce from its own files the information and data that Wells Fargo already possesses, it runs the risk of being unable to rebut

6

or question Wells Fargo's presentation of that information and data at summary judgment or trial. Cook County must, of course, produce any global (or semi-global) analyses of the financial impact of foreclosures on its bottom line.

February 6, 2020

_____
United States District Judge