UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| COUNTY OF COOK, | ) | |
| | ) | |
| Plaintiff, | ) | 14 C 9548 |
| | ) | |
| vs. | ) | Judge Gary Feinerman |
| | ) | |
| WELLS FARGO & CO., WELLS FARGO | ) | |
| FINANCIAL, INC., WELLS FARGO BANK, N.A., | ) | |
| WELLS FARGO CORPS., and JOHN DOES 1-375, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Cook County brings this Fair Housing Act suit against Wells Fargo & Co., Wells Fargo Financial, Inc., and Wells Fargo Bank, N.A. (collectively, "Wells Fargo"), alleging that Wells Fargo engaged in discriminatory lending practices against minority borrowers. Doc. 106; 314 F. Supp. 3d 975 (N.D. Ill. 2018) (describing the claims that survived Wells Fargo's Rule 12(b)(6) motion). The County moves to compel production of consulting agreements between Wells Fargo and two former County employees. Doc. 465. The parties also report several unresolved discovery disputes, many of which are ripe for the court's resolution. Docs. 463, 469, 474.

**Cook County's Motion to Compel (Doc. 465).** The County has learned that Wells Fargo engaged two former County employees—Thomas Glaser, the County's former CFO, and John Chambers, its former Comptroller, both of whom worked for the County during times relevant to this suit—as consulting experts. Doc. 465 at 1-2, 4. Shortly after learning of this arrangement, the County identified Glaser and Chambers as fact witnesses. *Id*. at 5; Doc. 470 at 1-2; Doc. 472 at 2-4. The County also served a request for production seeking Wells Fargo's "consulting agreements" with those individuals. Doc. 465-2 at 15. Wells Fargo objected to the

1

request, *id*. at 15-17, prompting the County to move to compel the production of the consulting agreements, Doc. 465. In support, the County argues that "[b]ecause Wells Fargo is asserting work product protection to communications with these high-level former County officials, Defendants must establish that the former County officials are consultants and not merely fact witnesses," and, accordingly, "Defendants must produce the consulting agreements evidencing such relationship and the scope and nature of these witnesses' retention as consultants." *Id*. at 5.

Wells Fargo's objection rests on Civil Rule 26(b)(4)(D), which states, in pertinent part: "Ordinarily, a party may not, by interrogatories or deposition, discover facts known or opinions held by an expert who has been retained or specially employed by another party in anticipation of litigation or to prepare for trial and who is not expected to be called as a witness at trial." Fed. R. Civ. P. 26(b)(4)(D). The objection is overruled for two independent reasons. First, Rule 26(b)(4)(D) by its express terms applies to discovery sought by "interrogatories or deposition," and thus does not apply where, as here, a party seeks discovery via a request for production. If the Rule's drafters wanted it to govern requests for production as well as interrogatories and depositions, they very easily could have done so; it is not as if the drafters were somehow unfamiliar with the fact that a Rule 34 request for production is a discovery device different from a Rule 30 deposition or a Rule 33 interrogatory. *See Barnhart v. Peabody Coal Co.*, 537 U.S. 149, 168 (2003) (explaining that the *expressio unius est exclusio alterius* canon "has force only when the items expressed are members of an associated group or series, justifying the inference that items not mentioned were excluded by deliberate choice, not inadvertence") (internal quotation marks omitted). Second, the County does not seek to discover "facts known or opinions held by" the two consulting experts, Fed. R. Civ. P. 26(b)(4)(D); rather, it seeks only to discover their consulting agreements with Wells Fargo.

2

In pressing the contrary result, Wells Fargo relies on an advisory committee note stating that a party must make a "proper showing" before it can require the opposing party to "name" its retained consulting experts. Fed. R. Civ. P. 26 advisory committee's notes to 1970 amendment; *see* Doc. 470 at 2-3. The note has no application here because the County is not asking Wells Fargo to name its consulting experts, as their names are already known.

Accordingly, the motion to compel is granted.

**Additional Disputes (Docs. 463, 469).** Based on the parties' two most recent two status reports, Docs. 463, 469, several additional discovery disputes are ripe for resolution.

1. The first dispute concerns the scope of discovery during the extended fact discovery period previously ordered by the court. Doc. 463 at 2-4 (Issue II.A). The County would like the option of pursuing several forms of "follow-up" discovery for recently produced materials, *ibid.*, while Wells Fargo argues that this would be "inappropriate" given the length of the fact discovery process in this case, *id*. at 4. The court sides with the County, as it cannot at this point impose a categorical rule that follow-up discovery is prohibited in all instances. Of course, any follow-up discovery must be reasonable, and the parties are free to bring unresolved boundary disputes to the court.

2. The next dispute concerns a County request for production asking Wells Fargo to "[p]roduce documents relating to [its] policies and procedures for determining which 1-4 family residential mortgage loan and/or home equity loans [it] would sell and/or securitize." *Id*. at 4-10 (Issue II.B.1). The County reads the production request broadly, arguing that in addition to covering documents *articulating* such policies and procedures, it also encompasses documents that "discuss, relate [to], or involve" them. *Id*. at 5. The request is not so broad. Yet even under the narrow reading, Wells Fargo claims that it has nothing to produce "because Wells Fargo's

3

business practice was to sell virtually all of the residential mortgage loans it originated, and to retain virtually all of the home equity lines of credit that it originated." *Id*. at 7. Wells Fargo further explains that for some types of loans, "no secondary market demand existed" and thus the loans could not be sold. *Id*. at 9. In light of this explanation, Wells Fargo should produce documents that articulate or acknowledge these practices, but need not produce all documents that are tangentially related to those practices.

      3. Next, the County seeks discovery on communications and joint defense agreements between Wells Fargo and Bank of America, the defendant in a materially identical suit brought by the County. Doc. 463 at 12-19 (Issue II.B.4); *see Cnty. of Cook v. Bank of Am. Corp.*, No. 14 C 2280 (N.D. Ill.) (Bucklo, J.). The central question in dispute is the applicability of the "common interest" rule, which extends the attorney-client privilege to "communications passing from one party to the attorney for another party where a joint defense effort or strategy has been decided upon and undertaken by the parties and their respective counsel." *United States v. Evans*, 113 F.3d 1457, 1467 (7th Cir. 1997) (quoting *United States v. Schwimmer*, 892 F.2d 237, 243 (2d Cir. 1989)). It is likely that the common-interest rule applies here, given the similarity of the two suits and the fact that the County itself sought (unsuccessfully) to consolidate discovery across both cases. Docs. 239, 255. But the joint defense agreement (if there is one) would shed helpful light on the question, and Wells Fargo does not claim that it is protected. Accordingly, if Wells Fargo has such an agreement with Bank of America, Wells Fargo should produce it. If the County continues to believe that the common interest rule does not apply, it may bring the matter to the court.

      4. The parties disagree on who must fish through boxes in the County's records warehouse for six documents—the budget requests from the County's Court Services

4

Department to the Sheriff's Office for the years 2003 to 2008. Doc. 463 at 20-24 (Issue II.C.1). As the producing party, that burden falls on the County.

     5. The court previously ordered the County to produce detailed information underlying its calculation of damages—*i.e.*, costs incurred by the County due to the increased number of foreclosures. Doc. 460 at 8. Wells Fargo reports that there is still one category of documents unproduced: "the documents underlying [the County's] cost spreadsheets for the Court Offices." *Id*. at 25-27 (Issue II.C.2). The County has agreed to produce documents that reflect the Office of the Chief Judge's and the Circuit Court Clerk's increased costs due to increasing foreclosures. *Id*. at 26-27. If Wells Fargo believes the documents produced are insufficient, it should address the matter with the County and, if the matter remains unresolved, seek the court's assistance.

     6. Finally, Wells Fargo takes issue with the County's refusal to produce its counsel's communications with Alexis Herrera, the former CFO of the Cook County Sheriff's Office. *Id*. at 27-32 (Issue II.C.3). The County asserts that communications with Herrera, its former employee, are protected from disclosure by the attorney-client privilege. *See Upjohn Co. v. United States*, 449 U.S. 383, 389-97 (1981) (expanding the scope of the attorney-client privilege in federal question cases to cover certain communications between counsel and employees relating to matters within the scope of employment). Wells Fargo argues that the privilege does not apply because it was first to communicate with Herrera as part of this litigation. Doc. 463 at 28-29. The court agrees with the County that this point is irrelevant to the *Upjohn* inquiry. *Id*. at 30-32. The County's counsel's litigation-related communications with Herrera, a former employee, about matters to which she was a percipient witness while a County employee are protected by the privilege. *See Sandra T.E. v. S. Berwyn Sch. Dist. 100*, 600 F.3d 612, 621 n.4 (7th Cir. 2010) ("[E]very circuit to address th[e] question has concluded that the distinction

5

between present and former employees is irrelevant for purposes of the attorney-client privilege.").

March 3, 2021

_____
United States District Judge