UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| COUNTY OF COOK, | ) | |
| | ) | |
| Plaintiff, | ) | 14 C 9548 |
| | ) | |
| vs. | ) | Judge Gary Feinerman |
| | ) | |
| WELLS FARGO & CO., WELLS FARGO | ) | |
| FINANCIAL, INC., WELLS FARGO BANK, N.A., | ) | |
| WELLS FARGO CORPS., and John Doe 1-375, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

The background of this Fair Housing Act ("FHA") suit is set forth in the court's opinion on Wells Fargo's Rule 12(b)(6) motion to dismiss. 314 F. Supp. 3d 975 (N.D. Ill. 2018). With the parties nearing the end of discovery, Wells Fargo moves to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction, arguing that Cook County has failed to adduce evidence demonstrating an injury that could support Article III standing. Doc. 498. The motion is denied.

"The 'irreducible constitutional minimum of standing' requires the plaintiff or party invoking federal jurisdiction to demonstrate that he has suffered an injury in fact that is fairly traceable to the defendant's conduct and redressable by a favorable judicial decision." *Pennell v. Glob. Tr. Mgmt., LLC*, 990 F.3d 1041, 1044 (7th Cir. 2021) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992)). The question of standing "remains open to review at all stages of the litigation." *Ibid.* (quoting *Nat'l Org. for Women, Inc. v. Scheidler*, 510 U.S. 249, 255 (1994)); *see also* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."). "Standing must 'be supported in the same way as any other matter on which the plaintiff bears the burden of proof.'" *Six Star*

*Holdings, LLC v. City of Milwaukee*, 821 F.3d 795, 801 (7th Cir. 2016) (quoting *Lujan*, 504 U.S. at 561). So while "[a]t the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice," by the time a case reaches summary judgment, "the plaintiff can no longer rest on such mere allegations, but must set forth by affidavit or other evidence specific facts." *Lujan*, 504 U.S. at 561 (internal quotation marks omitted).

The crux of Wells Fargo's motion is that the evidence produced in discovery thus far demonstrates that the additional Wells Fargo-related foreclosures occurring in Cook County during the relevant time period—foreclosures that, the County claims, were proximately caused by Wells Fargo's allegedly discriminatory lending practices—actually redounded to the County's financial benefit. Doc. 498. In other words, Wells Fargo submits that the cause of the County's alleged financial injury—the judicial proceedings and other activities associated with the additional foreclosures—in fact yielded a net benefit to the County, which earned a profit off of the foreclosure boom. *Id*. at 7-13, 27-29. And thus, in Wells Fargo's view, the County suffered no injury, which means that it has no standing, which in turn means that this case must be dismissed for lack of subject matter jurisdiction. *Id*. at 1-2, 5-6, 30.

In so arguing, Wells Fargo does not dispute that the County has properly alleged in its complaint a financial injury sufficient, at least at the pleading stage, to support standing. *E.g.*, Doc. 106 at ¶ 404 ("[T]he Cook County Sheriff incurs significant costs in serving eviction and foreclosure notices and in evicting homeowners, which are directly tied to the foreclosed property itself. Plaintiff's police department has had to send personnel and equipment to such vacant properties to respond to public health and safety threats that arise at these properties because the properties are vacant. Plaintiff's judicial system and clerk's office has been overloaded with foreclosure filings and proceedings—also directly related to each foreclosed

property—and Plaintiff has had to provide supplemental funding to its judiciary."). Rather, Wells Fargo's argument regarding the net financial effect of the additional foreclosures on the County's bottom line is based on evidence produced during discovery.

As noted, a plaintiff's burden to demonstrate standing is higher at the summary judgment stage than at the pleading stage. *See Lujan*, 504 U.S. at 561; *Six Star Holdings*, 821 F.3d at 801-02. But fact discovery had not concluded when Wells Fargo filed this motion, and expert discovery had not even begun. This is significant because, as the County has noted time and again, it intends to present its damages case through its experts. *E.g.*, Doc. 421 at 7-9; Doc. 515 at 7-9. Wells Fargo does not provide any authority suggesting that the requirement to demonstrate standing with evidence applies *before* the close of discovery, while evidence is still being collected and produced. Nor does Wells Fargo argue that its motion is one for summary judgment based on lack of standing, as it does not invoke Civil Rule 56 or comply with Local Rule 56.1.

But it is unnecessary to dwell on this problem. Indeed, the court will assume that the County at this point bears the burden of adducing evidence sufficient to show its Article III injury. Wells Fargo's motion still fails, because it fundamentally misconceives the distinction between the *injury* that must exist for the court to have subject matter jurisdiction and *damages* that (usually) must exist for a plaintiff to prove its case on the merits.

There is a difference between Article III injury and damages. The existence of one does not necessarily imply the other. *See Ariz. State Legislature v. Ariz. Indep. Redistricting Comm'n*, 576 U.S. 787, 800 (2015) (noting the distinction between a claim's "weakness on the merits" and the "absence of Article III standing") (internal quotation marks omitted); *Davis v. United States*, 564 U.S. 229, 249 n.10 (2011) (same); *ASARCO Inc. v. Kadish*, 490 U.S. 605, 624 (1989)

(same); *Warth v. Seldin*, 422 U.S. 490, 500 (1975) (same); *Debernardis v. IQ Formulations, LLC*, 942 F.3d 1076, 1090 (11th Cir. 2019) (Sutton, J., concurring) ("[I]t's … a good idea to keep in mind the easy-to-miss distinctions between (1) injury in fact (a constitutional imperative), (2) statutory injury (an element of the plaintiff's cause of action), and (3) damages (a remedies calculation). Nothing guarantees that the Article III injury that gets [plaintiffs] in the courthouse door is compensable under their legal theory … .").

Consider, for instance, an employee who has a three-year employment contract under which she is to be paid $50,000 per year. She is fired—in violation of the contract, she alleges—after one year, with two years and $100,000 remaining on her deal. Then, six months after being fired, she finds a new job that pays $100,000 per year. Assuming diversity of citizenship, can the employee sue in federal court for breach of contract? She surely has standing to do so: she has suffered an Article III injury by being deprived of the $100,000 owed by her former employer, a quintessential economic injury. *See Danvers Motor Co. v. Ford Motor Co.*, 432 F.3d 286, 291 (3d Cir. 2005) (Alito, J.) (noting that "economic injury is one of [the] paradigmatic forms" of Article III injury). Yet the employee may not be able to demonstrate economic damages, since by mitigating and finding new employment, she ended up financially ahead—she earned $150,000 from the new employer over the two-year period during which the former employer would have paid her only $100,000. So, assuming no noneconomic damages, her claim will likely fail on the merits, as she has suffered injury but has no damages. *See Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 560 (7th Cir. 2012) ("The required elements of a breach of contract claim in Illinois are the standard ones of common law: (1) offer and acceptance, (2) consideration, (3) definite and certain terms, (4) performance by the plaintiff of all required conditions, (5) breach, and (6) damages.") (internal quotation marks omitted). The

opposite—damages without injury—can occur as well, as in *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016), where the plaintiff was entitled to statutory damages under the Fair Credit Reporting Act, but lacked Article III standing because the defendant's conduct did not cause him any concrete harm. *See id*. at 1545, 1547-50.

In many cases, a plaintiff will allege that the defendant's conduct caused her to lose some amount of money—say, $$X$. But depending on the cause of action, the damages calculation might require, as a *merits* matter, offsetting those losses by any gains to the plaintiff—say, $$Y$—that are also traceable to the defendant's conduct. *See*, *e.g.*, *Cowen v. Bank United of Tex., FSB*, 70 F.3d 937, 941 (7th Cir. 1995) (discussing the possibility that statutory damages might be offset to account for the financial benefit to the plaintiff from the defendant's misconduct); *Stanley Gudyka Sales Co. v. Lacy Forest Prods. Co.*, 915 F.2d 273, 278-79 (7th Cir. 1990) (discussing the offsetting of damages in a breach-of-contract suit). So, even if the plaintiff proves liability, her recovery will be limited to $$X - $Y$. That means, assuming that there are no noneconomic or statutory damages, that she will recover nothing if $Y \geq X$.

Now, if $X = 0$, there may be good reason to believe that the plaintiff never had standing in the first place, since the alleged financial harm does not exist (again, putting aside the possibility of noneconomic injury). But if $X > 0$, the plaintiff does and did have standing, even if, because $Y \geq X$, she ultimately cannot win her case and recover damages as a merits matter. This is why, in a contract case such as the example given above, the upshot of the showing that the plaintiff's mitigation of damages overcame her financial injury is a judgment for the defendant on the merits—because the plaintiff has failed to demonstrate damages, an element of her claim—not a dismissal of the suit for lack of standing. *See Scanlan v. Eisenberg*, 669 F.3d 838, 845 (7th Cir. 2012) (explaining that the plaintiff need not plead around the possibility that other circumstances

5

might negate his ability to recover, as "[t]hat sort of inquiry has a damages flavor to it, which is a merits, not a standing, question").

The same is true in this case. Here, the *X* in the equation represents those financial outlays that (a) the County can connect to additional foreclosures proximately caused by Wells Fargo's alleged discriminatory lending practices and (b) the court has ruled are recoverable under the FHA. 314 F. Supp. 3d at 984-88. As the court has also ruled, the ultimate damages calculation must take into account *Y*, which here represents the County's financial gains from those additional foreclosures. 335 F.R.D. 166, 169-70 (N.D. Ill. 2020). Thus, the gist of Wells Fargo's present motion to dismiss is that the evidence produced thus far demonstrates that $X - Y < 0$. But, as explained, even if that contention is true—and the court at summary judgment may be asked to decide, on a complete record, whether it indisputably is true—it does not follow that the County lacks standing. Again, to show that the County lacks standing, Wells Fargo must demonstrate, additionally, that $X = 0$. It does not even attempt to make such a showing.

None of the authority cited by Wells Fargo supports its untenable position. Wells Fargo leans heavily on *Gracia v. SigmaTron International, Inc.*, 986 F.3d 1058 (7th Cir. 2021), which involved an employment discrimination suit brought by a plaintiff who had already successfully sued her former employer. *See id*. at 1061; Doc. 507 at 2, 5-7, 9-10. After the judgment in the earlier suit became final, the employer disclosed in an SEC filing the plaintiff's name and information about that suit, and the plaintiff responded by suing the employer a second time for retaliation. *See Gracia*, 986 F.3d at 1061-62. The Seventh Circuit held that the plaintiff lacked standing because she did not adduce evidence at summary judgment to substantiate her allegation that "that the SEC disclosures ha[d] caused her mental anguish, emotional distress, humiliation, and other consequential damages." *Id*. at 1064.

*Gracia* stands at most for the unremarkable proposition that the Article III injury a plaintiff alleges at the pleading stage must be supported by evidence by the time the case reaches summary judgment. *See id*. at 1063 ("[E]ach element of Article III standing 'must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation.'") (quoting *Lujan*, 504 U.S. at 561). So, if the County is unable to substantiate any of its alleged injuries at summary judgment—that is, if the evidence indisputably shows that $X = 0$—the case may be subject to dismissal for lack of subject matter jurisdiction. Once discovery closes, Wells Fargo will have the opportunity to seek dismissal on that ground.

Wells Fargo also cites what it characterizes as "[t]wo other similar cases [that] ultimately failed on standing grounds after discovery," Doc. 498 at 30, but neither decision relies on anything resembling the argument Wells Fargo makes here. In *City of Los Angeles v. Bank of America Corp.*, 2015 WL 4880511 (C.D. Cal. May 11, 2015), the district court dismissed an FHA discriminatory lending suit for lack of standing where the municipal plaintiff's standing theory turned on its desire to "ensur[e] that [its] residents are free from housing discrimination." *Id*. at *4 (internal quotation marks omitted). The district court held that the plaintiff lacked standing because its "claimed injury … is not the type of 'concrete and demonstrable injury' required for standing to pursue an FHA claim." *Id*. at *4-5 (quoting *Havens Realty Corp. v Coleman*, 455 U.S. 363, 379 (1982)). Unlike the County in this case, the plaintiff there "admi[tted] that it d[id] not seek to recover damages for past expenses incurred to remedy conditions at foreclosed properties." *Id*. at *5. The Ninth Circuit affirmed in a nonprecedential order without discussing standing. *City of Los Angeles v. Bank of Am. Corp.*, 691 F. App'x 464 (9th Cir. 2017) (per curiam).

Of no more help is another similar FHA suit cited by Wells Fargo, *City of Miami Gardens v. Wells Fargo & Co.*, 931 F.3d 1274 (11th Cir. 2019) (per curiam). That decision primarily concerned the burden on a plaintiff for demonstrating Article III injury at the summary judgment stage. *See id*. at 1284-88. The basis for the Eleventh Circuit's holding that the municipal plaintiff lacked standing was that one of the plaintiff's two standing theories—that a discriminatory loan was likely to go into foreclosure in the future—was too speculative, and that the other—that ten foreclosed-upon properties had declined in value—was not supported by "any evidence of the effect of these foreclosures on property-tax revenues or municipal spending." *Id*. at 1283-84. In short, the case was about evidentiary burdens and said nothing about the benefits-outweigh-the-costs standing argument advanced by Wells Fargo here.

Wells Fargo's motion to dismiss is denied. The denial is without prejudice to Wells Fargo's ability to seek summary judgment on the ground that the County suffered no injury or can recover no damages.

June 1, 2021

_____
United States District Judge